## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

RICCARDO USAI, MASSIMILIANO GIUA,
IRINA SLIZSKAYA, and MEYVIS VEGA,

          Plaintiffs,                            CASE NO.:

      v.                                   JURY TRIAL DEMANDED

CLUB MANAGEMENT MIAMI II, LLC, and
R. DONAHUE PEEBLES,

          Defendants.

_____/

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, RICCARDO USAI ("Plaintiff Usai"), MASSIMILIANO GIUA ("Plaintiff Giua"), IRINA SLIZSKAYA ("Plaintiff Slizskaya"), and MEYVIS VEGA ("Plaintiff Vega") (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby complain of Defendants, CLUB MANAGEMENT MIAMI II, LLC ("Defendant Bath Club"), and R. DONAHUE PEEBLES ("Defendant Peebles") (collectively, "Defendants"), and allege as follows:

### INTRODUCTION

1.     Plaintiffs, a group of dedicated and hardworking employees, bring this action to hold Defendants accountable for the pervasive and egregious unlawful employment practices they were subjected to during their employment. Defendants created and maintained a hostile work environment where employees were routinely sexually harassed, subjected to discrimination, and harshly retaliated against if they opposed such conduct.

2.     Plaintiffs bring this action against Defendants pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"); the Fair Labor Standards Act, 29 U.S.C. § 201 ("FLSA"); the Florida Civil Rights Act of 1992, § 760.01, Florida Statutes ("FCRA"); and the

Miami-Dade County Human Rights Ordinance, Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26 ("MDHRO").

## PARTIES

3. Plaintiff Usai is an individual male residing in Miami-Dade County, Florida.

4. Plaintiff Giua is an individual male residing in Miami-Dade County, Florida.

5. Plaintiff Slizskaya is an individual female residing in Miami-Dade County, Florida.

6. Plaintiff Vega is an individual female residing in Miami-Dade County, Florida.

7. Defendant Bath Club is a Florida Limited Liability Company with its principal place of business located at 5937 Collins Avenue, Miami Beach, Florida 33140.

8. Defendant Peebles is an individual male who was the managing member and operator of Defendant Bath Club and was vested with operational control over Defendant Bath Club, including the authority to hire, fire, and discipline employees of Defendant Bath Club, including Plaintiffs.

9. At all relevant times, Defendant Bath Club and Defendant Peebles were Plaintiffs' sole and/or joint employer within the meaning of 29 U.S.C. § 203(d). Defendant Bath Club and Defendant Peebles acted in the interest of an employer toward the Plaintiffs at all times material herein, including but limited to the hiring and firing of Plaintiffs, controlling Plaintiffs' work schedules and conditions of employment, determining Plaintiffs' rate and method of payment, and maintaining employment records.

10. Defendant Peebles exercised day-to-day control over the operations of Defendant Bath Club, including determining and maintaining company payroll practices, the payment of wages to Plaintiffs and other similarly situated employees, and employees' working conditions, thereby directly affecting Plaintiffs' employment.

11.     Defendant Peebles' involvement in the employment practices for Defendant Bath Club's employees was not merely passive or titular, as he actively directed and managed the business affairs of Defendant Bath Club, including decisions that led to the FLSA violations, and was responsible for Defendant Bath Club's non-compliance with the FLSA. Defendant Peebles' direct involvement in day-to-day operations and decision-making processes makes him individually liable for the FLSA violations alleged herein.

12.     Plaintiffs were dependent upon Defendant Bath Club and Defendant Peebles for their employment as the Defendants collectively supervised, directed, and controlled Plaintiffs' day-to-day responsibilities and used Plaintiffs' work in furtherance of their business objections.

13.     Both Defendant Bath Club and Defendant Peebles are jointly and severally liable for the FLSA violations alleged herein. Plaintiffs seek to hold both Defendants accountable for their joint and individual actions that resulted in the unlawful withholding of wages and other damages incurred by Plaintiffs.

14.     The exact number of Defendants' employees is unknown, but upon information and belief, there are well more than the statutory minimum under Title VII, the FCRA, and the MDHRO.

15.     At all relevant times, Defendants were an "employer" within the meaning of 42 U.S.C. § 2000e(b), § 760.02(7), Florida Statutes, and § 11A-25, Code of Miami-Dade County.

16.     At all relevant times, Defendants were a "person" within the meaning of § 760.02(6), Florida Statutes.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367. This action is authorized and instituted pursuant to 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 216(b).

18.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the unlawful employment practices alleged below were committed within the jurisdiction of the United States District Court for the Southern District of Florida. The Defendants were and are still located in this judicial district and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## ADMINISTRATIVE PREREQUISITES

19.     Plaintiffs have complied with all administrative requirements to file this action.

20.     On December 13, 2023, Plaintiff Usai timely dual-filed a charge of discrimination (Charge No. 510-2023-02382) against Defendant Bath Club with the Equal Employment Opportunity Commission ("EEOC"), the Florida Commission on Human Relations ("FCHR"), and the Miami-Dade Commission on Human Rights ("MDCHR").

21.     On December 13, 2023, Plaintiff Giua timely dual-filed a charge of discrimination (Charge No. 510-2023-02379) against Defendant Bath Club with the EEOC, the FCHR, and the MDCHR.

22.     On December 7, 2023, Plaintiff Slizskaya timely dual-filed a charge of discrimination (Charge No. 510-2023-02994) against Defendant Bath Club the EEOC, the FCHR, and the MDCHR.

23.     On December 11, 2023, Plaintiff Vega timely dual-filed a charge of discrimination (Charge No. 510-2023-02335) against Defendant Bath Club with the EEOC, the FCHR, and the MDCHR.

24.     On September 11, 2024, the EEOC issued Plaintiff Usai's Notice of Right to Sue against Defendant Bath Club and on November 20, 2024, the MDCHR issued Plaintiff Usai's Notice of Right to Sue against Defendant Bath Club.

25.     On September 11, 2024, the EEOC issued Plaintiff Giua's Notice of Right to Sue against Defendant Bath Club and on November 18, 2024, the MDCHR issued Plaintiff Giua's Notice of Right to Sue against Defendant Bath Club.

26.     On September 11, 2024, the EEOC issued Plaintiff Slizskaya's Notice of Right to Sue against Defendant Bath Club and on November 20, 2024, the MDCHR issued Mr. Slizskaya's Notice of Right to Sue against Defendant Bath Club.

27.     On September 11, 2024, the EEOC issued Plaintiff Vega's Notice of Right to Sue against Defendant Bath Club and on November 20, 2024, the MDCHR issued Mr. Slizskaya's Notice of Right to Sue against Defendant Bath Club.

28.     Plaintiffs are timely commencing this action within ninety (90) days of receipt of the EEOC's Notice of Right to Sue and the MDCHR's Notice of Right to Sue.

29.     Plaintiffs are commencing this action more than one-hundred eighty (180) days following the filing of their charge of discrimination.

## FACTUAL ALLEGATIONS

30.     Defendants operate a private membership club located in Miami Beach, Florida. The membership club includes amenities and access to an on-site restaurant, known as "The Collins Room."

### Background and Plaintiffs' Initial Employment

31.     In or around January 2022, Defendants hired Plaintiff Slizskaya as a Server.

32.     In or around February 2023, Defendants hired Plaintiff Vega as a Captain.

33.     In or around February 2023, Defendants hired Plaintiff Usai as Director of Operations and Wine Club.

34.    In or around February 2023, Defendants hired Plaintiff Giua as Restaurant & Lounge General Manager.

35.    At all relevant times, Plaintiffs had a history of positive job performance.

36.    Defendants hired Plaintiff Usai and Plaintiff Giua in an effort to completely overhaul the operations of the membership and improve its service to an up-scale level, including reopening The Collins Room.

37.    Soon after starting their employment with Defendants, Plaintiff Usai and Plaintiff Giua learned of significant problems within Defendants' business and the manner in which its employees were treated.

38.    Plaintiff Usai and Plaintiff Giua discovered that Defendants' work environment was rife with unlawful employment practices. By means of example, Defendants engaged in conduct including, but not limited to, unlawfully retaining and manipulating tipped wages owed to employees, egregious sexual harassment, and pervasive discriminatory conduct targeting employees on the basis of their gender.

39.    Included among Defendants' employees that were forced to endure this conduct were Plaintiff Slizskaya and Plaintiff Vega.

40.    Throughout Plaintiff Slizskaya's employment, Defendants unlawfully withheld Plaintiff Slizskaya's tipped wages, discriminated against Plaintiff Slizskaya on the basis of her sex, and retaliated against Plaintiff Slizskaya for opposing Defendants' conduct and asserting her protected rights.

41.    Throughout Plaintiff Vega's employment, Defendants unlawfully withheld Plaintiff Vega's tipped wages, subjected her to relentless and severe sexual harassment,

discriminated against Plaintiff Vega on the basis of her sex, and retaliated against Plaintiff Vega for opposing Defendants' conduct and asserting her protected rights.

42.     Throughout Plaintiff Usai and Plaintiff Giua's employment, Defendants subjected them to unlawful retaliation for assisting employees like Plaintiff Slizskaya and Plaintiff Vega in asserting their rights and for opposing Defendants' unlawful employment practices.

### Defendants Unlawfully Retained Plaintiff Slizskaya and Plaintiff Vega's Tips in Violation of the FLSA

43.     At all times material, Defendants maintained control, oversight, and direction over the Plaintiffs, including the ability to hire, fire, and discipline them.

44.     At all times material, Defendants regularly employed two or more employees for the relevant time that handled goods or materials that traveled through interstate commerce, or used instrumentalities of interstate commerce, thus making Defendants' business an enterprise covered under the Fair Labor Standards Act.

45.     At all times material, Defendants were an enterprise engaged in interstate commerce in the course of their marketing, preparation, cooking, service, and sale of foodstuffs, produce, meats, fish, beverages, coffees, teas, alcoholic beverages, and products that have moved through interstate commerce.

46.     At all times material, Defendants regularly and recurrently obtained, solicited, exchanged, and sent funds to and from outside of the State of Florida, used telephonic transmissions going outside of the State of Florida to conduct business, and transmitted electronic information through computers, the internet, via email, and otherwise outside of the State of Florida.

47.     At all times material, Defendants had gross revenues in excess of $500,000 per year.

48.     At all times material, the Defendants were an "enterprise engaged in commerce or the production of goods for commerce," within the meaning of 29 § U.S.C. 206(a).

49.     At all times material, the Defendants had two or more "employees handling, selling or otherwise working on goods or material that have been moved in or produced for commerce by any person," within the meaning of 29 § U.S.C. 203(s)(1)(A).

50.     At all times material, the Defendants had an annual gross volume of sale made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated), within the meaning of 29 § U.S.C. 203(s)(1)(A).

51.     As part of their restaurant operations, Defendants charged patrons of the restaurant a service charge, a portion of which was distributed to the server assigned to the patron's table. Defendants also gave patrons the option of leaving an additional gratuity in excess of the service charge, the entirety of which was expected to be distributed to the server assigned to the table.

52.     Despite this policy, Defendants' management did not distribute the additional gratuities paid by patrons and instead, unlawfully retained the tips owed to the servers. During most shifts, Defendants paid the servers, including Plaintiff Slizskaya and Plaintiff Vega, a flat amount of $240.00, even when the employees had received tips well in excess of that amount.

