# EXHIBIT A

February 6, 2023

**VIA ELECTRONIC MAIL**

Massimiliano Giua
Email: maxgiua14@gmail.com

**Re: Offer of Employment — Massimilaino Giua, Director of Restaurant & Lounge**

Dear Mr. Giua:

On behalf of Club Management Miami II, LLC ("Company"), I am pleased to confirm the following terms for your at-will employment as the Director of Restaurant & Lounge with the Company for the business and operations of its affiliate doing business as The Bath Club.

1) **General Duties:** As the Restaurant and Lounge General Manager, you will do and perform all duties customarily inherent to the position of a director for a restaurant and lounge operations for a business such as The Bath Club and other related duties as may be assigned by the Director of Operations & Wine Program for The Bath Club, was well as any duties and responsibilities that may from time to time be assigned to you, or further clarified as being part of your assigned duties and responsibilities, by the ownership of the Company, which additional duties and responsibilities, if any, shall be set forth in either an email from ownership of the  Company or the general counsel for The Peebles Corporation or as an attachment labelled "Exhibit A" and subsequently attached hereto. You shall perform your duties and fulfill your responsibilities at all times consistent with The Bath Club Experience. "The Bath Club Experience" means an exclusively inclusive ambience for Company ownership, and all members, their guests, prospective members, on-site event participants, prospective on-site event organizers, and other guests and patrons which provides enriching experiences in surroundings exuding privacy and luxury consistent with an appreciation for the place, legacy, and authenticity of the historic origins of The Bath Club.

2) **Commencement and Date; At-Will Employment:** Your employment with the Company will start on Monday February 6, 2023. This position is terminable at will, meaning that this Agreement does not create any obligation on your part to continue working for Company, nor for Company to continue employing you for any fixed period of time, and that your employment with Company may be terminated at any time with or without cause by either party.

3) **Conclusion of Employment:** Your employment with Company will conclude when agreed.

4) **Compensation:** Company or its affiliate(s) shall pay to you as compensation for your services equal to One-Hundred Thirty Thousand Dollars ($130,000) per year ("Salary") payable in periodic payments in accordance with the Company's normal semi-monthly payroll periods. You will be eligible to receive a discretionary quarterly bonus anticipated to be drawn from a percent of net revenues and in all cases to be based upon personal performance and the Company's results of operations. Performance evaluations and bonus determinations are conducted quarterly presently anticipated in the months of March, June, September and December, but such determination

At-will Employment Agreement: Club Management Miami II, LLC and Massimiliano Giua, Page 2

months are subject to change at the discretion of the Company.

All your compensation that is subject to taxation shall be subject to, and reduced by, any applicable federal, State or local income tax withholding and FICA tax, any authorized deductions, and any other taxes imposed by law.

5) **Reimbursement of Expenses:** Except as otherwise provided herein, Company or its affiliates shall pay, either directly or by reimbursement to you, such reasonable and necessary business expenses incurred by you as are consistent with Company's Employment Policies, including any applicable dollar limitations and verification and record keeping requirements.

6) **Paid Time Off ("PTO"):** You will be entitled to 3 Weeks of PTO. PTO is accrued incrementally per pay period and is to be used in four (4) hour increments.

7) **Other Benefits:** During the term of your employment, you shall be entitled to all fringe benefits offered generally to other employees of Company, subject always to the rules in effect regarding participation in such plans. Following the commencement of employment, you shall have the right to enroll in health, dental and vision care plans with your individual premiums paid by Company.

8) **Confidentiality/Work Made for-Hire/Non-Solicitation:** You have a fiduciary duty to Company and you shall hold in confidence and shall not, except in the course of performing your employment obligations or pursuant to written authorization from Company or as may be required by law or court order, at any time during or after termination of your employment with Company (a) directly or indirectly reveal, report, publish, disclose or transfer the Confidential Information (as defined below) or any part thereof to any person or entity; (b) use any of the Confidential Information or any part thereof for any purpose other than for the benefit of Company; or (c) assist any person or entity other than TPC in securing any benefit from the Confidential Information or any part thereof.

   a) <u>Confidentiality</u>. You agree that all Confidential Information shall belong exclusively to Company. "<u>Confidential Information</u>" shall mean each of the following: (i) any information or material proprietary to Company or designated as confidential either orally or in writing by Company; (ii) any information not generally known by non-Company personnel (including, but not limited to, potential development project research on site selection, due diligence, financing, budgeting, contract negotiation, site acquisition, investment packaging, permitting, legal concerns and other such information that you have access solely by virtue of your employment with Company); (iii) any information which you should know Company would not care to have revealed to non-Company personnel or used in competition with Company; (iv) any information which is not otherwise available to the general public and which you made or make, conceived or conceives, developed or develops or obtained or obtains knowledge or access through or as a result of your relationship with Company (including information received, originated, discovered or developed in whole or in part by you) from the initial date of your employment with Company until the date of termination; and (v) any non-public information relating to R. Donahue Peebles personally and/or his family members.

