UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:24-CV-24830-KMM

RICCARDO USAI, MASSIMILIANO GIUA,
IRINA SLIZSKAYA, and MEYVIS VEGA,

        Plaintiffs,

vs.

CLUB MANAGEMENT MIAMI II, LLC, and
R. DONAHUE PEEBLES,

        Defendants.
_____/

**DEFENDANTS' MOTION TO DISMISS**
**AND INCORPORATED MEMORANDUM OF LAW**

  Defendants. CLUB MANAGEMENT MIAMI II, LLC ("Club Management") and R. DONAHUE PEEBLES ("Peebles"), pursuant to Fed.R.Civ.P. 12(b)(6), move this Court for entry of an order dismissing the complaint [DE 1] (the "Complaint") brought by Plaintiffs, Riccardo Usai ("Usai"), Massimiliano Giua ("Giua")[1], Irina Slizskaya ("Slizskaya"), and Meyvis Vega ("Vega"), for failure to state a claim upon which relief can be granted, among other reasons. In support of this motion, Defendants state as follows:

**INTRODUCTION**

  All Plaintiffs were previously employed by Club Management: Usai and Giua were managers charged with overseeing the operations of Club Management's "The Bath Club" on Miami Beach; and Slizskaya and Meyvis worked as servers at The Bath Club. Club Management terminated Plaintiffs' employment, and the four have now joined together to file a thirty (30) count Complaint against Defendants alleging the following claims:

---

[1] Separately, Defendants have also filed a motion to compel arbitration as to Usai and Giua [DE 13]. The granting of the motion to compel arbitration will moot this motion to dismiss as to the claims of Usai and Giua. *See* Section E., *infra*.

**Fair Labor Standards Act ("FLSA") claims:**
Count I – FLSA wage theft (Slizskaya v. Defendants)
Count II – FLSA wage theft (Vega v. Defendants)
Count III – FLSA retaliation (Slizskaya v. Defendants)
Count IV – FLSA retaliation (Vega v. Defendants)
Count V – FLSA retaliation (Usai v. Defendants)
Count VI – FLSA retaliation (Giua v. Defendants)

**Title VII of the Civil Rights Act ("Title VII") claims:**
Count VII – Title VII discrimination (Slizskaya v. Club Management)
Count VIII – Title VII discrimination (Vega v. Club Management)
Count IX – Title VII hostile work environment (Slizskaya v. Club Management)
Count X – Title VII hostile work environment (Vega v. Club Management)
Count XI – Title VII retaliation (Slizskaya v. Club Management)
Count XII – Title VII retaliation (Vega v. Club Management)
Count XIII – Title VII retaliation (Usai v. Club Management)
Count XIV – Title VII retaliation (Giua v. Club Management)

**Florida Civil Rights Act ("FCRA") claims:**
Count XV –FCRA discrimination (Slizskaya v. Club Management)
Count XVI – FCRA discrimination (Vega v. Club Management)
Count XVII – FCRA hostile work environment (Slizskaya v. Club Management)
Count XVIII – FCRA hostile work environment (Vega v. Club Management)
Count XIX – FCRA retaliation (Slizskaya v. Club Management)
Count XX – FCRA retaliation (Vega v. Club Management)
Count XXI – FCRA retaliation (Usai v. Club Management)
Count XXII – FCRA retaliation (Giua v. Club Management)

**Miami-Dade Human Rights Ordinance ("MDHRO") claims:**
Count XXIII –MDHRO discrimination (Slizskaya v. Club Management)
Count XXIV – MDHRO discrimination (Vega v. Club Management)
Count XXV – MDHRO hostile work environment (Slizskaya v. Club Management)
Count XXVI – MDHRO hostile work environment (Vega v. Club Management)
Count XXVII – MDHRO retaliation (Slizskaya v. Club Management)
Count XXVIII – MDHRO retaliation (Vega v. Club Management)
Count XXIX – MDHRO retaliation (Usai v. Club Management)
Count XXX – MDHRO retaliation (Giua v. Club Management)

