UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

RICCARDO USAI, MASSIMILIANO GIUA,
IRINA SLIZSKAYA, and MEYVIS VEGA,

      Plaintiffs,                                  CASE NO.: 1:24-cv-24830-KMM

v.

CLUB MANAGEMENT MIAMI II, LLC, and
DONAHUE PEEBLES,

      Defendants.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL ARBITRATION**

Plaintiffs, RICCARDO USAI ("Plaintiff Usai") and MASSIMILIANO GIUA ("Plaintiff Giua"), (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby file their Response in Opposition to Defendants' Motion to Compel Arbitration ("Defendants' Motion"), and in support state as follows:

**INTRODUCTION**

Defendants' Motion seeks to force Plaintiffs into arbitration under an inapplicable provision of their employment agreements, despite the fact that Plaintiffs' claims arise directly from—indeed, are inextricably intertwined with—sexual harassment and retaliation allegations. By invoking the Federal Arbitration Act ("FAA") and pointing to Mitchell v. Raymond James & Assocs., Inc., Defendants ignore fundamental differences in the instant case that bring these disputes squarely within the protections of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA").

Critically, the EFAA bars forced arbitration not only of direct sexual harassment claims, but also any dispute that "relates to" sexual harassment. See 9 U.S.C. § 401(4). Where, as here, a

1

plaintiff alleges an actionable pattern of harassing conduct and subsequent retaliation for opposing it, the EFAA invalidates any purported obligation to arbitrate. Defendants' reliance on Mitchell—which dealt with stale, sporadic events largely outside the EFAA's coverage period—fails to undermine the core factual reality here: Plaintiffs' recent experiences reflect ongoing workplace harassment and a direct campaign of retaliatory intimidation following complaints of that harassment. Those allegations stand in sharp contrast to Mitchell and preclude arbitration under the EFAA's plain terms.

Because Plaintiffs plausibly allege a timely and factually supported sexual harassment dispute, along with retaliation "relating to" that harassment, the EFAA controls. This Court should therefore deny Defendants' Motion to Compel Arbitration and preserve Plaintiffs' right to litigate their sexual-harassment-based claims and related retaliation claims in federal court.

## **LEGAL ARGUMENT**

Under both federal statutory provisions and Florida's arbitration code, there are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived. *See Terminix Int'l Co. L.P. v. Ponzio*, 693 So. 2d 104, 106 (Fla. 5th DCA 1997).

### I. **Defendants' Arbitration Agreement is Unenforceable Under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021.**

The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 was signed into law on March 3, 2022. Pub. L. No. 117-90, 136 Stat. 26 (2022) (codified at 9 U.S.C. § 402) (the "EFAA"). The relevant portion of EFAA states as follows:

> "Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute . . . no predispute arbitration agreement or

2

>  predispute joint-action waiver shall be valid or enforceable **with respect to a case** which is filed under Federal, Tribal, or State law **and relates to the . . . sexual harassment dispute**."

9 U.S.C. § 402(a).

### A. A Statutory Interpretation Establishes That the EFAA Applies to All Claims Within a Case

The statutory text is unequivocal: the EFAA applies to the entire case, not just the individual claims involving sexual harassment. *See Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 558 (S.D.N.Y. 2023) (finding that the text of the EFAA "does not limit the invalidation to the claim or claims in which that dispute plays a part.") Notably, Congress used the word "case" when describing the scope of the statute's applicability, 9 U.S.C. § 402(a), but used the narrower term "claim" when defining the statute's effective date. 9 U.S.C. § 401 note (stating that the EFAA "shall apply with respect to any dispute or claim that arises or accrues on or after March 3, 2022.").

Courts have routinely found that when "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely." *Pollitzer v. Gebhardt*, 860 F.3d 1334, 1340 (11th Cir. 2017); *see also United States v. Alabama*, 778 F.3d 926, 933 (11th Cir. 2015); *United States v. Green*, 904 F.2d 654, 655 (11th Cir. 1990*); United States v. Vereen*, 920 F.3d 1300, 1307 (11th Cir. 2019). It is a tenet of statutory construction that the court is "required to give effect to every part of a statute if possible and avoid construing any portion of a statute as mere surplusage." *Brown & Brown, Inc. v. Gelsomino*, 262 So. 3d 755, 759 (Fla. 4th DCA 2018); *see also Gulfstream Park Racing Ass'n v. Tampa Bay Downs, Inc.*, 948 So. 2d 599, 606 (Fla. 2006) (quoting *Hechtman v. Nations Title Ins. of N.Y.*, 840 So. 2d 993, 996 (Fla. 2003)) (recognizing the "elementary principle of statutory construction that significance and effect must be given to every word, phrase,

3

sentence, and part of the statute if possible, and words in a statute should not be construed as mere surplusage").