53.     Jean Thielen Guerrero ("Guerrero"), an individual male employed by Defendants as "Accountant/IT", also used his position to manipulate the distribution of tips, often withholding tips from female servers, including Plaintiff Slizskaya and Plaintiff Vega.

54.     Guerreo held supervisory authority over Plaintiff Slizskaya and Plaintiff Vega, including the power to hire, fire, demote, promote, and discipline Plaintiff Slizskaya and Plaintiff Vega.

55.    As described further herein, Guerrero regularly denied female servers tips that they had earned during their shifts on a regular basis, with Guerrero even paying himself tips on several occasions.

56.    During Plaintiffs' employment, Defendant allowed managers and supervisors to improperly and unlawfully retain service tips intended for servers like Plaintiff Slizskaya and Plaintiff Vega, for their hospitality services performed as part of their employment.

57.    As a result of the tip theft, Plaintiff Slizskaya and Plaintiff Vega were deprived of a significant amount of tipped wages.

58.    At all times material, Guerrero and other managers asserted supervisory authority over all servers, including Plaintiff Slizskaya and Plaintiff Vega, and had operational control over all servers.

59.    At all times material, Guerrero and other managers' primary duties were the management of Defendants' business and the management of Defendants' restaurant.

60.    At all times material, Defendants failed to properly distribute the tips paid by patrons to Plaintiff Slizskaya and Plaintiff Vega and unlawfully retained the tips, in violation of the FLSA.

61.    Since the value of the tips received by Plaintiff Slizskaya and Plaintiff Vega regularly exceeded the value of their hourly wage, the Defendants' unlawful retention and/or distribution of tips had a significant and material negative impact on the wages that Plaintiff Slizskaya and Plaintiff Vega earned, often resulting in Plaintiff Slizskaya and Plaintiff Vega losing thousands of dollars in tips per week.

62.     At all times material, Defendants allowed Guerrero and traditionally non-tipped employees to improperly participate in the tip pool and/or keep a portion of the tips earned by servers, including Plaintiff Slizskaya and Plaintiff Vega, in violation of the FLSA.

63.     At all times material, Defendants willfully and intentionally refused to pay Plaintiff Slizskaya and Plaintiff Vega the tips they earned for work performed.

64.     At all times material, Defendants either knew from prior experience or recklessly failed to investigate whether their failure to pay Plaintiff Slizskaya and Plaintiff Vega all of the tips they earned and/or that patrons left for their benefit violated the FLSA, and further failed to timely correct their violation(s).

65.     Plaintiff Slizskaya and Plaintiff Vega are entitled to payment of all tips that Defendants were required to pay to Plaintiffs, that Defendants improperly retained, and/or that Defendants improperly distributed to traditionally non-tipped employees, such as managers and supervisors, and an additional equal amount in the form of liquidated damages.

**Defendants Subjected Plaintiff Slizskaya and Plaintiff Vega to Severe Sexual Harassment and Discrimination**

66.     In addition to blatantly withholding the tipped wages, Guerrero also used his authority over wages paid to servers to sexually harass Plaintiff Slizskaya and Plaintiff Vega.

67.     Guerrero regularly made comments to female servers implying that they would receive more favorable tip distributions if they engaged in *quid pro quo* sexual harassment, making comments such as "You know how to earn your tips" and "I'll fix it if you do this" while making a sexual gesture.

68.     Guerrero's abuse of power was not limited to the distribution of the tips of female employees, as Guerrero often made disparaging discriminatory, misogynistic remarks and berated female employees on a frequent basis.

10

69.     Guerrero regularly made discriminatory and sexually harassing comments towards female employees, including making obscene remarks to female employees in the workplace and often telling the female employees they had "big boobs" or a "big ass",.

70.     Guerrero also made his degrading sexual remarks to Plaintiff Vega, telling Plaintiff Vega not to get close to him because she had nice legs and he would "get excited", referring to his sexual arousal.

71.     Guerrero's sexual remarks towards Plaintiff Vega also included unsettling statements such as "que rica estás" ('you look so sexy') and "que bien se te ven esos pantalones" ('those pants look so good on you').

72.     On one occasion, Guerrero approached Plaintiff Vega and in a blatant disregard for her personal dignity and bodily autonomy, forcibly grabbed her groin without her consent while she was working.

73.     Guerrero's abusive conduct towards female employees was deeply dehumanizing and invasive yet was openly tolerated by Defendants as part of the humiliating work environment they fostered.

74.     Guerrero regularly berated and made discriminatory remarks to female employees, including calling Plaintiff Slizskaya an "ass face."

75.     Guerrero often screamed at female employees, including Plaintiff Slizskaya and Plaintiff Vega, becoming extremely irate and denigrating female employees over even the most minor of work incidents.

76.     Guerrero used his supervisory authority to coerce and manipulate female servers, regularly denying them tips they had earned, and paying himself tips on several occasions. Guerrero made it clear that female employees needed to appease him to receive favorable treatment

and regularly reminded them of his power to terminate any employee, including Plaintiff Slizskaya and Plaintiff Vega.

77.     When female employees, such as Plaintiff Vega and Plaintiff Slizskaya, opposed Guerrero's discriminatory conduct and unlawful tip theft, he would

78.     Like many of Defendants' female employees, Plaintiff Slizskaya and Plaintiff Vega had no one to report Guerrero's discriminatory conduct to, as for the majority of theeir employment, Defendants failed to maintain an employee handbook and did not employ any human resources personnel.

### Plaintiffs Opposed Defendants' Unlawful Employment Practices and Participated in an Investigation Into Defendants' Misconduct

79.     Soon after starting their employment with Defendants, Plaintiff Usai and Plaintiff Giua sought to overhaul Defendants' business practices and remedy many of the issues that Defendants' employees were subjected to.

80.     As part of these reforms, Usai and Giua began drafting an employee handbook to provide to employees and sought to hire a vendor to provide human resources to employees.

81.     In or around March of 2023, Usai and Giua hired a third-party vendor, HR Management Compliance Solutions ("HRMCS"), to provide human resources to Defendants' employees and correct the issues related to tip distribution and tip manipulation.

82.     These changes were welcome news to Defendants' female employees like Plaintiff Slizskaya and Plaintiff Vega.

83.     Usai and Giua initiated reforms, including drafting an employee handbook and hiring HR Management Compliance Solutions (HRMCS) to provide human resources and correct issues related to tip distribution and manipulation.

84.    On or around May 27, 2023, several female employees took advantage of the new reporting mechanisms available to them and made complaints against Guerrero for his unlawful conduct. These employees included Plaintiff Slizskaya; Plaintiff Vega; Andrea Godreau ("Godreau"), an individual female employed by Defendant as a Hostess; and Pamela Calderon ("Calderon"), an individual female employed by Defendant as a Beach Attendant.

85.    Several other women had been victimized by Guerrero, including but not limited to, Paola Lantigua ("Lantigua") an individual female employed by Defendant as a Bartender; Lisbeth Gutierrez ("Gutierrez"), an individual female employed by Defendant as a Bartender; and Onelys Rondon ("Rondon"), an individual female employed by Defendant as a Server.

86.    After learning of the accusations against Guerrero, Plaintiff Usai and Plaintiff Giua requested that HRMCS conduct a full investigation.

87.    The third-party investigation conducted by HRMCS eventually revealed that numerous female employees had been subjected to discriminatory and sexually harassing conduct, including, but not limited to, Guerrero propositioning female employees for sex, grabbing female employees' buttocks and waists without their consent, and making extremely inappropriate remarks, such as telling a female employee he wanted to "bite her ass."

88.    Plaintiff Slizskaya and Plaintiff Vega participated in the investigation and gave interviews reporting the discriminatory conduct that they and numerous other female employees had endured.

**Defendants Unlawfully Retaliated Against Plaintiffs for Their Protected Activities**

89.    Despite the findings of the HRMCS investigation, Defendants did not terminate Guerrero and instead began retaliating against the complainants, including Plaintiff Slizskaya and Plaintiff Vega.

90.     By means of example, in or around May of 2023, Defendants began cutting Plaintiff Slizskaya's scheduled work hours, which in turn, negatively impacted her pay.

91.     Around this time, Plaintiff Slizskaya requested that she receive a raise in pay for her continued positive work performance. In response to the request, Guerrero immediately denied Plaintiff Slizskaya the pay raise and informed her that he wanted to reduce her work hours even further and have Plaintiff Slizskaya become a part-time employee.

92.     It was evident to Plaintiff Slizskaya that she was being retaliated against for her opposition to Defendants' conduct.

93.     Defendants also retaliated against Plaintiff Usai and Plaintiff Giua for aiding Defendants' employees in opposing the unlawful conduct and bringing forth their complaints to Defendants.

94.     Despite Defendants' retaliatory conduct and failure to take corrective actions, Plaintiffs remained undeterred in their opposition to Defendants' unlawful employment practices.

95.     On or around June 23, 2023, a meeting was held between Peebles, Plaintiff Giua, and Plaintiff Usai.

96.     During the meeting, Plaintiff Giua and Plaintiff Usai reiterated their concerns regarding Guerrero and the unlawful tip retention. In response, Peebles blamed Plaintiff Giua and Plaintiff Usai for the complaints against Guerrero and insinuated that they orchestrated the complaints.

97.     Soon thereafter, Defendants escalated their campaign of retaliation against Plaintiffs and other employees even further.

98.     As part of Defendants' retaliatory conduct, between June 2023 and August 2023, Defendants terminated employees who had opposed Defendants' unlawful employment practices or participated in the recent investigation, including the Plaintiffs.

99.     On or around June 29, 2023, Defendants unlawfully terminated Plaintiff Slizskaya.

100.    Plaintiff Slizskaya was terminated under the guise of a layoff, less than a month and a half after she participated in the investigation against Guerrero and brought forth her complaints.

101.    On or around August 17, 2023, Plaintiff Vega became ill and took sick leave. Upon her return, Defendants informed Plaintiff Vega that her position as a Captain was no longer available, effectively demoting her to a Server position.

102.    Plaintiff Vega opposed the retaliatory demotion and insisted on returning to her Captain position.

103.    Soon thereafter, on or around August 25, 2023, Defendants unlawfully terminated Plaintiff Vega.

104.    On August 13, 2023, both Plaintiff Giua and Plaintiff Usai were locked out of their workplace by Defendants without explanation.

105.    On or around August 14, 2023, Defendants unlawfully terminated Plaintiff Giua.

106.    On or around August 14, 2023, Defendants unlawfully terminated Plaintiff Usai.

107.    The events described above are just some of the examples of unlawful discrimination and retaliation that Defendants subjected Plaintiffs to on a continuous and on-going basis throughout their employment.

108.    Defendants unlawfully discriminated against Plaintiffs Slizskaya and Vega because of their sex.

109.    Defendants retaliated against Plaintiffs asserting their rights and opposing Defendants' unlawful employment practices.

110.    Defendants violated Title VII, the FCRA, and the MDHRO by subjecting Plaintiffs to a hostile work environment, disparate treatment, and retaliation.