   b) <u>Work Made for Hire</u>. You acknowledge and agree that any works of authorship you create as an employee of Company constitute commissioned "work for hire" within the meaning of United States copyright law, which will be owned solely and exclusively by Company. If the work is determined not to be a "work for hire" or such doctrine is not effective, then you hereby

At-will Employment Agreement: Club Management Miami II, LLC and Massimiliano Giua, Page 3

irrevocably assign, convey and otherwise transfer to Company, and its respective successors, licensees, and assigns, all right, title and interest worldwide in and to the work and all proprietary rights therein, including, but not limited to, all copyrights, trademarks, design patents, trade secret rights, moral rights, and all contract and licensing rights, and all claims and causes of action with respect to any of the foregoing, whether now known or hereafter to become known.

c) <u>Non-solicitation</u>.  While employed by Company and for a period of twenty-four (24) months after the cessation of employment for any reason, you shall not induce or attempt to influence, either directly or indirectly, any other employee, client, client affiliates or agents, customer, contractor of Company or any of its affiliates to terminate his/her/its employment, client or relationship with Company (or the applicable affiliate) to work for you or any other person or entity.

d) <u>Devotion to Employment</u>. You agree to devote a minimum of 40 hours per week to services on behalf of Company; provided, however, that nothing contained herein shall prohibit you from investing or trading in stocks, bonds, commodities or other forms of investment, including real property that is in no way related to Company's business.

e) <u>Exceptions to Restrictions</u>.  Notwithstanding any provision in this Agreement, including without limitation this <u>Paragraph 8</u>, nothing herein or in any other agreement shall prohibit or restrict you (or your attorney) from reporting possible violations of federal, state or local law or regulation to, or discussing any such possible violations with, any governmental agency or entity, including by initiating communications directly with, responding to any inquiry from, or providing testimony before any federal, state, or local regulatory authority or agency, including without limitation the Securities and Exchange Commission, the Equal Employment Opportunity Commission, the National Labor Relations Board and the Occupational Safety and Health Administration.

f) <u>Representation and Warranty</u>.  You hereby represent and warrant to Company that the execution and delivery of this Agreement by you and the performance of your fiduciary and other duties to Company, including, but not limited to those duties set forth in this <u>Paragraph 8</u>, will not violate or be in conflict with any fiduciary duty or other duty, agreement, document, arrangement or other understanding to which you are a party or which you are or may be bound or subject.

   i) <u>Acknowledgements</u>.        You acknowledge that the restrictions set forth in <u>Paragraph 8</u> are reasonable in scope and length and are necessary to the preservation of Company's business and proprietary properties and interests, and that the enforcement thereof will not in any manner preclude you, in the event of your separation of employment with Company, from becoming gainfully employed in such manner and to such extent as to provide a standard of living for you, the members of your family and those dependent upon your of at least to the sort and fashion to which you and they have become accustomed and may expect. You acknowledge that you will come to possess unique and special skills, knowledge and abilities by virtue of your access to the Confidential Information, which gives the Confidential Information and you a peculiar value, and that a breach by you of the provisions of <u>Paragraph 8</u> cannot reasonably or adequately be compensated in damages in an action at law; and such a breach of any of these provisions will cause Company irreparable injury and damage. Accordingly, without limiting the right of Company to pursue any and all other remedies available to it for violation of the covenants of <u>Paragraph 8</u>, Company shall be entitled, in

At-will Employment Agreement: Club Management Miami II, LLC and Massimiliano Giua, Page 4

addition to any other remedies it may have, to preliminary and permanent injunctive and other equitable relief, without the necessity of posting any bond, to prevent a breach or to curtail any breach or threatened breach of this Paragraph 8 both during the term of your employment and thereafter with respect to obligations continuing after the cessation of your employment. In the event that an arbitrator or court (as provided in Paragraph 10(e)) finds the scope of this provision to be unreasonably broad or if the length of time of this provision is found to be unreasonably long, an arbitrator or court, as applicable, shall narrow the scope or shorten the length of time to the extent required to render the provision reasonable and enforceable and shall enforce the provision as so narrowed. You further acknowledge that the provisions of Paragraph 8 are a material inducement to Company to offer you employment and that if the provisions of this Paragraph 8 were not included in this Agreement, then your employment would not commence or continue.