Usai and Giua, the male managers, have asserted identical claims of retaliation, two (2) of which arise under the FLSA and six (6) of which arising under federal, state and local sexual anti-discrimination laws, *i.e.*, Title VII, FCRA and MDHRO. Slizskaya and Vega, the female non-managerial employees, have asserted identical claims of wage theft and retaliation under the

FLSA and claims for discrimination, hostile work environment and retaliation arising under Title VII, FCRA and MDHRO. Plaintiffs' only claims against Peebles personally arise under the FLSA (Counts I-VI).

The Complaint is a rambling series of duplicative claims arising based on conclusory allegations and should be dismissed for failure to state a claim as set forth in this motion.

## MEMORANDUM OF LAW

When considering a motion to dismiss, a court must accept the allegations in plaintiff's complaint as true. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984). However, the court need not accept legal conclusions, and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" must be disregarded. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). In addition, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

Fed.R.Civ.P. Rule 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* "Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face," quoting *Bell Atl. Corp.*, 550 U.S. at 570, 127

S.Ct. 1955. A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

    A.    **As A Whole, the Complaint Should Be Dismissed As A "Shotgun Pleading."**

The Complaint is a "shotgun pleading": one in which "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.,* 77 F.3d 364, 366 (11th Cir. 1996). Such a pleading forces the court to sift through the facts presented and decide for itself which are material to the claims asserted. *See id.* at 366-67. As noted in *Weiland v. Palm Beach Cnty. Sheriff's Off.,* 792 F.3d 1313 (11th Cir. 2015), there are four types of shotgun pleadings that violate Fed.R.Civ.P. Rule 8(a), Rule 10(b), or both:

> The most common type - by a long shot - is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type . . . is a complaint that does not commit the mortal sin of realleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Id.* at 1321-23. The "unifying characteristic" of shotgun pleadings is they "fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. The Complaint here falls into the first category as a shotgun pleading because, in each of the 30 counts[2], the named plaintiff "reincorporates the factual allegations in Paragraphs 30 through 117."

---

[2] *See* Complaint at ¶¶ 118, 131, 144, 157, 170, 183, 196, 209, 222, 235, 248, 262, 276, 289, 302,

The Complaint here is similar to the one encountered by this Court in *Harris v. Pub. Health Tr. of Miami-Dade Cnty.*, 2020 U.S. Dist. LEXIS 66035, 2020 WL 1933169, at *3 (S.D. Fla. Apr. 14, 2020). In *Harris*, the subject complaint re-adopted all factual allegations into each count even if the factual allegations were not relevant to that count. While this Court held that the complaint did not "precisely fall within the prohibited categories enumerated" in *Weiland*, it concluded that such a complaint was still an impermissible shotgun pleading. *Id.*

Likewise, Plaintiffs have joined together to assert both FLSA claims against Peebles personally and other unrelated claims arising under a multitude of federal, state and local laws that prohibit discrimination. Usai and Giua's claim are for retaliation only whereas Slizskaya's and Vega's claims allege retaliation *plus* wage theft, discrimination and hostile work environment. Consequently, facts as to wage theft and FLSA retaliation are incorporated into discrimination and sexual harassment claims, leaving the Court "to sift through the facts presented to determine which allegations are relevant to a particular claim." *Id*.

Therefore, the Complaint is an impermissible shotgun pleading that fails to provide adequate notice of the claims asserted and the grounds upon which each claim rests and should be dismissed. *Weiland,* 792 F.3d at 1323. *See also McLaurin v. Mia.-Dade Cnty.,* 2024 U.S. Dist. LEXIS 209882, 2024 WL 4826058, at *4 (S.D. Fla. Nov. 19, 2024); *Parker-Nashid v. Mia.-Dade Cnty.,* 2023 U.S. Dist. LEXIS 163437, at *4-5 (S.D. Fla. Sept. 13, 2023).