Where, as here, a statute does not define a term used within the statute "the language should be given its plain and ordinary meaning." *Fla. Birth-Related Neurological Injury Compensation Ass'n v. Fla. Div. of Admin. Hearings*, 686 So. 2d 1349, 1354 (Fla. 1997). In such cases, it is "appropriate to refer to dictionary definitions when construing statutes." *Barco v. School Bd. of Pinellas County*, 975 So. 2d 1116, 1122 (Fla. 2008). The reading of the EFAA that lends coherence to the use of these separate terms assigns distinct meanings to "case" and "claim," with the former referring to the entirety of the lawsuit in which claim(s) implicating a sexual harassment dispute are brought. *Case*, Black's Law Dictionary (11th ed. 2019) (defining case as "a civil or criminal proceeding, action, suit, or controversy at law or in equity"); *cf. Claim*, Black's Law Dictionary (11th ed. 2019) (defining claim as "the assertion of an existing right; any right to payment or to an equitable remedy").

"Case" or "action" refers to an overall legal proceeding filed in a court, whereas a "claim" or a "cause of action" refers to a specific assertable or asserted right within such a proceeding. *See Brownback v. King*, 141 S. Ct. 740, 751 (2021) (Sotomayor, J., concurring) ("An 'action' refers to the whole of the lawsuit. Individual demands for relief within a lawsuit, by contrast, are 'claims.'"); *Higazy v. Templeton*, 505 F.3d 161, 171-72 (2d Cir. 2007) (using "case" as a general term for an action in court); *Serv. Emps. Int'l Union Nat'l Indus, Pension Fund v. Hebrew Homes Health Network Inc.*, 2019 U.S. Dist. LEXIS 156156, at *10 (D.D.C. Sept. 12, 2019) (contrasting "action," which is "the claims on which a given action is based," and "claim," which is "the means by which a person can obtain a privilege, possession, or enjoyment of a right

or thing; cause of action"); *La. Crisis Assistance Ctr. v. Marzano- Lesnevich*, 878 F. Supp. 2d 662, 667 (RD. La. 2012) (distinguishing "cause of action" and "claim" from "lawsuit" or "case").

In interpreting the EFAA, courts have analyzed the EFAA's statutory language and determined the invalidation of arbitration provisions extends to an entire *case*, not just individual *claims*. *See Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 558 (S.D.N.Y. 2023) (finding that the text of the EFAA "does not limit the invalidation to the claim or claims in which that dispute plays a part."); see also *See Gonzalez v. Carnival Corp.*, No. 1:24-cv-21361-KMM, 2024 U.S. Dist. LEXIS 215384, at *12 (S.D. Fla. Nov. 22, 2024). In *Gonzalez*, the plaintiff brought only a claim for Intentional Infliction of Emotional Distress ("IIED") and argued that the EFAA protected her from arbitration. *Id.* at 9. The court rejected her argument, reasoning that the EFAA applies only when a plaintiff asserts claims under Federal, Tribal, or State laws specifically prohibiting sexual harassment or assault. *Id.* at 12. The court cited *Johnson* for the conclusion that "where Plaintiff plausibly pled **claims** for sexual harassment under the NYCHRL, the EFAA applied to the **action**. *Id.* However, because the "plaintiff only br[ought] a state common law claim for IIED," "the EFAA d[id] not apply to the instant *Action* and d[id] not render the Arbitration Clause invalid*." Id.* at 12-13 (emphasis added).

Applying the same analysis, the EFAA unquestionably applies to the instant action because Plaintiffs' claims are distinguishable from those in *Gonzalez*. Unlike the plaintiff in *Gonzalez*, who asserted only an IIED claim without alleging a violation of a law specifically prohibiting sexual harassment, Plaintiffs here bring claims under Title VII, the Florida Civil Rights Act ("FCRA"), and the Miami-Dade Human Rights Ordinance ("MDHRO") for sexual harassment, hostile work environment, and retaliation. These statutes explicitly prohibit sexual harassment and retaliation related to such harassment, bringing this case squarely within the EFAA's protections. Moreover,

Plaintiffs Usai and Guia's retaliation claims arise directly from the same facts underlying the sexual harassment claims, further confirming that the entire case constitutes a "sexual harassment dispute" under the EFAA. Because the statutory language and judicial interpretation make clear that the EFAA applies to the entire case, not just individual claims, the arbitration provisions are invalid and unenforceable in this action.

In further support of this interpretation, it is important to note that the EFAA amends the FAA directly "(rather than, for example, amending a separate statute, such as Title VII, to bar the arbitration of certain claims arising under it)." *Johnson*, 657 F. Supp. 3d at 561 (finding that by "broadly blocking enforcement of an arbitration clause with respect to an entire 'case' 'relating to' a sexual harassment dispute [Congress] reflect[ed] its rejection—in this context—of the FAA norm of allowing individual claims in a lawsuit to be parceled out to arbitrators or courts depending on each claim's arbitrability.")