111.    Defendants exhibited a continuous practice of discrimination, and Plaintiffs therefore make all claims herein under the continuing violations doctrine.

112.    Defendants are either directly or vicariously responsible for the unlawful acts and conduct complained of herein.

113.    As a result of Defendants' actions, Plaintiffs felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

114.    At all times material, Defendants' employees acted as agents of Defendants in their discriminatory and unlawful treatment of Plaintiffs.

115.    At all times material, Defendants acted with deliberate indifference to the discriminatory treatment and hostile work environment complained of herein.

116.    As a result of the acts and conduct complained herein, Plaintiffs have suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits, and other compensation which such employment entails, and Plaintiffs have also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiffs have further experienced severe emotional and physical distress.

117.    Defendants' conduct was malicious, willful, extreme, and outrageous, and conducted with full knowledge of the law so as to justify an award of punitive damages against Defendants.

**CAUSES OF ACTION**
**COUNT I**
**29 U.S.C. § 203(m)**
*FLSA Wage Theft*
**(Plaintiff Slizskaya as Against All Defendants)**

118.     Plaintiff Slizskaya reincorporates the factual allegations in Paragraphs 30 through 117.

119.     Defendants were Plaintiff Slizskaya's employer for purposes of the FLSA, as the term "employer" is defined by 29 U.S.C. § 203(d).

120.     Under 29 U.S.C. § 203, an employer "may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips. . ." 29 U.S.C. § 203(m)(2)(B).

121.     At all times material, Guerrero and Defendants' other supervisors willfully retained tips left in their care by patrons to be distributed to Plaintiff Slizskaya.

122.     At all times material, Guerrero, Defendants' supervisors, and other traditionally non-tipped employees willfully retained tips left in their care by patrons to be distributed to Plaintiff Slizskaya.

123.     At all times material, Defendants allowed Guerrero, Defendants' supervisors, and other traditionally non-tipped employees, to improperly keep a portion of the tips earned by Plaintiff Slizskaya, in violation of the FLSA.

124.     As a direct and proximate result of Defendants' retaining a portion of the tips earned or received by Plaintiff Slizskaya and/or distributing a portion of the tips to traditionally non-tipped employees, such as managers and supervisors, Defendants violated the FLSA.

125.     Pursuant to 29 U.S.C. § 216(b), Plaintiff Slizskaya is entitled to payment of all tips that Defendants were required to pay to Plaintiff Slizskaya, that Defendants improperly retained,

and/or that Defendants improperly distributed to traditionally non-tipped employees, such as managers and supervisors, and an additional equal amount in the form of liquidated damages.

126.     Defendants willfully and intentionally refused to pay Plaintiff Slizskaya all the tips she earned or received during the relevant time.

127.     Defendants either knew from prior experience or recklessly failed to investigate whether their failure to pay Plaintiff Slizskaya all of the tips she earned and/or that patrons left for her benefit, violated the FLSA, and then they failed to timely correct their violation(s).

128.     The employment records for Plaintiff Slizskaya from which the Defendants' liability can be ascertained are within the exclusive custody and control of the Defendants.

129.     At this time, the total amounts are unknown and are to be determined upon further investigation.

130.     Plaintiff Slizskaya further requests that her attorney's fees and costs be awarded as permitted by law.

### COUNT II
### 29 U.S.C. § 203(m)
### *FLSA Wage Theft*
### (Plaintiff Vega as Against All Defendants)

131.     Plaintiff Vega reincorporates the factual allegations in Paragraphs 30 through 117.

132.     Defendants were Plaintiff Vega's employer for purposes of the FLSA, as the term "employer" is defined by 29 U.S.C. § 203(d).

133.     Under 29 U.S.C. § 203, an employer "may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips. . ." 29 U.S.C. § 203(m)(2)(B).

134.     At all times material, Guerrero and Defendants' other supervisors willfully retained tips left in their care by patrons to be distributed to Plaintiff Vega.

135.     At all times material, Guerrero, Defendants' supervisors, and other traditionally non-tipped employees willfully retained tips left in their care by patrons to be distributed to Plaintiff Vega.

136.     At all times material, Defendants allowed Guerrero, Defendants' supervisors, and other traditionally non-tipped employees, to improperly keep a portion of the tips earned by Plaintiff Vega, in violation of the FLSA.

137.     As a direct and proximate result of Defendants' retaining a portion of the tips earned or received by Plaintiff Vega and/or distributing a portion of the tips to traditionally non-tipped employees, such as managers and supervisors, Defendants violated the FLSA.

138.     Pursuant to 29 U.S.C. § 216(b), Plaintiff Vega is entitled to payment of all tips that Defendants were required to pay to Plaintiff Vega that Defendants improperly retained, and/or that Defendants improperly distributed to traditionally non-tipped employees, such as managers and supervisors, and an additional equal amount in the form of liquidated damages.

139.     Defendants willfully and intentionally refused to pay Plaintiff Vega all the tips she earned or received during the relevant time.

140.     Defendants either knew from prior experience or recklessly failed to investigate whether their failure to pay Plaintiff Vega all of the tips she earned and/or that patrons left for her benefit, violated the FLSA, and then they failed to timely correct their violation(s).

141.     The employment records for Plaintiff Vega from which the Defendants' liability can be ascertained are within the exclusive custody and control of the Defendants.

142.     At this time, the total amounts are unknown and are to be determined upon further investigation.

143.     Plaintiff Vega further requests that her attorney's fees and costs be awarded as permitted by law.

### COUNT III
**29 U.S.C. § 215(a)(3)**
*FLSA Retaliation*
**(Plaintiff Slizskaya as Against All Defendants)**

144.     Plaintiff Slizskaya reincorporates the factual allegations in Paragraphs 30 through 117.

145.     Defendants were Plaintiff Slizskaya's employer for purposes of the FLSA, as the term "employer" is defined by 29 U.S.C. § 203(d).

146.     Under 29 U.S.C. § 215(a)(3), it is unlawful to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceed under of related to this Act, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

147.     Plaintiff Slizskaya engaged in a protected activity when she opposed Defendants' unlawful wage theft, complained about Defendants' unlawful wage theft, and when she participated in the investigation into Defendants' unlawful wage theft.

148.     In response to Plaintiff Slizskaya asserting her right to enjoy the same employment benefits as every other employee, the Defendants retaliated against Plaintiff Slizskaya.

149.     Defendants retaliated against Plaintiff Slizskaya by engaging in conduct, including but not limited to, reducing Plaintiff Slizskaya's scheduled work hours and pay, denying Plaintiff Slizskaya pay raises, and unlawfully terminating Plaintiff Slizskaya's employment.

150.     Defendants took the above-mentioned materially adverse actions, among others, against Plaintiff Slizskaya because of her protected activities.

151.     Defendants' retaliatory actions were causally connected to Plaintiff Slizskaya's protected activities.

152.     Any reasonable employee in Plaintiff Slizskaya's position would be dissuaded from opposing unlawful pay practices if they knew that they would be subjected to the kind of treatment that Plaintiff Slizskaya was forced to endure.

153.     Defendants' alleged basis for their adverse employment actions against Plaintiff Slizskaya are pretextual and have been asserted only to cover up the retaliatory nature of Defendants' conduct.

154.     As a direct and proximate result of the Defendants' retaliatory conduct in violation of the FLSA, Ms. Slizsaya has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Slizskaya has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Ms. Slizsaya accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

155.     Defendants willfully and intentionally retaliated against Plaintiff Slizskaya for her protected activities under the FSLA.

156.     Plaintiff Slizskaya further requests that her attorney's fees and costs be awarded as permitted by law.

**<u>COUNT IV</u>**
**29 U.S.C. § 203(m)**
***FLSA Retaliation***
**(Plaintiff Vega as Against All Defendants).**

157.     Plaintiff Vega reincorporates the factual allegations in Paragraphs 30 through 117.

158.    Defendants were Plaintiff Vega's employer for purposes of the FLSA, as the term "employer" is defined by 29 U.S.C. § 203(d).

159.    Under 29 U.S.C. § 215(a)(3), it is unlawful to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceed under of related to this Act, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

160.    Plaintiff Vega engaged in a protected activity when she opposed Defendants' unlawful wage theft, complained about Defendants' unlawful wage theft, and when she participated in the investigation into Defendants' unlawful wage theft.

161.    In response to Plaintiff Vega asserting her right to enjoy the same employment benefits as every other employee, the Defendants retaliated against Plaintiff Vega.

162.    Defendants retaliated against Plaintiff Vega by engaging in conduct, including, but not limited to, withholding and manipulating Plaintiff Vega's pay; threatening and coercing Plaintiff Vega with termination; and unlawfully terminating Plaintiff Vega's employment.

163.    Defendants took the above-mentioned materially adverse actions, among others, against Plaintiff Vega because of her protected activities.

164.    Defendants' retaliatory actions were causally connected to Plaintiff Vega's protected activities.

165.    Any reasonable employee in Plaintiff Vega's position would be dissuaded from opposing unlawful pay practices if they knew that they would be subjected to the kind of treatment that Plaintiff Vega was forced to endure.

166.     Defendants' alleged basis for its adverse employment actions against Plaintiff Vega are pretextual and have been asserted only to cover up the retaliatory nature of Defendants' conduct.

167.     As a direct and proximate result of the Defendants' retaliatory conduct in violation of the FLSA, Plaintiff Vega has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Vega has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Vega accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

168.     Defendants willfully and intentionally retaliated against Plaintiff Vega for her protected activities under the FLSA.

169.     Plaintiff Vega further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT V**
**29 U.S.C. § 203(m)**
*FLSA Retaliation*
**(Plaintiff Usai as Against All Defendants)**

170.     Plaintiff Usai reincorporates the factual allegations in Paragraphs 30 through 117.

171.     Defendants were Plaintiff Usai's employer for purposes of the FLSA, as the term "employer" is defined by 29 U.S.C. § 203(d).

172.     Under 29 U.S.C. § 215(a)(3), it is unlawful to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceed under of related to this Act, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

173.     Plaintiff Usai engaged in a protected activity when he opposed Defendants' unlawful pay practices and assisted employees in exercising their protected rights under the FLSA.

174.     In response to Plaintiff Usai's opposition to Defendants' unlawful employment practices and assistance of employees in exercising their protected rights under the FLSA, the Defendants retaliated against Plaintiff Usai.

175.     Defendants retaliated against Plaintiff Usai by engaging in conduct, including, but not limited to, unlawfully terminating his employment.

176.     Defendants took the above-mentioned materially adverse actions, among others, against Plaintiff Usai because of his protected activities.

177.     Defendants' retaliatory actions were causally connected to Plaintiff Usai's protected activities.

178.     Any reasonable employee in Plaintiff Usai's position would be dissuaded from opposing unlawful pay practices or assisting other individuals in the exercise of their rights if they knew that they would be subjected to the kind of treatment that Plaintiff Usai was forced to endure.

179.     Defendants' alleged basis for their adverse employment actions against Plaintiff Usai are pretextual and have been asserted only to cover up the retaliatory nature of Defendants' conduct.

180.     As a direct and proximate result of the Defendants' retaliatory conduct in violation of the FLSA, Plaintiff Usai has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Usai has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Usai accordingly demands lost economic damages, lost wages, back

pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

181.    Defendants willfully and intentionally retaliated against Plaintiff Usai for his protected activities under the FSLA.