9) **Termination:**
   a) <u>Events Causing Termination</u>. This Agreement shall terminate immediately on the occurrence of any one of the following events:
      i) The occurrence of circumstances that make it impossible or impracticable for the business of Company to be continued;
      ii) Your death;
      iii) Your adjudication as incompetent;
      iv) Your breach of Company's Employment Policies, workplace rules or duties;
      v) Your continued neglect of obligations and duties under this Agreement;
      vi) Your continued incapacity to perform duties;
      vii) Your conviction of a crime;
      viii) Your misappropriation of Company funds or misuse of Company's assets;
         (1) Your failure to cooperate in any investigation conducted by Company;
         (2) Your willful or negligent damage to the property (resulting in a material loss to Company), business, reputation or goodwill of Company;
         (3) Your harassment, bullying, cause of a personal injury or assault of any employee or other person in the course of the performance of services for Company;
         (4) Your reporting to work in a condition unfit to perform your duties (e.g., reporting to work with measurable amounts of illegal drugs or controlled substances in your system or being under the influence of alcohol or drugs or controlled substances, or other such causes); or
         (5) Your commission of an act involving immoral, shameful or unethical conduct or conduct that, directly or indirectly, impairs or injures the goodwill, reputation or otherwise harms Company.
         (6) <u>Compensation Upon Termination</u>.
            (a) In the event of the termination of this Agreement for cause pursuant to Paragraph 9(a), you shall be entitled to the compensation earned prior to the date of termination as provided for in this Agreement, computed pro rata up to and including that date. You shall be entitled to no further compensation after the date of termination.
         (7) <u>Return of Documents and Materials upon Cessation/Termination of Employment</u>. Upon the cessation of your employment with Company for any reason, and at any earlier time upon notice to you, you shall (i) deliver or cause to be delivered to Company any and all Company property including computers, smartphones, software, notebooks, keys, keycards, data and other documents and materials in

At-will Employment Agreement: Club Management Miami II, LLC and Massimiliano Giua, Page 5

your possession or under your control; (ii) remove, at your sole cost and expense, from Company's premises such equipment and personal effects as belong solely to you; (iii) deliver, and not retain any copies of, all original and copies of documents (whether physical or electronic) that relate to Company or its business (whether or not including Confidential Information); and (iv) cooperate with Company to ensure that all Company materials and files are removed from any device (*e.g.,* phone, tablet, computer) that will remain in your possession (regardless of who owns the device). Company has a proprietary right in all of its physical locations, telephone numbers and files and, upon any termination of services hereunder, such items shall, except as hereinafter set forth, continue to belong solely to Company and shall remain the sole and exclusive property of Company. You hereby relinquish any and all claims and interests therein and for the use thereof.

10) **Miscellaneous:**

    a) <u>Entire Agreement.</u> This Agreement contains the entire agreement between the parties hereto relating to the subject matter hereof, and this Agreement supersedes all prior understandings and agreements, whether oral or written, relating to your employment with Company.

    b) <u>Assignment.</u> Neither this Agreement, nor any of your rights, powers, duties or obligations hereunder may be assigned or delegated by you; provided, however, any amounts owing to you upon death shall inure to the benefit of your heirs, legatees, legal representatives, executor or administrator. This Agreement may be assigned by Company to any successor. Successors of Company shall include, but not be limited to, any company or companies acquiring, directly or indirectly, all or substantially all of the assets of Company, whether by merger, consolidation, purchase, lease or otherwise, and such successor shall thereafter be deemed "Company" for the purpose hereof.

    c) <u>Amendment; Waiver.</u> This Agreement shall not be amended, altered, modified or discharged except by an instrument in writing duly executed by both parties hereto. Neither the waiver by the parties hereto of a breach of, or default under, any of the provisions of this Agreement, nor the failure of either of the parties, on one or more occasions, to enforce any of the provisions of this Agreement or to exercise any right or privilege hereunder, shall be construed as a waiver of any such provisions, rights or privileges hereunder.

    d) <u>Severability.</u> The invalidity or unenforceability of any provision or provisions of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect.

    e) <u>Dispute Resolution.</u>

        i) Any and all disputes arising out of or relating to this Agreement, or the breach thereof, shall be exclusively and finally resolved by arbitration administered by the American Arbitration Association (the "<u>AAA</u>") under its Employment Arbitration Rules and Mediation Procedures, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. The arbitration will be conducted in Miami-Dade County, Florida, in accordance with the United States Arbitration Act. The arbitration shall be conducted by a single arbitrator to be selected in accordance with the rules of the AAA. The award of the arbitrator shall be rendered within thirty (30) calendar days after receipt of any post-hearing briefs and a statement of the reasons upon which the award is granted shall accompany the award.

        ii) Each party shall pay its own costs and expenses, including attorneys' fees, related to such arbitration, unless an award of attorneys' fees is available to the "prevailing party"

At-will Employment Agreement: Club Management Miami II, LLC and Massimiliano Giua, Page 6

or prevailing plaintiff as a matter of substantive right under applicable law. Each party shall initially split the costs of arbitration other than attorneys' fees. The fees (if any) and costs and expenses of arbitration shall be part of the award.

iii) There shall be no right or authority for any dispute or claim to be arbitrated on a class or collective action basis, and Employee waives any right he might otherwise have to proceed on such basis.

iv) Notwithstanding any other provision of this Paragraph 9(e), a party may bring a suit or action in the 11th Judicial Circuit in and for Miami-Dade County, Florida or the United States District Court for the Southern District of Florida: (a) to petition a court for injunctive relief with respect to a matter arising under or relating to this Agreement; (b) to seek judicial enforcement of an order granted by an arbitrator under this Paragraph 10(e); or (c) as permitted under the United States Arbitration Act.

v) Notwithstanding any other provision of this Paragraph 10(e) to the contrary, the following are expressly excluded from this arbitration provision and are not covered by this Agreement:

(1) Claims related to workers' compensation or unemployment insurance;

(2) Claims arising under the National Labor Relations Act, or any claims or disputes by whistleblowers arising pursuant to the Sarbanes-Oxley Act; and

(3) Claims that are expressly excluded from arbitration by federal, state or local statute, or that are expressly required to be arbitrated under a different procedure under Company's employee benefit plan.