    **B.**    **Plaintiffs' FLSA Claims Should be Dismissed.**

Plaintiffs have filed six (6) FLSA claims (Counts I-VI) against both Defendants. Each of these claims should be dismissed for the reasons set forth below.

314, 326, 338, 350, 364, 378, 391, 404, 416, 428, 440, 452, 466, and 480.

5

**ASSOULINE & BERLOWE, P.A.**
2385 N.W. Executive Center Drive, Suite 100, Boca Raton, FL 33431 • Telephone: 561-361-6566

### i.  The Claims Against Peebles Should be Dismissed.

Plaintiffs have sued Peebles individually for various claims arising under the FLSA, all of which presuppose that Peebles was Plaintiffs' "employer." In order to qualify as an "employer" under the FLSA, a corporate officer "must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Patel v. Wargo,* 803 F.2d 632, 638 (11th Cir. 1986).  Moreover, a person's status as a corporate officer alone is insufficient to render an individual an "employer" under the FLSA. *Id.* Put another way, an individual is not subject to personal liability as an FLSA employer simply by virtue of his position as a corporate officer or owner. *Id.*

The Supreme Court has held that courts should apply the terms "employer" and "employee" in light of the "economic reality" of the relationship between the parties. *Goldberg v. Whitaker House Co-op., Inc.,* 366 U.S. 28, 33, 81 S. Ct. 933, 936-37, 6 L. Ed. 2d 100 (1961). Under the economic reality test, courts ask whether the alleged employer: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Villarreal v. Woodham,* 113 F.3d 202, 205 (11th Cir. 1997). Though *Villarreal* held that the court should only dismiss an FLSA claim on the basis of employment status where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *id.* at 204, such is the case here.

Plaintiffs have alleged in a conclusory fashion and without any specific facts that Peebles had "operational control" over The Bath Club, had the authority to hire, fire and discipline employees, including Plaintiffs, controlled work schedules and conditions of employment, and exercised "day-to-day control" and active control over Club Management's operations, payroll

practices, payment of wages (including Plaintiffs' rate and methods of pay), and working conditions (Complaint at ¶¶8-12).

What Plaintiffs have *failed* to allege are any specific facts to support their conclusory allegations that Peebles acted jointly with Club Management as their employer. Plaintiffs have not alleged any specific interactions with Peebles plausibly showing that he had direct control over decisions concerning wages, which is at the very heart of Plaintiffs' wage theft claim. Indeed, Plaintiffs have failed to even minimally define the control that Peebles exercised over Plaintiffs.

In fact, proof that Peebles *lacked* "operational control" over The Bath Club is underscored by the hiring of Usai and Giua: Usai was hired as "Director of Operations and Wine Club" and Giua was hired as "Restaurant & Lounge General Manager" (Complaint at ¶¶33-34). Though Plaintiffs attempt to diminish Usai and Giua's authority – claiming that Jean Thielen Guerrero (an accountant) and "other managers" supervised Slizskaya and Vega (Complaint at ¶¶53-59) – Usai and Giua were the ones responsible for managing the Bath Club and its employees. Plaintiffs expect this Court to believe that the hiring of Usai and Giua as director and manager of the Bath Club, respectively, was superfluous and unnecessary and that Peebles – simply due to his status as "managing member" of Club Management (Complaint at ¶8) – was Plaintiffs' employer even though the economic reality of the matter is that Usai and Giua, *not* Peebles, were the employers.