The interpretation described herein comports with well-established canons of statutory interpretation and a common-sense reading of the statute. Accordingly, this Court should hold that Plaintiffs' claims fall within the protections of the EFAA.

**A. Plaintiffs Have Alleged a Plausible Sexual Harassment Dispute and Plaintiffs' Claims Are Related To A Sexual Harassment Dispute.**

Plaintiffs' claims for retaliation based on sexual harassment fall within the definition of a "sexual harassment dispute" under the EFAA because the retaliation stems from conduct alleged to constitute sexual harassment. Since Plaintiffs' retaliation claims are directly linked to the underlying sexual harassment allegations, the EFAA applies to the entire action, rendering arbitration provisions unenforceable.

Defendants rely on *Mitchell* to argue that Plaintiffs' claims fail to present a plausible sexual harassment dispute and do not "relate to" a sexual harassment dispute. In *Mitchell*, the plaintiff

6

alleged claims of sexual discrimination and retaliation against her former employer, and the defendant moved to compel arbitration. *Mitchell v. Raymond James & Assocs., Inc.*, 2024 U.S. Dist. LEXIS 151960, at 1 (M.D. Fla. Aug. 23, 2024). Because the events described in the complaint took place before the EFAA's enactment, the court determined that the plaintiff had not stated a plausible sexual harassment dispute. *Id.* at 21. As a result, the plaintiff's claims were subject to arbitration, including her retaliation claim, which could not "relate to" a sexual harassment dispute that did not exist. *Id.* at 27 ("applying the EFAA to a stand-alone retaliation claim does 'not advance the interest embodied in the EFAA of vindicating the rights of sexual harassment claimants to litigate in court,' . . . because in that circumstance the issue of sexual harassment is not even being litigated"); *see also Gonzalez*, 2024 U.S. Dist. LEXIS 215384, at 12 (finding that plaintiff's sole claim against defendant for IIED did not trigger the EFAA's protections because the plaintiff failed to allege conduct that violated a law prohibiting sexual harassment.).

The circumstances in this case are easily distinguishable from those in *Mitchell*. Unlike in *Mitchell*, this case *does* involve a plausible sexual harassment dispute, including claims for sexual harassment, hostile work environment, and retaliation in violation of Title VII that trigger the protections of the EFAA. *See Gonzalez v. Carnival Corp.*, No. 1:24-cv-21361-KMM, 2024 U.S. Dist. LEXIS 215384, at *12 (S.D. Fla. Nov. 22, 2024) (finding that "where Plaintiffs allege conduct that violates Federal, Tribal, or State laws specifically prohibiting sexual harassment or sexual assault, like Title VII of the Civil Rights Act, the NYSHRL, or the NYCHRL, then the EFAA may apply and render the arbitration clause invalid."). Defendants' argument that the EFAA does not apply to Plaintiffs Usai and Guia's retaliation claims because they themselves did not experience sexual harassment misstates *Mitchell* and contradicts the purpose of the EFAA. *Mitchell* merely stands for the proposition that a standalone retaliation claim, one not accompanied

7

by a plausible sexual harassment dispute, does not trigger the EFAA's protections. It does not require that the plaintiff personally allege sexual harassment.

Plaintiff Usai and Plaintiff Guia's retaliation claims also "relate to" a sexual harassment dispute. *See Olivieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 92 (2d Cir. 2024) (finding that claims under Title VII and the NYSHRL for retaliation based on sexual harassment fell within the definition of a "sexual harassment dispute" under the EFAA because the retaliation is based on the conduct that is alleged to constitute sexual harassment); *see also Gonzalez*, No. 1:24-cv-21361-KMM, 2024 U.S. Dist. LEXIS 215384, at *12 (*citing Johnson*, 657 F. Supp. 3d at 557-58 (finding "where Plaintiff plausibly pled claims for sexual harassment under the NYCHRL, the EFAA applied to the *action"*). Every claim in this case is supported by the same underlying facts – the sexual harassment and sex discrimination occurring in Plaintiffs' workplace.

In *Olivieri*, the plaintiff brought claims against the defendants under Title VII for sexual harassment, retaliation, and hostile work environment, among other allegations. *Olivieri*, 112 F.4th at 77. The court rejected the defendants' argument that the EFAA did not apply to the plaintiff's retaliation claims, finding it meritless. *Id.* at 92. The court reasoned that retaliation stemming from a report of sexual harassment qualifies as a "sexual harassment dispute" because it is "relat[ed] to conduct that is alleged to constitute sexual harassment." *Id.* (*citing Johnson*, 657 F. Supp. 3d at 551). Accordingly, the EFAA applied to the plaintiff's entire action, including the retaliation claims.