182.    Plaintiff Usai further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT VI**
**29 U.S.C. § 203(m)**
*FLSA Retaliation*
**(Plaintiff Giua as Against All Defendants)**

183.    Plaintiff Giua reincorporates the factual allegations in Paragraphs 30 through 117.

184.    Defendants were Plaintiff Giua's employer for purposes of the FLSA, as the term "employer" is defined by 29 U.S.C. § 203(d).

185.    Under 29 U.S.C. § 215(a)(3), it is unlawful to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceed under of related to this Act, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

186.    Plaintiff Giua engaged in a protected activity when he opposed Defendants' unlawful pay practices and assisted employees in exercising their protected rights under the FLSA.

187.    In response to Plaintiff Giua's opposition to Defendants' unlawful employment practices and assistance of employees in exercising their protected rights under the FLSA, the Defendants retaliated against Plaintiff Giua.

188.    Defendants retaliated against Plaintiff Giua by engaging in conduct, including but not limited to, unlawfully terminating his employment.

189.    Defendants took the above-mentioned materially adverse actions, among others, against Plaintiff Giua because of his protected activities.

190.    Defendants' retaliatory actions were causally connected to Plaintiff Giua's protected activities.

191.    Any reasonable employee in Plaintiff Giua's position would be dissuaded from opposing unlawful pay practices or assisting other individuals in the exercise of their rights if they knew that they would be subjected to the kind of treatment that Plaintiff Giua was forced to endure.

192.    Defendants' alleged basis for their adverse employment actions against Plaintiff Giua are pretextual and have been asserted only to cover up the retaliatory nature of Defendants' conduct.

193.    As a direct and proximate result of the Defendants' retaliatory conduct in violation of the FLSA, Plaintiff Giua has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Giua has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Giua accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

194.    Defendants willfully and intentionally retaliated against Plaintiff Giua for his protected activities under the FSLA.

195.    Plaintiff Giua further requests that his attorney's fees and costs be awarded as permitted by law.

**<u>COUNT VII</u>**
**42 U.S.C. § 2000e-2**
***Title VII Discrimination***
**(Plaintiff Slizskaya as Against Defendant Bath Club)**

196.    Plaintiff Slizskaya reincorporates the factual allegations in Paragraphs 30 through 117.

197.    Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

198.    Title VII further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

199.    Plaintiff Slizskaya is an individual female and is therefore a protected class member.

200.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

201.    Defendant Bath Club subjected Plaintiff Slizskaya to discriminatory treatment on the basis of her sex, including but not limited to, withholding and manipulating Plaintiff Slizskaya's tipped wages; forcing Plaintiff Slizskaya to appease her male supervisor in order to be paid her lawful wages; reducing Plaintiff Slizskaya's scheduled hours and pay; denying Plaintiff Slizskaya pay raises; subjecting Plaintiff Slizskaya to severe discriminatory remarks like being called an "ass face"; and unlawfully terminating Plaintiff Slizskaya's employment.

202.    Defendant Bath Club targeted Plaintiff Slizskaya because of her sex. No similarly situated male employees endured the discriminatory conduct that Plaintiff Slizskaya was forced to endure.

203. The discriminatory actions of Defendant Bath Club against Plaintiff Slizskaya, as described and set forth above, constitute an adverse employment action for the purposes of Title VII. In subjecting Plaintiff Slizskaya to adverse employment actions, Defendant Bath Club intentionally discriminated against Plaintiff Slizskaya with respect to the compensation, terms, conditions, or privileges of her employment.

204. Even if Defendant Bath Club could assert legitimate reasons for its adverse actions taken against Plaintiff Slizskaya, her protected class status, at a minimum, was a motivating factor for Defendant Bath Club's discriminatory conduct and Plaintiff Slizskaya explicitly reserves the right to pursue a mixed-motive theory against Defendant Bath Club.

205. As a direct and proximate result of Defendant Bath Club's intentional discriminatory conduct in violation of Title VII, Plaintiff Slizskaya has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff Slizskaya has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Slizskaya accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

206. Defendant Bath Club's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Slizskaya's rights under Title VII, warranting the imposition of punitive damages, in addition to compensatory damages.

207. The conduct of Defendant Bath Club deprived Plaintiff Slizskaya of her statutory rights guaranteed under Title VII.

208. Plaintiff Slizskaya further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT VIII**
**42 U.S.C. § 2000e-2**
*Title VII Discrimination*
**(Plaintiff Vega as Against Defendant Bath Club)**

209.    Plaintiff Vega reincorporates the factual allegations in Paragraphs 30 through 117.

210.    Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

211.    Title VII further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

212.    Plaintiff Vega is an individual female and is therefore a protected class member.

213.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

214.    Defendant Bath Club subjected Plaintiff Vega to discriminatory treatment on the basis of her sex, including but not limited to, withholding and manipulating Plaintiff Vega's tipped wages; forcing Plaintiff Vega to appease her male supervisor in order to be paid her lawful wages; making inappropriate sexual advances towards Plaintiff Vega; subjecting Plaintiff Vega to vulgar sexual remarks; touching Plaintiff Vega's body without her consent; and unlawfully terminating Plaintiff Vega's employment.

215.    Defendant Bath Club targeted Plaintiff Vega because of her sex. No similarly situated male employees endured the discriminatory conduct that Plaintiff Vega was forced to endure.

216.    The discriminatory actions of Defendant Bath Club against Plaintiff Vega, as described and set forth above, constitute an adverse employment action for the purposes of Title VII. In subjecting Plaintiff Vega to adverse employment actions, Defendant Bath Club intentionally discriminated against Plaintiff Vega with respect to the compensation, terms, conditions, or privileges of her employment.

217.    Even if Defendant Bath Club could assert legitimate reasons for its adverse actions taken against Plaintiff Vega, her protected class status, at a minimum, was a motivating factor for Defendant Bath Club's discriminatory conduct and Plaintiff Vega explicitly reserves the right to pursue a mixed-motive theory against Defendant Bath Club.

218.    As a direct and proximate result of Defendant Bath Club's intentional discriminatory conduct in violation of Title VII, Plaintiff Vega has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Vega has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Vega accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

219.    Defendant Bath Club's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Vega's rights under Title VII, warranting the imposition of punitive damages, in addition to compensatory damages.

220.    The conduct of Defendant Bath Club deprived Plaintiff Vega of her statutory rights guaranteed under Title VII.

221.    Plaintiff Vega further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT IX**
**42 U.S.C. § 2000e-2**
*Title VII Hostile Work Environment*
**(Plaintiff Slizskaya as Against Defendant Bath Club)**

222.     Plaintiff Slizskaya reincorporates the factual allegations in Paragraphs 30 through 117.

223.     Title VII provides in relevant part, that "it shall be an unlawful employment practice for an employer… to discrimination against any individual with respect to his compensation, term, conditions, or privileges of employment, because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

224.     Title VII further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

225.     Mr. Slizskaya is an individual female and is therefore a protected class member.

226.     Defendant Bath Club's discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

227.     Defendant Bath Club's severe and pervasive conduct included, but was not limited to, fostering a humiliating and demeaning work environment for female employees; forcing female employees to endure comments about their bodies, including about their breasts and buttocks; withholding and manipulating Plaintiff Slizskaya's tipped wages; forcing Plaintiff Slizskaya to appease her male supervisor in order to be paid her lawful wages; reducing Plaintiff Slizskaya's scheduled hours and pay; denying Plaintiff Slizskaya pay raises; subjecting Plaintiff Slizskaya to

severe discriminatory remarks like being called an "ass face"; and unlawfully terminating Plaintiff Slizskaya's employment.

228.    Defendant Bath Club targeted Plaintiff Slizskaya because of her sex. No similarly situated male employees endured the discriminatory conduct that Plaintiff Slizskaya was forced to endure.

229.    Defendant Bath Club's discriminatory conduct towards Plaintiff Slizskaya negatively impacted both her professional life and personal life. Defendant Bath Club's conduct made Plaintiff Slizskaya feel isolated, humiliated, embarrassed, and ashamed.

230.    Even if Defendant Bath Club could assert legitimate reasons for its discriminatory actions taken against Plaintiff Slizskaya, her protected class status, at a minimum, was a motivating factor for Defendant Bath Club's discriminatory conduct and Plaintiff Slizskaya explicitly reserves the right to pursue a mixed-motive theory against Defendant Bath Club.

231.    As a direct and proximate result of Defendant Bath Club's intentional discriminatory conduct in violation of Title VII, Plaintiff Slizskaya has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Slizskaya has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Slizskaya accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

232.    Defendant Bath Club's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Slizskaya's rights under Title VII, warranting the imposition of punitive damages, in addition to compensatory damages.

233.    The conduct of Defendant Bath Club deprived Plaintiff Slizskaya of her statutory rights guaranteed under Title VII.

234.    Plaintiff Slizskaya further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT X**
**42 U.S.C. § 2000e-2**
*Title VII Hostile Work Environment*
**(Plaintiff Vega as Against Defendant Bath Club)**

235.    Plaintiff Vega reincorporates the factual allegations in Paragraphs 30 through 117.

236.    Title VII provides in relevant part, that "it shall be an unlawful employment practice for an employer… to discrimination against any individual with respect to his compensation, term, conditions, or privileges of employment, because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

237.    Title VII further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

238.    Plaintiff Vega is an individual female and is therefore a protected class member.

239.    Defendant Bath Club's discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

240.    Defendant Bath Club's severe and pervasive conduct included, but was not limited to, fostering a humiliating and demeaning work environment for female employees; forcing female employees to endure comments about their bodies, including about their breasts and buttocks; withholding and manipulating Plaintiff Vega's tipped wages; forcing Plaintiff Vega to appease her

33

male supervisor in order to be paid her lawful wages; making inappropriate sexual advances towards Plaintiff Vega; subjecting Plaintiff Vega to vulgar sexual remarks; touching Plaintiff Vega's body without her consent; and unlawfully terminating Plaintiff Vega's employment.

241.    Defendant Bath Club targeted Plaintiff Vega because of her sex. No similarly situated male employees endured the discriminatory conduct that Plaintiff Vega was forced to endure.

242.    Defendant Bath Club's discriminatory conduct towards Plaintiff Vega negatively impacted both her professional life and personal life. Defendant Bath Club's conduct made Plaintiff Vega feel isolated, humiliated, embarrassed, and ashamed.

243.    Even if Defendant Bath Club could assert legitimate reasons for its discriminatory actions taken against Plaintiff Vega, her protected class status, at a minimum, was a motivating factor for Defendant Bath Club's discriminatory conduct and Plaintiff Vega explicitly reserves the right to pursue a mixed-motive theory against Defendant Bath Club.

244.    As a direct and proximate result of Defendant Bath Club's intentional discriminatory conduct in violation of Title VII, Plaintiff Vega has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff Vega has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Vega accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

245.    Defendant Bath Club's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Vega's rights under Title VII, warranting the imposition of punitive damages, in addition to compensatory damages.