(a) You further acknowledge that the provisions of this Paragraph 10(e) are a material inducement to TPC to enter this Agreement and that if the provisions of this Paragraph 10(e) were not included in this Agreement, then TPC would not have entered this Agreement and your employment would not commence or continue.

f) Applicable Law. In deciding any arbitration or court proceeding arising here from, the arbitrator or court shall apply the laws of the State of Florida, excluding any conflict-of-laws rule or principle. However, matters relating to the enforceability of Paragraph 10 and to any arbitration award granted thereunder shall be governed by the United States Arbitration Act.

g) Notices. All notices, demands, requests or other communications which may be, or are required to be given, served or sent by any party to any party pursuant to this Agreement shall be in writing and shall be transmitted to employee by email to the address below and to the Company by hand delivery or recognized overnight courier service, with a copy sent via electronic mail, and addressed as set forth below:

If to you:

Massimiliano Giua
Email: maxgiua14@gmail.com

If to Company:

c/o The Peebles Corporation
1691 Michigan Avenue, Suite 250
Miami Beach, FL 33139

At-will Employment Agreement: Club Management Miami ll, LLC and Massimiliano Giua, Page 7

Attn.: R. Donahue Peebles
Email: rdpceo@peeblescorp.com

h) <u>Execution</u>.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute but one and the same instrument. Delivery of an executed counterpart signature page to this Agreement by electronic means shall be as effective as delivery of a manually executed counterpart of this Agreement.

i) <u>Survival</u>.  It is the express intention and agreement of the parties that the provisions of <u>Paragraphs 8</u>, <u>9</u>, and <u>10</u> hereof shall survive the cessation of your employment.


[SIGNATURE PAGE FOLLOWS]

At-will Employment Agreement: Club Management Miami II, LLC and Massimiliano Giua, Page 8

Please advise if the above terms do not accurately reflect our offer in any way. I would be delighted for you to accept the position as Director of Restaurant & Lounge, and I would look forward to working with you.

Best regards,
**CLUB MANAGEMENT MIAMI II, LLC**

By: _____
R. Donahue Peebles

By signing below, I represent and warrant that I am under no restriction or agreement with a former employer or anyone that would prevent me from accepting the offer to become Director of Operations and Wine Program and complying with all of its terms as set forth in this At-Will Employment Agreement. By accepting this offer of at-will employment, I agree to continue to abide by all Employment Policies of Company, including any amendments previously acknowledge by me or hereafter adopted and made available to me. I hereby accept this offer of at will employment upon the terms as set forth in this Agreement.

_____
**MASSIMILIANO GIUA**

Date: _____

At-will Employment Agreement: Club Management Miami II, LLC and Massimiliano Giua, Page 8

Please advise if the above terms do not accurately reflect our offer in any way. I would be delighted for you to accept the position as Director of Restaurant & Lounge, and I would look forward to working with you.

Best regards,
**CLUB MANAGEMENT MIAMI II, LLC**

By: _____
R. Donahue Peebles

By signing below, I represent and warrant that I am under no restriction or agreement with a former employer or anyone that would prevent me from accepting the offer to become Director of Operations and Wine Program and complying with all of its terms as set forth in this At-Will Employment Agreement. By accepting this offer of at-will employment, I agree to continue to abide by all Employment Policies of Company, including any amendments previously acknowledge by me or hereafter adopted and made available to me. I hereby accept this offer of at will employment upon the terms as set forth in this Agreement.

_____
MASSIMILIANO GIUA

Date: _____ 02/06/2023

# EXHIBIT B

February 6, 2023

**VIA ELECTRONIC MAIL**

Ricardo Usai
Email: riccardo914.ru@gmail.com

**Re: Offer of Employment — Riccardo Usai, Director of Operations and Wine Program**

Dear Mr. Usai:

On behalf of Club Management Miami II, LLC ("Company"), I am pleased to confirm the following terms for your at-will employment as the Director of Operations and Wine Program with the Company for the business and operations of its affiliate doing business as The Bath Club.

1) **General Duties:** As the Director of Operations and Wine Program, you will do and perform all duties customarily inherent to the position of director of operations for a business such as The Bath Club and other related duties as may be assigned by the Company, including but not limited to, the duties and responsibilities set forth on Exhibit A attached hereto.

2) **Commencement and Date; At-Will Employment:** Your employment with the Company will start on Monday February 6, 2023. This position is terminable at will, meaning that this Agreement does not create any obligation on your part to continue working for Company, nor for Company to continue employing you for any fixed period of time, and that your employment with Company may be terminated at any time with or without cause by either party.

3) **Conclusion of Employment:** Your employment with Company will conclude when agreed.