In *Diaz v. U.S. Century Bank, Int'l Risk Response, Inc.,* No. 12-21224-CIV, 2012 U.S. Dist. LEXIS 89618, 2012 WL 2514906 (S.D. Fla. June 28, 2012), dismissal was proper where plaintiffs made vague assertions concerning their employment relationship in "general, unsubstantiated" terms and failed to "even attempt to minimally define the division of control" that existed between each defendant over the plaintiffs, leaving the extent of the defendants'

7

**ASSOULINE & BERLOWE, P.A.**
2385 N.W. Executive Center Drive, Suite 100, Boca Raton, FL 33431 • Telephone: 561-361-6566

actual control over plaintiffs to mere speculation. *Id.* at 5. Similarly, in *Chavarria v. Clements*, No. 1:16-cv-20397-UU, 2016 U.S. Dist. LEXIS 204558, at *14 (S.D. Fla. Apr. 13, 2016), the plaintiff alleged that she provided cleaning services for the property that was "owned, controlled and operated by" the individual defendant and that the individual defendant participated in the delegation of operations and management duties and coordinated hiring and firing of employees. *Id.* at 9. The Court held that these "general, unsubstantiated" allegations, like in *Diaz*, were insufficient to state a claim against the individual defendant. *Id.* at 11.

Because Plaintiffs' allegations in the Complaint as to Peebles are equally as general and unsubstantiated as in *Diaz* and *Chavarria*, the claims against Peebles individually should be dismissed.

### ii.  Slizskaya & Vega's FLSA Wage Theft Claims Should Be Dismissed.

In Counts I and II of the Complaint, Slizskaya and Vega attempt to state claims for wage theft but fail to allege how much they claim to be owed, how such amounts were calculated, or the period during which the alleged violations occurred.

Faced with a similar pleading in the case of *Earle v. Mia. Dade Cty.,* No. 24-20270-CIV, 2024 U.S. Dist. LEXIS 91081 (S.D. Fla. May 21, 2024), the Court held that plaintiff's complaint failed to satisfy the heightened pleading standard for civil actions set forth by the Supreme Court in *Ashcroft v. Iqbal,* 556 U.S. 662, 662, 129 S. Ct. 1937, 1939 (2009) and *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 595, 127 S. Ct. 1955, 1988 (2007) (threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to state a claim). This standard applies to FLSA cases as well. *See Baide v. Sunsof, Inc.*, No. 14-22255-CIV-MORE, 2014 U.S. Dist. LEXIS 143274, at *4 (S.D. Fla. Oct. 7, 2014).

Facts as to the wages owed, including the amount, calculations as to same and the period over which such wages accrued – are required to be alleged in a "pleading" (the Complaint) and failure to do so renders dismissal proper. *Earle*, 2024 U.S. Dist. LEXIS 91081 at *6.

### iii. Plaintiffs' FLSA Retaliation Claims Should Be Dismissed.

To state a *prima facie* case of retaliation under the FLSA, Plaintiffs must demonstrate (1) engaging in activity protected under the FLSA, (2) subsequently suffering an adverse action, and (3) a causal connection between the protected activity and the adverse action. *Id.* at *8 (citing to *Wolf v. Coca-Cola Co.,* 200 F.3d 1337, 1343 (11th Cir. 2000)).

Here, as to protected activities, Slizskaya and Vega allege that they opposed unlawful wage theft, complained about wage theft and participated in an investigation as to wage theft (Complaint at ¶¶147, 160); and Usai and Giua allege that they opposed Defendants' unlawful pay policies and assisted employees in exercising their protected rights under the FLSA (Complaint at ¶¶173, 186). However, none of the Plaintiffs have alleged when or how they opposed or complained or to whom[3] such opposition or complaints were made.

Furthermore, while Plaintiffs *do* allege suffering adverse actions, they proceed to assert, in a wholly conclusory fashion, that a causal connection existed between their protected activities and these adverse actions: "Defendants' retaliatory actions were causally connected to Plaintiff[s'] protected activities" (Complaint at ¶¶151, 164, 177, 190).