Like the plaintiffs in *Olivieri*, Plaintiffs Usai and Guia experienced retaliation for their role in reporting workplace sexual harassment. In *Olivieri*, the court recognized that retaliation arising from a report of sexual harassment constitutes a "sexual harassment dispute" because it is directly connected to the alleged misconduct. *Olivieri*, 112 F.4th at 92. Similarly, Usai and Guia engaged

8

in protected activity by opposing Defendants' sexual harassment and gender-based discrimination against female employees, which is at the core of every claim in this action. Plaintiffs further supported affected employees in asserting their rights to a workplace free from harassment and discrimination. Given this direct link between Plaintiffs' retaliation claims and the underlying sexual harassment allegations, the reasoning in *Olivieri* applies here: Plaintiffs' retaliation claims are "relat[ed] to conduct that [was] alleged to constitute sexual harassment." *Id.* at 92. Thus, just as the court in *Olivieri* found that the EFAA encompassed retaliation claims, the same conclusion applies to Plaintiffs' claims in this case.

In conclusion, because Plaintiffs' claims include allegations of sexual harassment and related retaliation under laws that specifically prohibit such misconduct, this case is fully protected by the EFAA. Defendants' attempt to distinguish *Mitchell* is misguided, as that decision merely held that a standalone retaliation claim unconnected to a sexual harassment dispute does not trigger the EFAA. Whereas here, Plaintiffs' retaliation claims arise from the same facts as the sexual harassment claims. Accordingly, all claims in this case fall within the EFAA's protections, rendering Defendants' arbitration arguments meritless.

## II. Defendants' Procedural Gamesmanship Reveals a Strategic Effort to Undermine the Court's Authority and Retaliate Against the Plaintiffs

Defendants' decision to launch a separate AAA arbitration proceeding on the very same day that they filed their Motion to Compel Arbitration raises serious concerns about their true objectives. While arbitration can serve as an efficient forum under the right circumstances, simultaneously pursuing litigation in two venues appears designed to fragment the dispute and increase the cost and complexity for Plaintiffs. This approach stands at odds with both the Federal Arbitration Act's stated purpose of streamlining resolution and the public-policy interests

9

embodied in the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA"), which discourages forcing sexual-harassment-based disputes behind closed doors.

By forcing Plaintiffs Usai and Giua to defend themselves in parallel forums, Defendants risk subjecting them to duplicative discovery, conflicting rulings, and additional expenses that could have been avoided had Defendants chosen to consolidate their claims in a single, transparent proceeding. Courts have long cautioned against such maneuvers. The Eleventh Circuit, for instance, recognizes that when a party seeks arbitration after already engaging in or initiating litigation, it can signal gamesmanship rather than a bona fide desire for efficiency. Here, the timing strongly implies a tactical choice designed to box Plaintiffs in and undercut this Court's ability to adjudicate the underlying sexual harassment and retaliation allegations.

Moreover, the context of these proceedings reveals a potential retaliatory motive: Plaintiffs allege that Defendants' workplace practices violated anti-harassment and anti-discrimination laws, and Defendants responded by filing a separate arbitration action the moment Plaintiffs insisted on their day in court. Equally concerning is how this undercuts the EFAA's overarching policy directives. Congress enacted the EFAA to ensure that sexual harassment claims—and disputes "relating to" them—are litigated in an open forum unless the plaintiff voluntarily elects otherwise. Permitting Defendants to maintain an AAA action on top of insisting that this Court cede jurisdiction over Plaintiffs Usai and Giua's claims potentially fragments the sexual harassment controversy at the heart of this lawsuit. It also frustrates judicial economy and the broader public interest, especially when the remaining plaintiffs (with overlapping factual allegations) are already proceeding before this Court.

Taken together, these actions evince a concerted effort not to streamline the claims, but to multiply the fronts on which Plaintiffs must defend themselves, increase their costs, and diminish

the Court's ability to oversee vital statutory rights. Faced with these circumstances, a court is well within reason to conclude that Defendants' procedural posture amounts to strategic conduct that should not be rewarded. Rejecting the Motion to Compel Arbitration and keeping the matter in a single, publicly accountable forum aligns with both the FAA's objective of fair and efficient resolution and the EFAA's directive against compelling arbitration of claims rooted in sexual harassment. By declining to enforce the compelled arbitration, the Court preserves the integrity of the judicial process and safeguards Plaintiffs' statutory rights against what appears to be a maneuver designed to undercut both.

## CONCLUSION

**WHEREFORE**, the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendant's Motion to Compel in its entirety.

Respectfully submitted,

*/s/ Kyle T. MacDonald*
Kyle T. MacDonald, Esq.
Florida Bar No. 1038749
MacDonald Law, PLLC
420 SW 7th St, Suite 1118
Miami, FL 33130
Office: (786) 500-9675
Direct: (786) 500-9995
kyle@macdonaldemploymentlaw.com