246.     The conduct of Defendant Bath Club deprived Plaintiff Vega of her statutory rights guaranteed under Title VII.

247.     Plaintiff Vega further requests that her attorney's fees and costs be awarded as permitted by law.

### COUNT XI
### 42 U.S.C. § 2000e-3
### *Title VII Retaliation*
### (Plaintiff Slizskaya as Against Defendant Bath Club)

248.     Plaintiff Slizskaya reincorporates the factual allegations in Paragraphs 30 through 117.

249.     Title VII prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. 42 U.S.C. § 2000e-3(a).

250.     Plaintiff Slizskaya is an individual female and is therefore a protected class member.

251.     Plaintiff Slizskaya engaged in a protected activity when she opposed Defendant Bath Club's sexual harassment and gender discrimination, complained about Defendant Bath Club's sexual harassment and gender discrimination, and when she participated in the investigation into Defendant Bath Club's sexual harassment and gender discrimination.

252.     In response to Plaintiff Slizskaya asserting her right to enjoy the same employment benefits as every other employee, Defendant Bath Club retaliated against Plaintiff Slizskaya.

253.     Defendant Bath Club retaliated against Plaintiff Slizskaya by engaging in conduct, including but not limited to, withholding and manipulating Plaintiff Slizskaya's pay; reducing Plaintiff Slizskaya's scheduled work hours and pay; denying Plaintiff Slizskaya pay raises;

threatening and coercing Plaintiff Slizskaya with termination; and unlawfully terminating Plaintiff Slizskaya's employment.

254.    Defendant Bath Club took the above-mentioned materially adverse actions, among others, against Plaintiff Slizskaya because of her protected activities.

255.    Defendant Bath Club's retaliatory actions were causally connected to Plaintiff Slizskaya's protected activities.

256.    Any reasonable employee in Plaintiff Slizskaya's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Plaintiff Slizskaya was forced to endure.

257.    Defendant Bath Club's alleged basis for its adverse employment actions against Plaintiff Slizskaya are pretextual and have been asserted only to cover up the retaliatory nature of Defendant Bath Club's conduct.

258.    As a direct and proximate result of the Defendant Bath Club's retaliatory conduct in violation of Title VII, Plaintiff Slizskaya has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Slizskaya has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Slizskaya accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

259.    Defendant Bath Club's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Slizskaya's rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

260. The conduct of the Defendant Bath Club deprived Plaintiff Slizskaya of her statutory rights guaranteed under Title VII.

261. Plaintiff Slizskaya further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT XII**
**42 U.S.C. § 2000e-3**
*Title VII Retaliation*
**(Plaintiff Vega as Against Defendant Bath Club)**

262. Plaintiff Vega reincorporates the factual allegations in Paragraphs 30 through 117.

263. Title VII prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. 42 U.S.C. § 2000e-3(a).

264. Plaintiff Vega is an individual female and is therefore a protected class member.

265. Plaintiff Vega engaged in a protected activity when she opposed Defendant Bath Club's sexual harassment and gender discrimination, complained about Defendant Bath Club's sexual harassment and gender discrimination, and when she participated in the investigation into Defendant Bath Club's sexual harassment and gender discrimination.

266. In response to Plaintiff Vega asserting her right to enjoy the same employment benefits as every other employee, Defendant Bath Club retaliated against Plaintiff Vega.

267. Defendant Bath Club retaliated against Plaintiff Vega by engaging in conduct, including but not limited to, withholding and manipulating Plaintiff Vega's pay; threatening and coercing Plaintiff Vega with termination; and unlawfully terminating Plaintiff Vega's employment.

268. Defendant Bath Club took the above-mentioned materially adverse actions, among others, against Plaintiff Vega because of her protected activities.

269.    Defendant Bath Club's retaliatory actions were causally connected to Plaintiff Vega's protected activities.

270.    Any reasonable employee in Plaintiff Vega's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Plaintiff Vega was forced to endure.

271.    Defendant Bath Club's alleged basis for its adverse employment actions against Plaintiff Vega are pretextual and have been asserted only to cover up the retaliatory nature of Defendant Bath Club's conduct.

272.    As a direct and proximate result of Defendant Bath Club's retaliatory conduct in violation of Title VII, Plaintiff Vega has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Vega has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Vega accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

273.    Defendant Bath Club's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Vega's rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

274.    The conduct of the Defendant Bath Club deprived Plaintiff Vega of her statutory rights guaranteed under Title VII.

275.    Plaintiff Vega further requests that her attorney's fees and costs be awarded as permitted by law.

## COUNT XIII
### 42 U.S.C. § 2000e-3
### *Title VII Retaliation*
### (Plaintiff Usai as Against Defendant Bath Club)

276.     Plaintiff Usai reincorporates the factual allegations in Paragraphs 30 through 117.

277.     Title VII prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. 42 U.S.C. § 2000e-3(a).

278.     Mr. Usai engaged in a protected activity when he opposed Defendant Bath Club's sexual harassment and gender discrimination of female employees and assisted female employees in exercising their protected rights to be free from harassment and discrimination under Title VII.

279.     In response to Plaintiff Usai's opposition to Defendant Bath Club's unlawful employment practices and his assistance of employees in exercising their protected rights under Title VII, Defendant Bath Club retaliated against Plaintiff Usai.

280.     Defendant Bath Club retaliated against Plaintiff Usai by engaging in conduct, including but not limited to, unlawfully terminating Mr. Usai's employment.

281.     Defendant Bath Club took the above-mentioned materially adverse actions, among others, against Plaintiff Usai because of his protected activities.

282.     Defendant Bath Club's retaliatory actions were causally connected to Plaintiff Usai's protected activities.

283.     Any reasonable employee in Plaintiff Usai's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Plaintiff Usai was forced to endure.

284.     Defendant Bath Club's alleged basis for its adverse employment actions against Plaintiff Usai are pretextual and have been asserted only to cover up the retaliatory nature of Defendant Bath Club's conduct.

285.     As a direct and proximate result of Defendant Bath Club's retaliatory conduct in violation of Title VII, Plaintiff Usai has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Usai has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Usai accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

286.     Defendant Bath Club's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Usai's rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

287.     The conduct of the Defendant Bath Club deprived Plaintiff Usai of his statutory rights guaranteed under Title VII.

288.     Plaintiff Usai further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT XIV**
**42 U.S.C. § 2000e-3**
*Title VII Retaliation*
**(Plaintiff Giua as Against Defendant Bath Club)**

289.     Plaintiff Giua reincorporates the factual allegations in Paragraphs 30 through 117.

290.     Title VII prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. 42 U.S.C. § 2000e-3(a).

291.     Mr. Giua engaged in a protected activity when he opposed Defendant Bath Club's sexual harassment and gender discrimination of female employees and assisted female employees in exercising their protected rights to be free from harassment and discrimination under Title VII.

292.     In response to Plaintiff Giua's opposition to Defendant Bath Club's unlawful employment practices and his assistance of employees in exercising their protected rights under Title VII, Defendant Bath Club retaliated against Plaintiff Giua.

293.     Defendant Bath Club retaliated against Plaintiff Giua by engaging in conduct, including but not limited to, unlawfully terminating Mr. Giua's employment.

294.     Defendant Bath Club took the above-mentioned materially adverse actions, among others, against Plaintiff Giua because of his protected activities.

295.     Defendant Bath Club's retaliatory actions were causally connected to Plaintiff Giua's protected activities.

296.     Any reasonable employee in Plaintiff Giua's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Plaintiff Giua was forced to endure.

297.     Defendant Bath Club's alleged basis for its adverse employment actions against Plaintiff Giua are pretextual and have been asserted only to cover up the retaliatory nature of Defendant Bath Club's conduct.

298.     As a direct and proximate result of the Defendant Bath Club's retaliatory conduct in violation of Title VII, Plaintiff Giua has suffered and will continue to suffer financial and

economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff Giua has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Giua accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

299.    Defendant Bath Club's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Giua's rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

300.    The conduct of the Defendant Bath Club deprived Plaintiff Giua of his statutory rights guaranteed under Title VII.

301.    Plaintiff Giua further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT XV**
**§ 760.10(1), Fla. Stat.**
*FCRA Discrimination*
**(Plaintiff Slizskaya as Against Defendant Bath Club)**

302.    Plaintiff Slizskaya reincorporates the factual allegations in Paragraphs 30 through 117.

303.    The FCRA prohibits employment discrimination against an individual with respect to compensation, terms, conditions, or privileges of employment because of the individual's sex, pregnancy, or disability. § 760.10(1)(a), Fla. Stat.

304.    Plaintiff Slizskaya is an individual female and is therefore a protected class member.

305.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

306.     Defendant Bath Club subjected Plaintiff Slizskaya to discriminatory treatment on the basis of her sex, including but not limited to, withholding and manipulating Plaintiff Slizskaya's tipped wages; forcing Plaintiff Slizskaya to appease her male supervisor in order to be paid her lawful wages; reducing Plaintiff Slizskaya's scheduled hours and pay; denying Plaintiff Slizskaya pay raises; subjecting Plaintiff Slizskaya to severe discriminatory remarks like being called an "ass face"; and unlawfully terminating Plaintiff Slizskaya's employment.

307.     Defendant Bath Club targeted Plaintiff Slizskaya on the basis of her sex. No similarly situated male employees endured the discriminatory conduct that Plaintiff Slizskaya was forced to endure.

308.     The discriminatory actions of the Defendant Bath Club against Plaintiff Slizskaya, as described and set forth above, constitute an adverse employment action for purposes of the FCRA.  In subjecting Plaintiff Slizskaya to adverse employment actions, Defendant Bath Club intentionally discriminated against Plaintiff Slizskaya with respect to the compensation, terms, conditions, or privileges of her employment.

309.     Even if Defendant Bath Club could assert legitimate reasons for its adverse actions taken against Plaintiff Slizskaya, her protected class status, at a minimum, was a motivating factor for Defendant Bath Club's discriminatory conduct and Plaintiff Slizskaya explicitly reserves the right to pursue a mixed-motive theory against Defendants.

310.     As a direct and proximate result of Defendant Bath Club's intentional discriminatory conduct in violation of the FCRA, Plaintiff Slizskaya has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Slizskaya has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Slizskaya accordingly demands

lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

311.    Defendant Bath Club's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Slizskaya's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

312.    The conduct of Defendant Bath Club deprived Plaintiff Slizskaya of her statutory rights guaranteed under the FCRA.

313.    Plaintiff Slizskaya further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT XVI**
**§ 760.10(1), Fla. Stat.**
*FCRA Discrimination*
**(Plaintiff Vega as Against Defendant Bath Club)**

314.    Plaintiff Vega reincorporates the factual allegations in Paragraphs 30 through 117.

315.    The FCRA prohibits employment discrimination against an individual with respect to compensation, terms, conditions, or privileges of employment because of the individual's sex, pregnancy, or disability. § 760.10(1)(a), Fla. Stat.

316.    Plaintiff Vega is an individual female and is therefore a protected class member.

317.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

318.    Defendant Bath Club subjected Plaintiff Vega to discriminatory treatment on the basis of her sex, including but not limited to, withholding and manipulating Plaintiff Vega's tipped wages; forcing Plaintiff Vega to appease her male supervisor in order to be paid her lawful wages; making inappropriate sexual advances towards Plaintiff Vega; subjecting to Plaintiff Vega to

44

vulgar sexual remarks; touching Plaintiff Vega's body without her consent; and unlawfully terminating Plaintiff Vega's employment.