4) **Compensation:** Company or its affiliate(s) shall pay to you as compensation for your services equal to One-Hundred Seventy Thousand Dollars ($170,000) per year ("Salary") payable in periodic payments in accordance with the Company's normal semi-monthly payroll periods. You will be eligible to receive a discretionary quarterly bonus anticipated to be drawn from a percent of net revenues and in all cases to be based upon paersonal performance and the Company's results of operations, including achievement of net income distributable to ownership of the Company. The aggregate bonus pool for the senior management of The Bath Club in good standing at each time bonus pool determinations are approved by the Company's controlling ownership is presently intended by such controlling ownership to be based, assuming the Company is achieving net income distributable to ownership of the Company, on the principles outlined in Exhibit B attached hereto. The specific allocation of bonus pool to, including specific amounts payable to, each member of senior management, including you, shall be subject to the approval of the controlling ownership of the Company in the exercise of such controlling ownership's sole discretion. Performance evaluations and bonus determinations are conducted quarterly presently anticipated in the months of March, June, September and December, but such determination months are subject to change at the discretion of the Company.

All your compensation that is subject to taxation shall be subject to, and reduced by, any applicable federal, State or local income tax withholding and FICA tax, any authorized deductions, and any

At-will Employment Agreement: TPC and Riccardo Usai, Page 2

other taxes imposed by law.

5) **Reimbursement of Expenses:** Except as otherwise provided herein, Company or its affiliates shall pay, either directly or by reimbursement to you, such reasonable and necessary business expenses incurred by you as are consistent with Company's Employment Policies, including any applicable dollar limitations and verification and record keeping requirements.

6) **Paid Time Off ("PTO"):** You will be entitled to 3 Weeks of PTO. PTO is accrued incrementally per pay period and is to be used in four (4) hour increments.

7) **Other Benefits:** During the term of your employment, you shall be entitled to all fringe benefits offered generally to other employees of Company, subject always to the rules in effect regarding participation in such plans. Following the commencement of employment, you shall have the right to enroll in health, dental and vision care plans with your individual premiums paid by Company.

8) **Confidentiality/Work Made for-Hire/Non-Solicitation:** You have a fiduciary duty to Company and you shall hold in confidence and shall not, except in the course of performing your employment obligations or pursuant to written authorization from Company or as may be required by law or court order, at any time during or after termination of your employment with Company (a) directly or indirectly reveal, report, publish, disclose or transfer the Confidential Information (as defined below) or any part thereof to any person or entity; (b) use any of the Confidential Information or any part thereof for any purpose other than for the benefit of Company; or (c) assist any person or entity other than TPC in securing any benefit from the Confidential Information or any part thereof.

   a) <u>Confidentiality</u>. You agree that all Confidential Information shall belong exclusively to Company. "<u>Confidential Information</u>" shall mean each of the following: (i) any information or material proprietary to Company or designated as confidential either orally or in writing by Company; (ii) any information not generally known by non-Company personnel (including, but not limited to, potential development project research on site selection, due diligence, financing, budgeting, contract negotiation, site acquisition, investment packaging, permitting, legal concerns and other such information that you have access solely by virtue of your employment with Company); (iii) any information which you should know Company would not care to have revealed to non-Company personnel or used in competition with Company; (iv) any information which is not otherwise available to the general public and which you made or make, conceived or conceives, developed or develops or obtained or obtains knowledge or access through or as a result of your relationship with Company (including information received, originated, discovered or developed in whole or in part by you) from the initial date of your employment with Company until the date of termination; and (v) any non-public information relating to R. Donahue Peebles personally and/or his family members.

   b) <u>Work Made for Hire</u>. You acknowledge and agree that any works of authorship you create as an employee of Company constitute commissioned "work for hire" within the meaning of United States copyright law, which will be owned solely and exclusively by Company. If the work is determined not to be a "work for hire" or such doctrine is not effective, then you hereby irrevocably assign, convey and otherwise transfer to Company, and its respective successors, licensees, and assigns, all right, title and interest worldwide in and to the work and all proprietary rights therein, including, but not limited to, all copyrights, trademarks, design patents, trade secret rights, moral rights, and all contract and licensing rights, and all claims

At-will Employment Agreement: TPC and Riccardo Usai, Page 3

and causes of action with respect to any of the foregoing, whether now known or hereafter to become known.

c) <u>Non-solicitation</u>.  While employed by Company and for a period of twenty-four (24) months after the cessation of employment for any reason, you shall not induce or attempt to influence, either directly or indirectly, any other employee, client, client affiliates or agents, customer, contractor of Company or any of its affiliates to terminate his/her/its employment, client or relationship with Company (or the applicable affiliate) to work for you or any other person or entity.

d) <u>Devotion to Employment</u>. You agree to devote a minimum of 40 hours per week to services on behalf of Company; provided, however, that nothing contained herein shall prohibit you from investing or trading in stocks, bonds, commodities or other forms of investment, including real property that is in no way related to Company's business.

e) <u>Exceptions to Restrictions</u>.  Notwithstanding any provision in this Agreement, including without limitation this <u>Paragraph 8</u>, nothing herein or in any other agreement shall prohibit or restrict you (or your attorney) from reporting possible violations of federal, state or local law or regulation to, or discussing any such possible violations with, any governmental agency or entity, including by initiating communications directly with, responding to any inquiry from, or providing testimony before any federal, state, or local regulatory authority or agency, including without limitation the Securities and Exchange Commission, the Equal Employment Opportunity Commission, the National Labor Relations Board and the Occupational Safety and Health Administration.