Even if the Court finds that Plaintiffs have properly alleged the first two elements of a retaliation claim, the third element – the causal connection between the two – is lacking. Plaintiffs must plead facts sufficient to establish a causal connection between their protected activities and the adverse actions. *Earle*, 2024 U.S. Dist. LEXIS 91081, at *9. To satisfy the

---

[3] Indeed, as a minimum, Plaintiffs fail to allege that they complained to Peebles, their alleged "employer." *See* Section B.i., *supra.*

minimum pleading standards, Plaintiffs must provide more than conclusory statements, assertions or labels. *Iqbal*, 556 U.S. at 678.

Without facts supporting the causal connection between Plaintiffs' alleged protected activities and the adverse actions suffered, Plaintiffs' retaliation claims must be dismissed. *See Robinson v. Broward Cty. Sch. Dist.*, No. 19-63099-CIV-SMITH, 2020 U.S. Dist. LEXIS 97562, at *10 (S.D. Fla. June 2, 2020)(plaintiff failed to allege sufficient facts that termination was causally related to complaints he made during his employment).

      **C.**      **Plaintiffs' Title VII, FCRA & MDHRO Claims Should be Dismissed.**

In Counts VII through XIV, Plaintiffs attempt to allege claims for discrimination, hostile work environment and retaliation arising under Title VII, which claims are then mirrored in Counts XV through XXII (arising under the FCRA) and Counts XXIII through XXX (arising under the MDHRO). All of these similarly pleaded claims should be dismissed for the reasons set forth below.[4]

            **i.**   **Slizskaya & Vega's Discrimination Claims[5] Should Be Dismissed For Failure To State Claims.**

Slizskaya and Vega claim that they were subjected to discriminatory (disparate) treatment on the basis of sex (Complaint at ¶¶201, 214) and that "no similarly situated male employees endured the discriminatory conduct that [they were] forced to endure (Complaint at ¶¶202, 215). However, neither Slizskaya nor Vega name any of the male employees who were not subject to

---

[4] Because the FCRA was patterned after Title VII, "Florida courts have held that decisions construing Title VII are applicable when considering claims under the [FCRA]." *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998). Title VII prohibits employment discrimination based on race, color, religion, sex and national origin, just as the MDHRO does. Logic dictates that courts should look to Title VII for guidance when considering claims arising under the MDHRO.

[5] *See* Complaint at Counts VII, VIII, XV, XVI, XXIII and XXIV.

such alleged discrimination; in fact, other than conclusory allegations, they have failed to allege sufficient facts to support that sex played any role in the alleged disparate treatment they suffered.

"To state a claim for disparate treatment under Title VII a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was treated less favorably than a similarly situated individual outside her protected class." *Arafat v. Sch. Bd. of Broward Cnty.,* 549 F. App'x 872, 874 (11th Cir. 2013) (per curiam) (citing *Maynard v. Bd. of Regents,* 342 F.3d 1281, 1289 (11th Cir. 2003)). Defendants question the fourth prong of the analysis, *i.e.*, whether Slizskaya and Vega were treated less favorably than similarly situated male employees.

In a disparate treatment case, the plaintiff "must demonstrate that she and her proffered comparators were 'similarly situated in all material respects.'" *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1218 (11th Cir. 2019). "Ordinarily, . . . a similarly situated comparator": (1) "will have engaged in the same basic conduct (or misconduct) as the plaintiff"; (2) "will have been subject to the same employment policy, guideline, or rule as the plaintiff"; (3) "will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff"; and (4) "will share plaintiff's employment or disciplinary history." *Id.* at 1227-28. "In short, as its label indicates – 'all material respects' – a valid comparison will turn not on formal labels, but rather on substantive likenesses." *Id.* at 1228.

The discrimination claims of Slizskaya and Vega are simply missing facts as to comparators under the *Lewis* standard. Nowhere in these claims do either allege any instances where they were treated differently than a male counterpart after having engaged in the same basic conduct, and conclusory allegations without any factual support is not enough to state a

claim. *See Thompson v. McDonald*, No. 16-80811-CIV, 2019 U.S. Dist. LEXIS 50566, at *15 (S.D. Fla. Mar. 25, 2019) (granting dismissal when plaintiff failed to identify or adduce any proofs of a similarly situated comparator class of employees, outside of his protected classifications, who were treated differently in some material aspect); *Sanz v. Am. Soc'y of Composers & Publrs. (ASCAP)*, No. 18-24504-CIV, 2019 U.S. Dist. LEXIS 133581, at *11 (S.D. Fla. Aug. 7, 2019) (granting dismissal after plaintiff failed to show he was treated differently from other individuals with whom he was similarly situated in all material respects).