319.    Defendant Bath Club targeted Plaintiff Vega because of her sex. No similarly situated male employees endured the discriminatory conduct that Plaintiff Vega was forced to endure.

320.    The discriminatory actions of the Defendant Bath Club against Plaintiff Vega, as described and set forth above, constitute an adverse employment action for purposes of the FCRA. In subjecting Plaintiff Vega to adverse employment actions, the Defendants intentionally discriminated against Plaintiff Vega with respect to the compensation, terms, conditions, or privileges of her employment.

321.    Even if Defendant Bath Club could assert legitimate reasons for its adverse actions taken against Plaintiff Vega, her protected class status, at a minimum, was a motivating factor for Defendant Bath Club's discriminatory conduct and Plaintiff Vega explicitly reserves the right to pursue a mixed-motive theory against Defendant Bath Club.

322.    As a direct and proximate result of Defendant Bath Club's intentional discriminatory conduct in violation of the FCRA, Plaintiff Vega has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Vega has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Vega accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

323.    Defendant Bath Club's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Vega's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

324.    Defendant Bath Club's conduct deprived Plaintiff Vega of her statutory rights guaranteed under the FCRA.

325.    Plaintiff Vega further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT XVII**
**§ 760.10(1), Fla. Stat.**
***FCRA Hostile Work Environment***
**(Plaintiff Slizskaya as Against Defendant Bath Club)**

326.    Plaintiff reincorporates the factual allegations in Paragraphs 30 through 117.

327.    The FCRA prohibits employment discrimination against an individual with respect to compensation, terms, conditions, or privileges of employment because of the individual's sex, pregnancy, or disability. § 760.10(1)(a), Fla. Stat.

328.    Ms. Slizskaya is an individual female and is therefore a protected class member.

329.    Defendant Bath Club's discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

330.    Defendant Bath Club's severe and pervasive conduct included, but was not limited to, fostering a humiliating and demeaning work environment for female employees; forcing female employees to endure comments about their bodies, including about their breasts and buttocks; withholding and manipulating Plaintiff Slizskaya's tipped wages; forcing Plaintiff Slizskaya to appease her male supervisor in order to be paid her lawful wages; reducing Plaintiff Slizskaya's scheduled hours and pay; denying Plaintiff Slizskaya pay raises; subjecting Plaintiff Slizskaya to

severe discriminatory remarks like being called an "ass face"; and unlawfully terminating Plaintiff Slizskaya's employment.

331.    Defendant Bath Club targeted Plaintiff Slizskaya because of her sex. No similarly situated male employees endured the discriminatory conduct that Plaintiff Slizskaya was forced to endure.

332.    Defendant Bath Club's discriminatory conduct towards Plaintiff Slizskaya negatively impacted both her professional life and personal life. Defendant Bath Club's conduct made Plaintiff Slizskaya feel isolated, humiliated, embarrassed, and ashamed.

333.    Even if Defendant Bath Club could assert legitimate reasons for its discriminatory actions taken against Plaintiff Slizskaya, her protected class status, at a minimum, was a motivating factor for Defendant Bath Club's discriminatory conduct and Plaintiff Slizskaya explicitly reserves the right to pursue a mixed-motive theory against Defendant Bath Club.

334.    As a direct and proximate result of Defendant Bath Club's intentional discriminatory conduct in violation of the FCRA, Plaintiff Slizskaya has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Slizskaya has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Slizskaya accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

335.    Defendant Bath Club's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Slizskaya's rights under the FCRA, warranting the imposition of punitive damages, in addition to compensatory damages.

336.    The conduct of Defendant Bath Club deprived Plaintiff Slizskaya of her statutory rights guaranteed under the FCRA.

337.    Plaintiff Slizskaya further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT XVIII**
**§ 760.10(1), Fla. Stat.**
***FCRA Hostile Work Environment***
**(Plaintiff Vega as Against Defendant Bath Club)**

338.    Plaintiff Vega reincorporates the factual allegations in Paragraphs 30 through 117.

339.    The FCRA prohibits employment discrimination against an individual with respect to compensation, terms, conditions, or privileges of employment because of the individual's sex, pregnancy, or disability. § 760.10(1)(a), Fla. Stat.

340.    Plaintiff Vega is an individual female and is therefore a protected class member.

341.    Defendant Bath Club's discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

342.    Defendant Bath Club's severe and pervasive conduct included, but was not limited to, fostering a humiliating and demeaning work environment for female employees; forcing female employees to endure comments about their bodies, including about their breasts and buttocks; withholding and manipulating Plaintiff Vega's tipped wages; forcing Plaintiff Vega to appease her male supervisor in order to be paid her lawful wages; making inappropriate sexual advances towards Plaintiff Vega; subjecting to Plaintiff Vega to vulgar sexual remarks; touching Plaintiff Vega's body without her consent; and unlawfully terminating Plaintiff Vega's employment.

343.    Defendant Bath Club targeted Plaintiff Vega because of her sex. No similarly situated male employees endured the discriminatory conduct that Plaintiff Vega was forced to endure.

344.    Defendant Bath Club's discriminatory conduct towards Plaintiff Vega negatively impacted both her professional life and personal life. Defendant Bath Club's conduct made Plaintiff Vega feel isolated, humiliated, embarrassed, and ashamed.

345.    Even if Defendant Bath Club could assert legitimate reasons for its discriminatory actions taken against Plaintiff Vega, her protected class status, at a minimum, was a motivating factor for Defendant Bath Club's discriminatory conduct and Plaintiff Vega explicitly reserves the right to pursue a mixed-motive theory against Defendant Bath Club.

346.    As a direct and proximate result of Defendant Bath Club's intentional discriminatory conduct in violation of the FCRA, Plaintiff Vega has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Vega has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Vega accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

347.    Defendant Bath Club's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Vega's rights under the FCRA, warranting the imposition of punitive damages, in addition to compensatory damages.

348.    The conduct of Defendant Bath Club deprived Plaintiff Vega of her statutory rights guaranteed under the FCRA.

349.     Plaintiff Vega further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT XIX**
**§ 760.10(7), Fla. Stat.**
***FCRA Retaliation***
**(Plaintiff Slizskaya as Against Defendant Bath Club)**

350.     Plaintiff Slizskaya incorporates the factual allegations in Paragraphs 30 through 117.

351.     The FCRA prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. § 760.10(7), Fla. Stat.

352.     Plaintiff Slizskaya is an individual female and is therefore a protected class member.

353.     Plaintiff Slizskaya engaged in a protected activity when she opposed Defendant Bath Club's sexual harassment and gender discrimination, complained about Defendant Bath Club's sexual harassment and gender discrimination, and when she participated in the investigation into Defendant Bath Club's sexual harassment and gender discrimination.

354.     In response to Plaintiff Slizskaya asserting her right to enjoy the same employment benefits as every other employee, Defendant Bath Club retaliated against Plaintiff Slizskaya.

355.     Defendant Bath Club retaliated against Plaintiff Slizskaya by engaging in conduct, including but not limited to, withholding and manipulating Plaintiff Slizskaya's pay; reducing Plaintiff Slizskaya's scheduled work hours and pay, denying Plaintiff Slizskaya pay raises, threatening and coercing Plaintiff Slizskaya with termination; and unlawfully terminating Plaintiff Slizskaya's employment.

356.     Defendant Bath Club took the above-mentioned materially adverse actions, among others, against Plaintiff Slizskaya because of her protected activities.

357.     Defendant Bath Club's retaliatory actions were causally connected to Plaintiff Slizskaya's protected activities.

358.     Any reasonable employee in Plaintiff Slizskaya's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Plaintiff Slizskaya was forced to endure.

359.     Defendant Bath Club's alleged bases for its adverse employment actions against Plaintiff Slizskaya are pretextual and have been asserted only to cover up the retaliatory nature of its conduct.

360.     As a direct and proximate result of Defendant Bath Club's retaliatory conduct in violation of the FCRA, Plaintiff Slizskaya has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Slizskaya has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Slizskaya accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

361.     Defendant Bath Club's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Slizskaya's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

362.     The conduct of Defendant Bath Club deprived Plaintiff Slizskaya of her statutory rights guaranteed under the FCRA.

363.    Plaintiff Slizskaya further requests that her attorney's fees and costs be awarded as permitted by law.

### COUNT XX
### § 760.10(7), Fla. Stat.
### *FCRA Retaliation*
### (Plaintiff Vega as Against Defendant Bath Club)

364.    Plaintiff Vega reincorporates the factual allegations in Paragraphs 30 through 117.

365.    The FCRA prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. § 760.10(7), Fla. Stat.

366.    Plaintiff Vega is an individual female and is therefore a protected class member.

367.    Plaintiff Vega engaged in a protected activity when she opposed Defendant Bath Club's sexual harassment and gender discrimination, complained about Defendant Bath Club's sexual harassment and gender discrimination, and when she participated in the investigation into Defendant Bath Club's sexual harassment and gender discrimination.

368.    In response to Plaintiff Vega asserting her right to enjoy the same employment benefits as every other employee, Defendant Bath Club retaliated against Plaintiff Vega.

369.    Defendant Bath Club retaliated against Plaintiff Vega by engaging in conduct, including but not limited to, withholding and manipulating Plaintiff Vega's pay; threatening and coercing Plaintiff Vega with termination; and unlawfully terminating Plaintiff Vega's employment.

370.    Defendant Bath Club took the above-mentioned materially adverse actions, among others, against Plaintiff Vega because of her protected activities.

371.    Defendant Bath Club's retaliatory actions were causally connected to Plaintiff Vega's protected activities.

372.     Any reasonable employee in Plaintiff Vega's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Plaintiff Vega was forced to endure.

373.     Defendant Bath Club's alleged bases for its adverse employment actions against Plaintiff Vega are pretextual and have been asserted only to cover up the retaliatory nature of Defendant Bath Club's conduct.

374.     As a direct and proximate result of the Defendant Bath Club's retaliatory conduct in violation of the FCRA, Plaintiff Vega has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff Vega has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Vega accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

375.     Defendant Bath Club's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Vega's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

376.     The conduct of Defendant Bath Club deprived Plaintiff Vega of her statutory rights guaranteed under the FCRA.

377.     Plaintiff Vega further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT XXI**
**§ 760.10(7), Fla. Stat.**
*FCRA Retaliation*
**(Plaintiff Usai as Against Defendant Bath Club)**

378.     Plaintiff Usai reincorporates the factual allegations in Paragraphs 30 through 117.

379.     The FCRA prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. § 760.10(7), Fla. Stat.

380.     Plaintiff Usai engaged in a protected activity when he opposed Defendant Bath Club's sexual harassment and gender discrimination of female employees and assisted female employees in exercising their protected rights to be free from harassment and discrimination under the FCRA.

381.     In response to Plaintiff Usai's opposition to Defendant Bath Club's unlawful employment practices and his assistance of employees in exercising their protected rights under the FCRA, Defendant Bath Club retaliated against Plaintiff Usai.