f) <u>Representation and Warranty</u>.  You hereby represent and warrant to Company that the execution and delivery of this Agreement by you and the performance of your fiduciary and other duties to Company, including, but not limited to those duties set forth in this <u>Paragraph 8</u>, will not violate or be in conflict with any fiduciary duty or other duty, agreement, document, arrangement or other understanding to which you are a party or which you are or may be bound or subject.

    i) <u>Acknowledgements</u>.        You acknowledge that the restrictions set forth in <u>Paragraph 8</u> are reasonable in scope and length and are necessary to the preservation of Company's business and proprietary properties and interests, and that the enforcement thereof will not in any manner preclude you, in the event of your separation of employment with Company, from becoming gainfully employed in such manner and to such extent as to provide a standard of living for you, the members of your family and those dependent upon your of at least to the sort and fashion to which you and they have become accustomed and may expect. You acknowledge that you will come to possess unique and special skills, knowledge and abilities by virtue of your access to the Confidential Information, which gives the Confidential Information and you a peculiar value, and that a breach by you of the provisions of <u>Paragraph 8</u> cannot reasonably or adequately be compensated in damages in an action at law; and such a breach of any of these provisions will cause Company irreparable injury and damage. Accordingly, without limiting the right of Company to pursue any and all other remedies available to it for violation of the covenants of <u>Paragraph 8</u>, Company shall be entitled, in addition to any other remedies it may have, to preliminary and permanent injunctive and other equitable relief, without the necessity of posting any bond, to prevent a breach or to curtail any breach or threatened breach of this <u>Paragraph 8</u> both during the term of your employment and thereafter with respect to obligations continuing after the cessation of your employment. In the

At-will Employment Agreement: TPC and Riccardo Usai, Page 4

event that an arbitrator or court (as provided in <u>Paragraph 10(e)</u>) finds the scope of this provision to be unreasonably broad or if the length of time of this provision is found to be unreasonably long, an arbitrator or court, as applicable, shall narrow the scope or shorten the length of time to the extent required to render the provision reasonable and enforceable and shall enforce the provision as so narrowed. You further acknowledge that the provisions of <u>Paragraph 8</u> are a material inducement to Company to offer you employment and that if the provisions of this <u>Paragraph 8</u> were not included in this Agreement, then your employment would not commence or continue.

9) **Termination:**
   a) <u>Events Causing Termination.</u> This Agreement shall terminate immediately on the occurrence of any one of the following events:
      i) The occurrence of circumstances that make it impossible or impracticable for the business of Company to be continued;
      ii) Your death;
      iii) Your adjudication as incompetent;
      iv) Your breach of Company's Employment Policies, workplace rules or duties;
      v) Your continued neglect of obligations and duties under this Agreement;
      vi) Your continued incapacity to perform duties;
      vii) Your conviction of a crime;
      viii) Your misappropriation of Company funds or misuse of Company's assets;
         (1) Your failure to cooperate in any investigation conducted by Company;
         (2) Your willful or negligent damage to the property (resulting in a material loss to Company), business, reputation or goodwill of Company;
         (3) Your harassment, bullying, cause of a personal injury or assault of any employee or other person in the course of the performance of services for Company;
         (4) Your reporting to work in a condition unfit to perform your duties (e.g., reporting to work with measurable amounts of illegal drugs or controlled substances in your system or being under the influence of alcohol or drugs or controlled substances, or other such causes); or
         (5) Your commission of an act involving immoral, shameful or unethical conduct or conduct that, directly or indirectly, impairs or injures the goodwill, reputation or otherwise harms Company.
         (6) <u>Compensation Upon Termination.</u>
            (a) In the event of the termination of this Agreement for cause pursuant to <u>Paragraph 9(a)</u>, you shall be entitled to the compensation earned prior to the date of termination as provided for in this Agreement, computed pro rata up to and including that date. You shall be entitled to no further compensation after the date of termination.
         (7) <u>Return of Documents and Materials upon Cessation/Termination of Employment.</u> Upon the cessation of your employment with Company for any reason, and at any earlier time upon notice to you, you shall (i) deliver or cause to be delivered to Company any and all Company property including computers, smartphones, software, notebooks, keys, keycards, data and other documents and materials in your possession or under your control; (ii) remove, at your sole cost and expense, from Company's premises such equipment and personal effects as belong solely to you; (iii) deliver, and not retain any copies of, all original and copies of documents (whether physical or electronic) that relate to Company or its business (whether or

At-will Employment Agreement: TPC and Riccardo Usai, Page 5

not including Confidential Information); and (iv) cooperate with Company to ensure that all Company materials and files are removed from any device (*e.g.,* phone, tablet, computer) that will remain in your possession (regardless of who owns the device). Company has a proprietary right in all of its physical locations, telephone numbers and files and, upon any termination of services hereunder, such items shall, except as hereinafter set forth, continue to belong solely to Company and shall remain the sole and exclusive property of Company. You hereby relinquish any and all claims and interests therein and for the use thereof.