> ii. **Slizskaya & Vega's Hostile Work Environment Claims[6] Should Be Dismissed For Failure To State Claims.**

Slizskaya and Vega do not allege facts supporting their conclusory statements as to being subjected to a hostile work environment.

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To state a claim for hostile work environment, a plaintiff must allege that (1) she belongs to a protected group, (2) she has been subject to unwelcome harassment, (3) the harassment must have been based on a protected characteristic of the employee, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment, and (5) the employer is responsible for such environment under either a theory of vicarious or direct liability. *See Thompson v. City of Miami Beach,* 990 F. Supp. 2d 1335, 1339 (S.D. Fla. 2014) (citing *Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1275 (11th Cir. 2002)).

---

[6] *See* Complaint at Counts IX, X, XVII, XVIII, XXV, and XXVI.

    a.    **The harassment alleged was not based on sex.**

As to element (3), Slizskaya and Vega fail to adequately allege that the harassment to which they were allegedly subjected was based on a protected characteristic (sex). Instead, they allege that they were "targeted" because of their sex and "no similarly situated male employees endured the [same] discriminatory conduct" (Complaint at ¶¶228, 241) without any facts in support. Conclusory allegations alone will not prevent dismissal. *Harris v. Pub. Health Trust of Mia.-Dade Cnty.,* 2020 U.S. Dist. LEXIS 66035 *12; 2020 WL 1933169 (S.D. Fla., Apr. 14, 2020). *See also Oxford Asset Mgmt. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir. 2002*)*(conclusory allegations and unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal).

    b.    **The harassment alleged was not sufficiently severe or pervasive to alter the terms and conditions of employment.**

As to element (4), Slizskaya and Vega fail to adequately allege that the harassment was sufficiently severe or pervasive to alter the terms and conditions of their employment. "To establish a claim of a hostile work environment, an employee must prove that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Adams v. Austal, U.S.A., L.L.C.,* 754 F.3d 1240, 1248 (11th Cir. 2014) (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)). Title VII is not a federal 'civility code.'" *Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1245 (11th Cir. 1999). "[A]n employer's harassing actions toward an employee do not constitute employment discrimination under Title VII unless the conduct is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* "Establishing that harassing conduct was sufficiently severe or pervasive to alter an employee's

terms or conditions of employment includes a subjective and an objective component." *Id.* at *1246* (citation omitted). "The employee must 'subjectively perceive' the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable." *Id.* "The objective component of this analysis is somewhat fact intensive." *Id.*

The Supreme Court and the Eleventh Circuit have identified the following factors for consideration as to whether the conduct is sufficiently severe or pervasive to alter the terms and conditions of employment: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* (citations omitted). *See also Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

Slizskaya and Vega allege that, throughout their employment, they were "subjected . . . to relentless and severe sexual harassment" (Complaint at ¶¶40-41). Slizskaya alleges that Guerrero berated her, screamed at and denigrated her and other female employees (including Vega) and called her "ass face" (Complaint at ¶¶74-75). Additionally, Vega alleges that Guerrero grabbed her groin, told her "you look so sexy" and "those pants look so good on you" and said he would "get excited" if she got close to him (Complaint at ¶¶70-73). Guerrero also made general comments – not specifically to Slizskaya and Vega – to female servers ("You know how to earn your tips" or "big boobs" or "big ass") (Complaint at ¶¶67-69).