382.     Defendant Bath Club retaliated against Plaintiff Usai by engaging in conduct, including but not limited to, unlawfully terminating Mr. Usai's employment.

383.     Defendant Bath Club took the above-mentioned materially adverse actions, among others, against Plaintiff Usai because of his protected activities.

384.     Defendant Bath Club's retaliatory actions were causally connected to Plaintiff Usai's protected activities.

385.     Any reasonable employee in Plaintiff Usai's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Plaintiff Usai was forced to endure.

386.    Defendant Bath Club's alleged basis for its adverse employment actions against Plaintiff Usai are pretextual and have been asserted only to cover up the retaliatory nature of Defendant Bath Club's conduct.

387.    As a direct and proximate result of Defendant Bath Club's retaliatory conduct in violation of the FCRA, Plaintiff Usai has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff Usai has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Usai accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

388.    Defendant Bath Club's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Usai's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

389.    The conduct of the Defendant Bath Club deprived Plaintiff Usai of his statutory rights guaranteed under the FCRA.

390.    Plaintiff Usai further requests that his attorney's fees and costs be awarded as permitted by law.

## COUNT XXII
### § 760.10(7), Fla. Stat.
### *FCRA Retaliation*
### (Plaintiff Giua as Against Defendant Bath Club)

391.    Plaintiff Giua reincorporates the factual allegations in Paragraphs 30 through 117.

392.    The FCRA prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. § 760.10(7), Fla. Stat.

393.   Plaintiff Giua engaged in a protected activity when he opposed Defendant Bath Club's sexual harassment and gender discrimination of female employees and assisted female employees in exercising their protected rights to be free from harassment and discrimination under the FCRA.

394.   In response to Plaintiff Giua's opposition to Defendant Bath Club's unlawful employment practices and his assistance of employees in exercising their protected rights under the FCRA, Defendant Bath Club retaliated against Plaintiff Giua.

395.   Defendant Bath Club retaliated against Plaintiff Giua by engaging in conduct, including but not limited to, unlawfully terminating Mr. Giua's employment.

396.   Defendant Bath Club took the above-mentioned materially adverse actions, among others, against Plaintiff Giua because of his protected activities.

397.   Defendant Bath Club's retaliatory actions were causally connected to Plaintiff Giua's protected activities.

398.   Any reasonable employee in Plaintiff Giua's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Plaintiff Giua was forced to endure.

399.   Defendant Bath Club's alleged basis for its adverse employment actions against Plaintiff Giua are pretextual and have been asserted only to cover up the retaliatory nature of Defendant Bath Club's conduct.

400.   As a direct and proximate result of Defendant Bath Club's retaliatory conduct in violation of the FCRA, Plaintiff Giua has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff Giua has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity,

and other intangible damages. Plaintiff Giua accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

401.    Defendant Bath Club's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Giua's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

402.    The conduct of Defendant Bath Club deprived Plaintiff Giua of his statutory rights guaranteed under the FCRA.

403.    Plaintiff Giua further requests that his attorney's fees and costs be awarded as permitted by law.

<u>**COUNT XXIII**</u>
**§ 11A-26(1), Code of Miami-Dade County**
*MDHRO Discrimination*
**(Plaintiff Slizskaya as Against Defendant Bath Club)**

404.    Plaintiff Slizskaya reincorporates the factual allegations in Paragraphs 30 through 117.

405.    The MDHRO prohibits discrimination with respect to the training, hire, tenure, promotion, transfer, terms, conditions, wages, benefits, or privileges of employment, or in any other matter related to employment because of an individual's sex, pregnancy, or disability. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26.

406.    Plaintiff Slizskaya is an individual female and is therefore a protected class member.

407.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

408.     Defendant Bath Club subjected Plaintiff Slizskaya to discriminatory treatment on the basis of her sex, including but not limited to, withholding and manipulating Plaintiff Slizskaya's tipped wages; forcing Plaintiff Slizskaya to appease her male supervisor in order to be paid her lawful wages; reducing Plaintiff Slizskaya's scheduled hours and pay; denying Plaintiff Slizskaya pay raises; subjecting Plaintiff Slizskaya to severe discriminatory remarks like being called an "ass face"; and unlawfully terminating Plaintiff Slizskaya's employment.

409.     Defendant Bath Club targeted Plaintiff Slizskaya on the basis of her sex. No similarly situated male employees endured the discriminatory conduct that Plaintiff Slizskaya was forced to endure.

410.     The discriminatory actions of Defendant Bath Club against Plaintiff Slizskaya, as described and set forth above, constitute an adverse employment action for purposes of the MDHRO.  In subjecting Plaintiff Slizskaya to adverse employment actions, Defendant Bath Club intentionally discriminated against Plaintiff Slizskaya with respect to the compensation, terms, conditions, or privileges of her employment.

411.     Even if Defendant Bath Club could assert legitimate reasons for its adverse actions taken against Plaintiff Slizskaya, her protected class status, at a minimum, was a motivating factor for Defendant Bath Club's discriminatory conduct and Plaintiff Slizskaya explicitly reserves the right to pursue a mixed-motive theory against Defendant Bath Club.

412.     As a direct and proximate result of Defendant Bath Club's intentional discriminatory conduct in violation of the MDHRO, Plaintiff Slizskaya has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Slizskaya has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Slizskaya

accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

413.    Defendant Bath Club's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Slizskaya's rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

414.    The conduct of Defendant Bath Club deprived Plaintiff Slizskaya of her statutory rights guaranteed under the MDHRO.

415.    Plaintiff Slizskaya further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT XXIV**
**§ 11A-26(1), Code of Miami-Dade County**
***MDHRO Discrimination***
**(Plaintiff Vega as Against Defendant Bath Club)**

416.    Plaintiff Vega reincorporates the factual allegations in Paragraphs 30 through 117.

417.    The MDHRO prohibits discrimination with respect to the training, hire, tenure, promotion, transfer, terms, conditions, wages, benefits, or privileges of employment, or in any other matter related to employment because of an individual's sex, pregnancy, or disability. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26.

418.    Plaintiff Vega is an individual female and is therefore a protected class member.

419.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

420.    Defendant Bath Club subjected Plaintiff Vega to discriminatory treatment on the basis of her sex, including but not limited to, withholding and manipulating Plaintiff Vega's tipped wages; forcing Plaintiff Vega to appease her male supervisor in order to be paid her lawful wages; making inappropriate sexual advances towards Plaintiff Vega; subjecting to Plaintiff Vega to

vulgar sexual remarks; touching Plaintiff Vega's body without her consent; and unlawfully terminating Plaintiff Vega's employment.

421.    Defendant Bath Club targeted Plaintiff Vega on the basis of her sex. No similarly situated male employees endured the discriminatory conduct that Plaintiff Vega was forced to endure.

422.    The discriminatory actions of Defendant Bath Club against Plaintiff Vega, as described and set forth above, constitute an adverse employment action for purposes of the MDHRO.  In subjecting Plaintiff Vega to adverse employment actions, Defendant Bath Club intentionally discriminated against Plaintiff Vega with respect to the compensation, terms, conditions, or privileges of her employment.

423.    Even if Defendant Bath Club could assert legitimate reasons for its adverse actions taken against Plaintiff Vega, her protected class status, at a minimum, was a motivating factor for Defendant Bath Club's discriminatory conduct and Plaintiff Vega explicitly reserves the right to pursue a mixed-motive theory against Defendant Bath Club.

424.    As a direct and proximate result of Defendant Bath Club's intentional discriminatory conduct in violation of the MDHRO, Plaintiff Vega has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Vega has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Vega accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

425.     Defendant Bath Club's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Vega's rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

426.     Defendant Bath Club's conduct deprived Plaintiff Vega of her statutory rights guaranteed under the MDHRO.

427.     Plaintiff Vega further requests that her attorney's fees and costs be awarded as permitted by law.

<u>**COUNT XXV**</u>
**§ 11A-26(4), Code of Miami-Dade County**
***MDHRO Hostile Work Environment***
**(Plaintiff Slizskaya as Against Defendant Bath Club)**

428.     Plaintiff Slizskaya reincorporates the factual allegations in Paragraphs 30 through 117.

429.     The MDHRO prohibits discrimination with respect to the training, hire, tenure, promotion, transfer, terms, conditions, wages, benefits, or privileges of employment, or in any other matter related to employment because of an individual's sex, pregnancy, or disability. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26.

430.     Mr. Slizskaya is an individual female and is therefore a protected class member.

431.     Defendant Bath Club's discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

432.     Defendant Bath Club's severe and pervasive conduct included, but was not limited to, fostering a humiliating and demeaning work environment for female employees; forcing female employees to endure comments about their bodies, including about their breasts and buttocks; withholding and manipulating Plaintiff Slizskaya's tipped wages; forcing Plaintiff Slizskaya to

appease her male supervisor in order to be paid her lawful wages; reducing Plaintiff Slizskaya's scheduled hours and pay; denying Plaintiff Slizskaya pay raises; subjecting Plaintiff Slizskaya to severe discriminatory remarks like being called an "ass face"; and unlawfully terminating Plaintiff Slizskaya's employment.

433.    Defendant Bath Club targeted Plaintiff Slizskaya because of her sex. No similarly situated male employees endured the discriminatory conduct that Plaintiff Slizskaya was forced to endure.

434.    Defendant Bath Club's discriminatory conduct towards Plaintiff Slizskaya negatively impacted both her professional life and personal life. Defendant Bath Club's conduct made Plaintiff Slizskaya feel isolated, humiliated, embarrassed, and ashamed.

435.    Even if Defendant Bath Club could assert legitimate reasons for its discriminatory actions taken against Plaintiff Slizskaya, her protected class status, at a minimum, was a motivating factor for Defendant Bath Club's discriminatory conduct and Plaintiff Slizskaya explicitly reserves the right to pursue a mixed-motive theory against Defendant Bath Club.

436.    As a direct and proximate result of Defendant Bath Club's intentional discriminatory conduct in violation of the MDHRO, Plaintiff Slizskaya has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Slizskaya has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Slizskaya accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

437.    Defendant Bath Club's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Slizskaya's rights under the MDHRO, warranting the imposition of punitive damages, in addition to compensatory damages.

438.    The conduct of Defendant Bath Club deprived Plaintiff Slizskaya of her statutory rights guaranteed under the MDHRO.

439.    Plaintiff Slizskaya further requests that her attorney's fees and costs be awarded as permitted by law.

### COUNT XXVI
### § 11A-26(4), Code of Miami-Dade County
### *MDHRO Hostile Work Environment*
### (Plaintiff Vega as Against Defendant Bath Club)

440.    Plaintiff Vega reincorporates the factual allegations in Paragraphs 30 through 117.

441.    The MDHRO prohibits discrimination with respect to the training, hire, tenure, promotion, transfer, terms, conditions, wages, benefits, or privileges of employment, or in any other matter related to employment because of an individual's sex, pregnancy, or disability. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26.