10) **Miscellaneous:**

a) <u>Entire Agreement.</u> This Agreement contains the entire agreement between the parties hereto relating to the subject matter hereof, and this Agreement supersedes all prior understandings and agreements, whether oral or written, relating to your employment with Company.

b) <u>Assignment.</u> Neither this Agreement, nor any of your rights, powers, duties or obligations hereunder may be assigned or delegated by you; provided, however, any amounts owing to you upon death shall inure to the benefit of your heirs, legatees, legal representatives, executor or administrator. This Agreement may be assigned by Company to any successor. Successors of Company shall include, but not be limited to, any company or companies acquiring, directly or indirectly, all or substantially all of the assets of Company, whether by merger, consolidation, purchase, lease or otherwise, and such successor shall thereafter be deemed "Company" for the purpose hereof.

c) <u>Amendment; Waiver.</u> This Agreement shall not be amended, altered, modified or discharged except by an instrument in writing duly executed by both parties hereto. Neither the waiver by the parties hereto of a breach of, or default under, any of the provisions of this Agreement, nor the failure of either of the parties, on one or more occasions, to enforce any of the provisions of this Agreement or to exercise any right or privilege hereunder, shall be construed as a waiver of any such provisions, rights or privileges hereunder.

d) <u>Severability.</u> The invalidity or unenforceability of any provision or provisions of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect.

e) <u>Dispute Resolution.</u>

i) Any and all disputes arising out of or relating to this Agreement, or the breach thereof, shall be exclusively and finally resolved by arbitration administered by the American Arbitration Association (the "<u>AAA</u>") under its Employment Arbitration Rules and Mediation Procedures, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. The arbitration will be conducted in Miami-Dade County, Florida, in accordance with the United States Arbitration Act. The arbitration shall be conducted by a single arbitrator to be selected in accordance with the rules of the AAA. The award of the arbitrator shall be rendered within thirty (30) calendar days after receipt of any post-hearing briefs and a statement of the reasons upon which the award is granted shall accompany the award.

ii) Each party shall pay its own costs and expenses, including attorneys' fees, related to such arbitration, unless an award of attorneys' fees is available to the "prevailing party" or prevailing plaintiff as a matter of substantive right under applicable law. Each party shall initially split the costs of arbitration other than attorneys' fees. The fees (if any) and costs and expenses of arbitration shall be part of the award.

iii) There shall be no right or authority for any dispute or claim to be arbitrated on a class

At-will Employment Agreement: TPC and Riccardo Usai, Page 6

or collective action basis, and Employee waives any right he might otherwise have to proceed on such basis.

iv) Notwithstanding any other provision of this Paragraph 9(e), a party may bring a suit or action in the 11th Judicial Circuit in and for Miami-Dade County, Florida or the United States District Court for the Southern District of Florida: (a) to petition a court for injunctive relief with respect to a matter arising under or relating to this Agreement; (b) to seek judicial enforcement of an order granted by an arbitrator under this Paragraph 10(e); or (c) as permitted under the United States Arbitration Act.

v) Notwithstanding any other provision of this Paragraph 10(e) to the contrary, the following are expressly excluded from this arbitration provision and are not covered by this Agreement:

(1) Claims related to workers' compensation or unemployment insurance;

(2) Claims arising under the National Labor Relations Act, or any claims or disputes by whistleblowers arising pursuant to the Sarbanes-Oxley Act; and

(3) Claims that are expressly excluded from arbitration by federal, state or local statute, or that are expressly required to be arbitrated under a different procedure under Company's employee benefit plan.

(a) You further acknowledge that the provisions of this Paragraph 10(e) are a material inducement to TPC to enter this Agreement and that if the provisions of this Paragraph 10(e) were not included in this Agreement, then TPC would not have entered this Agreement and your employment would not commence or continue.

f) Applicable Law. In deciding any arbitration or court proceeding arising here from, the arbitrator or court shall apply the laws of the State of Florida, excluding any conflict-of-laws rule or principle. However, matters relating to the enforceability of Paragraph 10 and to any arbitration award granted thereunder shall be governed by the United States Arbitration Act.

g) Notices. All notices, demands, requests or other communications which may be, or are required to be given, served or sent by any party to any party pursuant to this Agreement shall be in writing and shall be transmitted to employee by email to the address below and to the Company by hand delivery or recognized overnight courier service, with a copy sent via electronic mail, and addressed as set forth below:

If to you:

Riccardo Usai
Email: riccardo914.ru@gmail.com

If to Company:

c/o The Peebles Corporation
1691 Michigan Avenue, Suite 250
Miami Beach, FL 33139
Attn.: R. Donahue Peebles
Email: rdpceo@peeblescorp.com

h) Execution. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute but one and the same instrument.

At-will Employment Agreement: TPC and Riccardo Usai, Page 7

> Delivery of an executed counterpart signature page to this Agreement by electronic means shall be as effective as delivery of a manually executed counterpart of this Agreement.

i) <u>Survival</u>. It is the express intention and agreement of the parties that the provisions of <u>Paragraphs 8, 9</u>, and <u>10</u> hereof shall survive the cessation of your employment.