The facts alleged are not sufficient for this Court to find that the work environment at Club Management was subjectively and objectively hostile. *See Latimore v. City of N. Miami Beach*, 2021 U.S. Dist. LEXIS 195094 *17, Case No. 1:21-cv-20519-KMM (general comments

not directed at the plaintiff could not be considered threatening or severe, and city manager's expressed desire to replace the plaintiff with a Haitian American does not rise beyond the level of a mere offensive utterance and was expressed on a single occasion). *See also Miller*, 277 F.3d at 1276-77 (noting that Title VII is only implicated in the case of a workplace that is permeated with discriminatory intimidation, ridicule and insult, not where there is the mere utterance of an epithet).

Repeated incidents of harassment that continue despite the employee's objections are indicative of a hostile work environment. *Perry v. Rogers*, 627 F. App'x 823, 841 (11th Cir. 2015) (quoting *Miller*, 277 F.3d at 1276). Conversely, simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. *Acosta v. Mayorkas,* 2024 U.S. Dist. LEXIS 38484 *21; 2024 WL 1743482 (S.D. Fla., Mar. 5, 2024) (plaintiff's hostile work environment claim dismissed where he has not sufficiently alleged harassment plausibly connected to his disability that was so severe and pervasive as to alter the term and conditions of employment and create a discriminatorily abusive working environment).

In the case of *Bardelas v. City of Doral*, 2021 U.S. Dist. LEXIS 158943, at *27; 2021 WL 12313738 (S.D. Fla., Aug. 23, 2021), the Court held that the factual allegations the plaintiff relied on to support her hostile work environment claim – including being labeled as a "coward" and "that piece of shit," being regularly subjected to ridicule by male command staff for her appearance (including comments such as "here she comes with her eyelashes"), being "told that she was persecuted and harassed because she was an 'easy target' and … viewed her as an 'airhead,'" being "singled out" from similarly situated males for violating the dress code policy, and being reprimanded for keeping her nails "too shiny" and not wearing the correct boots – did

not amount to severe and pervasive harassment. *Id.* at 28. Though the Court noted that the "aforementioned commentary may be considered offensive, it is not physically threatening, nor does it rise to the level of humiliating such that it can be qualified as objectively severe and pervasive harassment that alter the terms and conditions of employment." *Id.* at 29. Because the plaintiff failed to allege objectively severe or pervasive conduct to move forward with her hostile work environment claims, these claims were dismissed, just as Slizkaya's and Vega's hostile work environment claims should now be dismissed.

### i. Plaintiffs' Retaliation Claims[7] Should Be Dismissed For Failure To State Claims.

The same flaws with Plaintiffs' FLSA retaliation claims[8] are present with Plaintiffs' retaliation claims under Title VII, the FCRA and the MDHRO. Even taking Plaintiffs' factual allegations as true and in the light most favorable to them, they have failed to sufficiently allege facts from which this Court could infer a causal connection between their protected activities and the adverse employment actions against them.

Plaintiffs do not allege to whom they complained or when, thus precluding any evidence as to temporal proximity between the protected activity and the adverse action.

### B.   Plaintiffs' MDHRO Claims[9] Must Be Dismissed For Failure To Exhaust Administrative Remedies.

In the Complaint, Plaintiffs allege that they complied with the administrative pre-requisites under Title VII, the FCRA and the MDHRO by "dual-filing" their charges of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"),

---

[7] *See* Complaint at Counts XI-XIV, XIX-XXII, and XXVII-XXX.

[8] *See* Section B.iii., *supra*.

[9] *See* Complaint at Counts XXIII-XXX.

the Florida Commission on Human Relations ("FCHR") and the Miami-Dade Commission on Human Rights ("MDCHR"). *See* Complaint at ¶¶20-23.