442.    Plaintiff Vega is an individual female and is therefore a protected class member.

443.    Defendant Bath Club's discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

444.    Defendant Bath Club's severe and pervasive conduct included, but was not limited to, fostering a humiliating and demeaning work environment for female employees; forcing female employees to endure comments about their bodies, including about their breasts and buttocks; withholding and manipulating Plaintiff Vega's tipped wages; forcing Plaintiff Vega to appease her male supervisor in order to be paid her lawful wages; making inappropriate sexual advances

towards Plaintiff Vega; subjecting to Plaintiff Vega to vulgar sexual remarks; touching Plaintiff Vega's body without her consent; and unlawfully terminating Plaintiff Vega's employment.

445. Defendant Bath Club targeted Plaintiff Vega because of her sex. No similarly situated male employees endured the discriminatory conduct that Plaintiff Vega was forced to endure.

446. Defendant Bath Club's discriminatory conduct towards Plaintiff Vega negatively impacted both her professional life and personal life. Defendant Bath Club's conduct made Plaintiff Vega feel isolated, humiliated, embarrassed, and ashamed.

447. Even if Defendant Bath Club could assert legitimate reasons for its discriminatory actions taken against Plaintiff Vega, her protected class status, at a minimum, was a motivating factor for Defendant Bath Club's discriminatory conduct and Plaintiff Vega explicitly reserves the right to pursue a mixed-motive theory against Defendant Bath Club.

448. As a direct and proximate result of Defendant Bath Club's intentional discriminatory conduct in violation of the MDHRO, Plaintiff Vega has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff Vega has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Vega accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

449. Defendant Bath Club's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Vega's rights under the MDHRO, warranting the imposition of punitive damages, in addition to compensatory damages.

450.     The conduct of Defendant Bath Club deprived Plaintiff Vega of her statutory rights guaranteed under the MDHRO.

451.     Plaintiff Vega further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT XXVII**
**§ 11A-26(4), Code of Miami-Dade County**
*MDHRO Retaliation*
**(Plaintiff Slizskaya as Against Defendant Bath Club)**

452.     Plaintiff Slizskaya reincorporates the factual allegations in Paragraphs 30 through 117.

453.     The MDHRO prohibits retaliation in manner against a person who has opposed a discriminatory practice, or who has testified, assisted, or participated, in any manner in an investigation, proceeding or hearing related to an unlawful discriminatory practice. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26(4).

454.     Plaintiff Slizskaya is an individual female and is therefore a protected class member.

455.     Plaintiff Slizskaya engaged in a protected activity when she opposed Defendant Bath Club's sexual harassment and gender discrimination, complained about Defendant Bath Club's sexual harassment and gender discrimination, and when she participated in the investigation into Defendant Bath Club's sexual harassment and gender discrimination.

456.     In response to Plaintiff Slizskaya asserting her right to enjoy the same employment benefits as every other employee, Defendant Bath Club retaliated against Plaintiff Slizskaya.

457.     Defendant Bath Club retaliated against Plaintiff Slizskaya by engaging in conduct, including but not limited to, withholding and manipulating Plaintiff Slizskaya's pay; reducing Plaintiff Slizskaya's scheduled work hours and pay, denying Plaintiff Slizskaya pay raises,

threatening and coercing Plaintiff Slizskaya with termination; and unlawfully terminating Plaintiff Slizskaya's employment.

458.     Defendant Bath Club took the above-mentioned materially adverse actions, among others, against Plaintiff Slizskaya because of her protected activities.

459.     Defendant Bath Club's retaliatory actions were causally connected to Plaintiff Slizskaya's protected activities.

460.     Any reasonable employee in Plaintiff Slizskaya's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Plaintiff Slizskaya was forced to endure.

461.     Defendant Bath Club's alleged bases for its adverse employment actions against Plaintiff Slizskaya are pretextual and have been asserted only to cover up the retaliatory nature of its conduct.

462.     As a direct and proximate result of Defendant Bath Club's retaliatory conduct in violation of the MDHRO, Plaintiff Slizskaya has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Slizskaya has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Slizskaya accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

463.     Defendant Bath Club's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Slizskaya's rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

464.     The conduct of Defendant Bath Club deprived Plaintiff Slizskaya of her statutory rights guaranteed under the MDHRO.

465.     Plaintiff Slizskaya further requests that her attorney's fees and costs be awarded as permitted by law.

### COUNT XXVIII
### § 11A-26(4), Code of Miami-Dade County
### *MDHRO Retaliation*
### (Plaintiff Vega as Against Defendant Bath Club)

466.     Plaintiff Vega reincorporates the factual allegations in Paragraphs 30 through 117.

467.     The MDHRO prohibits retaliation in manner against a person who has opposed a discriminatory practice, or who has testified, assisted, or participated, in any manner in an investigation, proceeding or hearing related to an unlawful discriminatory practice. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26(4).

468.     Plaintiff Vega is an individual female and is therefore a protected class member.

469.     Plaintiff Vega engaged in a protected activity when she opposed Defendant Bath Club's sexual harassment and gender discrimination, complained about Defendant Bath Club's sexual harassment and gender discrimination, and when she participated in the investigation into Defendant Bath Club's sexual harassment and gender discrimination.

470.     In response to Plaintiff Vega asserting her right to enjoy the same employment benefits as every other employee, Defendant Bath Club retaliated against Plaintiff Vega.

471.     Defendant Bath Club retaliated against Plaintiff Vega by engaging in conduct, including but not limited to, withholding and manipulating Plaintiff Vega's pay; threatening and coercing Plaintiff Vega with termination; and unlawfully terminating Plaintiff Vega's employment.

472.     Defendant Bath Club took the above-mentioned materially adverse actions, among others, against Plaintiff Vega because of her protected activities.

473.     Defendant Bath Club's retaliatory actions were causally connected to Plaintiff Vega's protected activities.

474.     Any reasonable employee in Plaintiff Vega's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Plaintiff Vega was forced to endure.

475.     Defendant Bath Club's alleged bases for its adverse employment actions against Plaintiff Vega are pretextual and have been asserted only to cover up the retaliatory nature of its conduct.

476.     As a direct and proximate result of Defendant Bath Club's retaliatory conduct in violation of the MDHRO, Plaintiff Vega has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff Vega has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Vega accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

477.     Defendant Bath Club's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Vega's rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

478.     The conduct of Defendant Bath Club deprived Plaintiff Vega of her statutory rights guaranteed under the MDHRO.

479.     Plaintiff Vega further requests that her attorney's fees and costs be awarded as permitted by law.

## COUNT XXIX
### § 11A-26(4), Code of Miami-Dade County
### *MDHRO Retaliation*
### (Plaintiff Usai as Against Defendant Bath Club)

480.     Plaintiff Usai reincorporates the factual allegations in Paragraphs 30 through 117.

481.     The MDHRO prohibits retaliation in manner against a person who has opposed a discriminatory practice, or who has testified, assisted, or participated, in any manner in an investigation, proceeding or hearing related to an unlawful discriminatory practice. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26(4).

482.     Plaintiff Usai engaged in a protected activity when he opposed Defendant Bath Club's sexual harassment and gender discrimination of female employees and assisted female employees in exercising their protected rights to be free from harassment and discrimination under the MDHRO.

483.     In response to Plaintiff Usai's opposition to Defendant Bath Club's unlawful employment practices and his assistance of employees in exercising their protected rights under the MDHRO, Defendant Bath Club retaliated against Plaintiff Usai.

484.     Defendant Bath Club retaliated against Plaintiff Usai by engaging in conduct, including but not limited to, unlawfully terminating Mr. Usai's employment.

485.     Defendant Bath Club took the above-mentioned materially adverse actions, among others, against Plaintiff Usai because of his protected activities.

486.     Defendant Bath Club's retaliatory actions were causally connected to Plaintiff Usai's protected activities.

487.     Any reasonable employee in Plaintiff Usai's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Plaintiff Usai was forced to endure.

488.     Defendant Bath Club's alleged basis for its adverse employment actions against Plaintiff Usai are pretextual and have been asserted only to cover up the retaliatory nature of Defendant Bath Club's conduct.

489.     As a direct and proximate result of Defendant Bath Club's retaliatory conduct in violation of the MDHRO, Plaintiff Usai has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff Usai has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Usai accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

490.     Defendant Bath Club's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Usai's rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

491.     The conduct of Defendant Bath Club deprived Plaintiff Usai of his statutory rights guaranteed under the MDHRO.

492.     Plaintiff Usai further requests that his attorney's fees and costs be awarded as permitted by law.

**COUNT XXX**
**§ 11A-26(4), Code of Miami-Dade County**
*MDHRO Retaliation*
**(Plaintiff Giua as Against Defendant Bath Club)**

493.     Plaintiff Giua reincorporates the factual allegations in Paragraphs 30 through 117.

494.    The MDHRO prohibits retaliation in manner against a person who has opposed a discriminatory practice, or who has testified, assisted, or participated, in any manner in an investigation, proceeding or hearing related to an unlawful discriminatory practice. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26(4).

495.    Plaintiff Giua engaged in a protected activity when he opposed Defendant Bath Club's sexual harassment and gender discrimination of female employees and assisted female employees in exercising their protected rights to be free from harassment and discrimination under the MDHRO.

496.    In response to Plaintiff Giua's opposition to Defendant Bath Club's unlawful employment practices and his assistance of employees in exercising their protected rights under the MDHRO, Defendant Bath Club retaliated against Plaintiff Giua.

497.    Defendant Bath Club retaliated against Plaintiff Giua by engaging in conduct, including but not limited to, unlawfully terminating Mr. Giua's employment.

498.    Defendant Bath Club took the above-mentioned materially adverse actions, among others, against Plaintiff Giua because of his protected activities.

499.    Defendant Bath Club's retaliatory actions were causally connected to Plaintiff Giua's protected activities.

500.    Any reasonable employee in Plaintiff Giua's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Plaintiff Giua was forced to endure.

501.    Defendant Bath Club's alleged basis for its adverse employment actions against Plaintiff Giua are pretextual and have been asserted only to cover up the retaliatory nature of Defendant Bath Club's conduct.

502.     As a direct and proximate result of the Defendant Bath Club's retaliatory conduct in violation of the MDHRO, Plaintiff Giua has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff Giua has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff Giua accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

503.     Defendant Bath Club's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff Giua's rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

504.     The conduct of the Defendant Bath Club deprived Plaintiff Giua of his statutory rights guaranteed under the MDHRO.

505.     Plaintiff Giua further requests that his attorney's fees and costs be awarded as permitted by law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request this Court enter judgment against Defendants for all damages suffered by Plaintiffs, including economic damages, lost wages (back pay and front pay) and benefits, liquidated damages, statutory damages, compensatory damages, emotional distress damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law as a result of the Defendants' conduct in violation of the FLSA, Title VII, the FCRA, and the MDHRO.

## JURY DEMAND

Plaintiffs hereby request a jury trial on all issues to be tried.

Dated:  Miami, Florida
       December 10, 2024,

**DEREK SMITH LAW GROUP, PLLC**
*Counsel for Plaintiff*

*/s/ Kyle T. MacDonald*
Kyle T. MacDonald, Esq.
Florida Bar No.: 1038749
Derek Smith Law Group, PLLC
520 Brickell Key Drive, Suite O-301
Miami, FL 33131
Tel: (305) 946-1884
Kyle@dereksmithlaw.com