[SIGNATURE PAGE FOLLOWS]

At-will Employment Agreement: TPC and Riccardo Usai, Page 8

Please advise if the above terms do not accurately reflect our offer in any way.  I would be delighted for you to accept the position as <u>Director of Operations and Wine Program</u> ~~Vice President of Development~~, and I would look forward to working with you.

Best regards,
**CLUB MANAGEMENT MIAMI II, LLC**

By: _____
        R. Donahue Peebles

By signing below, I represent and warrant that I am under no restriction or agreement with a former employer or anyone that would prevent me from accepting the offer to become Director of Operations and Wine Program and complying with all of its terms as set forth in this At-Will Employment Agreement. By accepting this offer of at-will employment, I agree to continue to abide by all Employment Policies of Company, including any amendments previously acknowledge by me or hereafter adopted and made available to me.  I hereby accept this offer of at will employment upon the terms as set forth in this Agreement.

_____
**RICCARDO USAI**

Date: _____02 - 06 - 2023_____

At-will Employment Agreement: TPC and Riccardo Usai, Page 9

Exhibit A

Responsibilities and Duties

a) Create for the approval by The Bath Club Ownership a profitable business plan and model, including budgets, pro forma projections, and capital requirements for the operations of The Bath Club consistent with The Bath Club Experience.

b) Update business plan and model, including pro forma projections, as requested by ownership of The Bath Club.

c) Conduct market research to support key assumptions in the business plan and model to the satisfaction of the ownership of The Bath Club. This function requires the analysis of historical and competitive market data, the assessment of supply and demand generators, and the consideration of comparable and competitive business venues in the marketplace.

d) Review business plan and model, including budgets (actual vs projected), pro forma projections, and capital requirements, in each case consistent with The Bath Club Experience, and provide recommendations to ownership of The Bath Club with respect to same.

e) Oversee staff, third party consultants, venue and property management professionals to ensure efficient, profitable, first class, and high-quality performance, in each case consistent with The Bath Club Experience.  This function will require you to communicate issues and potential solutions to ownership as necessary.

f) Collaborate with venue and entertainment professionals and staff to provide guidance and recommendations to provide experiences to ownership, members, guests, and patrons consistent with The Bath Club Experience, in a manner that the maximizes net revenue from operations and increases overall long-term value of The Bath Club, the property and The Bath Club brand.

g) Review monthly financial statements to ensure accuracy, correct issues and evaluate property and business performance in relation to market trends.

h) Work on site to review and manage operations consistent with The Bath Club Experience.

i) To the extent approved by ownership of the Company, meet with relevant local contacts, consultants, politicians, partners, members and Company ownership to improve The Bath Club Experience.

j) Coordinate and assist in the completion of quarterly and annual ownership reports as well as various internal reporting items requested by ownership, in each case to the satisfaction of The Bath Club ownership.

k) Recruit, select, hire (with permission from The Bath Club ownership), manage, train, educate, motivate, and supervise staff to constantly improve all elements and operations of The Bath Club, consistent with The Bath Club Experience.

l) Translate the wine and spirits program available on site consistent with The Bath Club Experience, including with respect to food pairings, pricing strategy, and achievement of gross profit margin expectations established by The Bath Club ownership from time to time.

m) Plan and implement a wine and spirits program consistent with The Bath Club Experience, including with respect to (i) storage procedures, equipment, and assets, (ii) sourcing and distribution strategy, (iii) wine list printing and presentation, (iv) creation and implementation of a staff education program to enrich the service and sale process for members, guests, and patrons.

Company and/or ownership, in its or their sole discretion, may assign Director of Operations and Wine Program other duties that may be different from those specified above.

"The Bath Club Experience" means an exclusively inclusive ambience for Company ownership, and all members, their guests, prospective members, on-site event participants, prospective on-site

At-will Employment Agreement: TPC and Riccardo Usai, Page 10

event organizers, and other guests and patrons which provides enriching experiences in surroundings exuding privacy and luxury consistent with an appreciation for the place, legacy, and authenticity of the historic origins of The Bath Club.

## Exhibit B

### Outline of Incentive Pool Principles

The incentive pool principles outlined below are intended to align the interests of ownership and employees responsible for the profitable management The Bath Club, to achieve consistently: (i) increasing amounts of net income distributable to Ownership, (ii) increasing levels of long term value and good will of The Bath Club, and (iii) satisfying or exceeding the standard expected for The Bath Club Experience.

1. 5% of the gross revenue (excluding sales taxes, gratuities and tips) from The Collins Room;
2. 5% of the gross F&B revenue (excluding sales tax , gratuities and tips)of the Courtyard, Pool and Beach above 75% of the current gross;
3. 5% of the gross F&B revenue (excluding sales tax and tips)in the Governor's Lounge;
4. 10% of the gross fees for the Social Access (Dining) sold;
5. 3% service charge of F&B sales for events up to $1,500,000 and 4% above $1,500,000