Dual filing of claims within the subject matter jurisdiction of the EEOC and the FCHR is commonplace. *Webb v. Worldwide Flight Servs.,* No. 02-21758-CIV-ALTONAGA/B, 2003 U.S. Dist. LEXIS 13831, at *4 (S.D. Fla. June 6, 2003). However, no such "dual filing" exists with the MDCHR[10], which requires that, "Any person aggrieved by an unlawful employment action prohibited by this article *must file a written, signed complaint with the Director* [of the MDCHR] within one hundred eighty days (180) after the alleged unlawful practice occurs." Miami-Dade County, Fla., Code, Ch. 11A, art. IV, §11A-28(1) (emphasis added).

To complicate matters, Plaintiffs have neither attached the subject charges of discrimination nor the notices of "right to sue" that they allegedly received from the MDCHR (Complaint at ¶¶24-27). Receipt of a determination or a right-to-sue letter from the MDCHR is *required* under Miami Dade County Ordinance 11A-28(10)(a) in order for Plaintiffs to file their MDHRO claims in this or any court[11]:

> If within one hundred eighty days (180) after a complaint is filed alleging discrimination, the Director has been unable to obtain voluntary compliance with the provisions of this Article, the aggrieved party may demand a notice of a right-to-sue letter from the Director, the issuance of which shall terminate the jurisdiction of the Director and the Board over such a complaint. Not later than ninety (90) days following receipt of the notice of right-to-sue, the aggrieved person may commence a civil action in a court of competent jurisdiction against the respondent named in the complaint.

Without proof that Plaintiffs filed with the MDCHR – *not* the EEOC or the FCHR – and that the MDCHR issued right-to-sue letters, Plaintiffs have failed to exhaust their administrative

---

[10] Indeed, logic dictates that *dual* filing connotes filing with two entities, not three.

[11] Although failure to attach the right-to-sue notice is not enough to grant dismissal, *Jackson v. Alto Experience, Inc.*, 716 F. Supp. 3d 1327, 1340 (S.D. Fla. 2024), such notice should be required in this instance where a separate non-EEOC/FCHR filing with the MDCHR is required.

remedies as to their MDHRO claims. Accordingly, Plaintiffs' eight (8) MDHRO claims (Counts XXIII through XXX) should be dismissed for failure to exhaust administrative remedies. *Foster v. MD Turbines Logistics, Inc.*, No. 1:22-cv-22190-KMM, 2022 U.S. Dist. LEXIS 195059, at *5 (S.D. Fla. Oct. 26, 2022).

      C.    **Usai & Giua Must Be Compelled to Arbitrate All Their Claims.**[12]

As detailed more fully in the simultaneously filed motion to compel arbitration [DE 13], all of Usai and Giua's claims must be stayed while they pursue arbitration. Both Usai and Giua agreed in writing at the time of hire by Club Management that all claims arising from their employment would be arbitrated. *See* DE 13, Exs. A & B at Section 10(e)(i).

Usai and Giua's filing of their claims in this Court despite their arbitration agreements, and then refusing to voluntarily dismiss such claims upon request by the undersigned, should be sanctioned.

## CONCLUSION

Defendants respectfully request this Court enter an order dismissing (1) the Complaint in its entirety as a shotgun pleading, (2) all FLSA claims against Peebles individually, (3) Plaintiffs' claims arising under the FLSA, Title VII, the FCRA and the MDHRO, (4) all claims of Usai and Giua in light of their agreements to arbitrate, along with such other and further relief as this Court deems just and proper.

---

[12] *See* Complaint at Counts V-VI, XIII-XIV, XXI-XXII and XXIX-XXX.

**ASSOULINE & BERLOWE, P.A.**

/s/ *Ellen M. Leibovitch*
ELLEN M. LEIBOVITCH
Florida Bar No. 656933
eml@assoulineberlowe.com
DANIEL E. VILLEVILLE
Florida Bar No. 940496
dev@assoulineberlowe.com

2385 N.W. Executive Center Dr., Suite 100
Boca Raton, FL 33431
Tel: (561) 361-6566

Attorneys for Defendants, Club
Management Miami II, LLC,
and R. Donahue Peebles