UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

RICCARDO USAI, MASSIMILIANO GIUA,
IRINA SLIZSKAYA, and MEYVIS VEGA,

       Plaintiffs,                               CASE NO.: 1:24-cv-24830-KMM

      v.

CLUB MANAGEMENT MIAMI II, LLC, and
DONAHUE PEEBLES,

       Defendants.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

Plaintiffs, RICCARDO USAI ("Plaintiff Usai"), MASSIMILIANO GIUA ("Plaintiff Giua"), IRINA SLIZSKAYA ("Plaintiff Slizskaya"), and MEYVIS VEGA ("Plaintiff Vega") (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby file their Response in Opposition to Defendants' Motion to Dismiss ("Defendants' Motion"), and in support state as follows:

**INTRODUCTION**

Defendants' Motion seeks to dismiss Plaintiffs' well-pleaded claims by selectively parsing the factual allegations that support each cause of action and misconstruing the applicable pleading standard, neither of which are sufficient to meet the standard for dismissal under Rule 12(b)(6). Plaintiffs' Complaint contains sufficient factual allegations to put Defendants on adequate notice of the claims against them and the grounds upon which they rest. for discrimination, hostile work environment, retaliation, and the unlawful withholding of wages and tips. Plaintiffs' Complaint distinguishes each of their respective claims, which include discrimination, hostile work

1

environment, and retaliation under Title VII of the Civil Rights Act of 1964, the Florida Civil Rights Act ("FCRA"), and the Miami-Dade Human Rights Ordinance ("MDHRO"), as well as claims for unlawful wage theft and retaliation under the Fair Labor Standards Act ("FLSA").

For these reasons and those set forth herein, Plaintiffs' respectfully request that this Honorable Court deny Defendants' Motion in its entirety. If, in the alternative, the Court deems any aspect of the Complaint in need of clarification, Plaintiffs respectfully request leave to amend the Complaint.

## **LEGAL STANDARD**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Arista Records. LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). The standard is one of "flexible plausibility," "requiring a pleader to amplify her complaint with sufficient factual allegations to 'nudge [her] claims across the line from conceivable to plausible.'" *Chepak v. Metro. Hosp.*, No. 13 Civ. 1726, 2014 WL 552682, at *1 (2d Cir. Feb. 13, 2014) (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion to dismiss, the Court must "assume [the] veracity" of the allegations set forth, draw all "reasonable inference[s]" in the plaintiff's favor, and use its "judicial experience and common sense" to conduct a "context-specific" analysis of the complaint. *Iqbal*, 556 U.S. at 678–79. Federal Rule of Civil Procedure 8(a)(2) does not require the plaintiff to plead

"specific evidence" explaining precisely how the defendant's conduct was unlawful, *Arista Records*, 604 F.3d at 119–21, but only facts sufficient to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal citations omitted).

## LEGAL ARGUMENT

Defendants' Motion employs a scatter-shot approach, raising arguments ranging from erroneously labeling Plaintiffs' Complaint a "shotgun pleading" to challenging the well-established worksharing relationship between the EEOC and the Miami-Dade Commission on Human Rights (MDCHR)—none of which demonstrate any meaningful deficiencies in Plaintiffs' pleadings. At this stage, the Court is required to accept Plaintiffs' factual allegations as true and draw all reasonable inferences in their favor. Accordingly, each of Plaintiffs' claims stands, as every count reincorporates the general facts in a manner consistent with Rule 8(a) and provides Defendants with detailed factual allegations regarding the nature, scope, and timeline of the alleged wrongdoing. Defendants' arguments are entirely without merit and must be summarily rejected.

### I. Plaintiffs' Complaint Is Not an Impermissible Shotgun Pleading and Provides Defendants with Sufficient Notice Under Rule 8

Defendants initially contend that the entire thirty-count Complaint should be dismissed on the grounds that it constitutes a "shotgun pleading." DE 14, p. 18. This argument, however, fundamentally mischaracterizes the nature of the pleading. Plaintiffs' Complaint is meticulously structured and leaves no ambiguity as to the claims asserted against Defendants and the grounds upon which they rest. Plaintiffs' Complaint easily satisfies the requirements of Rule 8, rendering Defendants' "shotgun pleading" characterization both inaccurate and legally untenable.

The Eleventh Circuit has cautioned against shotgun pleadings, typically identifying four types: (1) complaints where each count incorporates all preceding allegations; (2) complaints filled

3

with conclusory or irrelevant facts detached from specific causes of action; (3) complaints failing to separate distinct causes of action into different counts; and (4) complaints failing to specify which defendant is responsible for which acts when multiple defendants are involved. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). Plaintiffs' Complaint bears none of these hallmarks.

Notably, Plaintiffs' Complaint does not fall into any of these categories and is a far cry from a "shotgun pleading" where Defendants must sift through irrelevant allegations to discern the claims. In rejecting similar shotgun pleading arguments in an employment discrimination case, the Eleventh Circuit refuted such a requirement of "technical exactness" in pleading and determined that dismissal of a plaintiff's complaint on this basis was inappropriate where the defendant was on fair notice of the claims against them. *Charles v. Geo Grp. Inc.*, 2024 U.S. App. LEXIS 9021, at *8 (11th Cir. 2024).

Defendants contend Plaintiffs' Complaint is an impermissible shotgun pleading because in each of the counts, Plaintiffs "reincorporate the factual allegations in Paragraphs 30 through 117." DE 14, p. 4. This argument is meritless, as the reincorporation of prior factual allegations does not constitute shotgun pleading. *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1324 (11th Cir. 2015) (distinguishing pleadings that reincorporate predecessor counts in each successive count from pleadings that reincorporate factual allegations in each count); *S.E.C. v. City of Miami, Fla.*, 988 F. Supp. 2d 1343, 1354–55 (S.D. Fla. 2013) (finding that incorporating 115 paragraphs of general factual allegations into each count did not constitute a shotgun pleading). As such, the Plaintiffs' incorporation of factual allegations is not a form of shotgun pleading, and the Defendants' argument fails.

In fact, Defendants' Motion painstakingly itemizes each of the claims asserted in the Plaintiffs' Complaint, specifying the Plaintiff asserting the claim, the Defendant(s) whom the count is against, and the core factual allegations upon which the claim is based. This very listing demonstrates that Defendants fully understand the nature and legal foundation of each claim and that the Complaint is not a haphazard or indiscriminate "shotgun pleading." Instead, the structured presentation clearly satisfies the notice requirements of Rule 8 by providing Defendants with detailed and unambiguous notice of the grounds for relief sought. Consequently, Defendants' attempt to dismiss the Complaint on the basis that it is a shotgun pleading is entirely without merit.

In support of their arguments, Defendants cite *Harris v. Pub. Health Tr. of Miami-Dade Cnty.,* 2020 U.S. Dist. LEXIS 66035, 2020 WL 1933169, at *3 (S.D. Fla. Apr. 14, 2020). However, Defendants' reliance is misguided, as in *Harris*, the Court found the plaintiff's complaint to included vague, conclusory, and immaterial allegations, and did not "give Defendant adequate notice of the grounds upon which the claims against it rest." 2020 U.S. Dist. LEXIS 66035, at *7 (S.D. Fla. Apr. 14, 2020). While the Complaint is detailed, reflecting the unfortunate breadth of Defendants' unlawful conduct towards multiple employees, it is not replete with "conclusory, vague, and immaterial facts." Defendants' ability to specific substantive arguments against Plaintiffs' claims—such as challenging Peebles' FLSA status or seeking arbitration for specific Plaintiffs—demonstrates they have received fair notice and understand the claims against them. DE 14 pp. 6–18,

Defendants also improperly label Plaintiffs' inclusion of claims against both Defendants under a joint employer theory of liability as a form of shotgun pleadings. This argument neglects the established principle that when a "Plaintiff is making the same claim against both Defendants as joint employers, the Amended Complaint can be read as making the same allegation against

5

each defendant individually". *Wright v. Waste Pro United States, Inc.*, 2020 U.S. Dist. LEXIS 248561, at *11. The Court in *Wright* distinguished these types of claims from those where "broad allegations are directed at a large and diverse group of defendants, leaving unclear just who is alleged to have committed which acts." *Id.* at *10.

Defendants' Motion fails to provide a meaningful basis for the harsh remedy of dismissal with prejudice. Accordingly, Plaintiffs respectfully request Defendants' Motion be denied in its entirety.

## II. PLAINTIFFS' FLSA CLAIMS ARE ADEQUATELY PLEADED

Plaintiffs' Complaint properly asserts claims for wage theft and retaliation under the FLSA. Specifically, Plaintiffs' Complaint details the Defendants' unlawful deprivation of employees' tipped wages under the FLSA and the retaliation they were subjected to by Defendants shortly thereafter. Plaintiffs' allege that Defendant Peebles, who is the owner and chief executive of Defendant Bath Club, exercised significant day-to-day control over the terms and conditions of Plaintiffs' employment in a tangible way, including personal involvement in the payroll administration, hiring and firing of employees, and of tip retention practices. These factual allegations alone are sufficient hold him individually liable as an "employer" under the FLSA. DE 1, p. 2.

Plaintiffs have sufficiently pleaded their FLSA causes of action, and Defendants' arguments to the contrary misconstrue the governing Rule 12(b)(6) standards. Whether Peebles exercised sufficient operational control to impose personal liability is inherently factual and cannot be resolved at the pleading stage. Accordingly, Defendants' arguments are untenable and must be rejected.

### A. Plaintiffs' Claims Establish Defendant Peebles' Individual Liability

Plaintiffs' Complaint establishes Defendant Peebles as an "employer" within the meaning of the FLSA. As outlined in detail in Plaintiffs' Complaint, Defendant Peebles was not merely a nominal figurehead or supervisory employee in name only, but instead, actively directed employment policies that directly affected employees' wages and working conditions. Any factual disputes regarding Defendant Peebles' level of control over Plaintiffs' employment is premature and should be appropriately addressed at the summary judgment stage, rather than at the pleading stage.

The FLSA broadly defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Whether an individual falls within this definition "does not depend on technical or 'isolated factors but rather on the circumstances of the whole activity." *Bejerano v. Flex Fla. Corp.*, 2020 U.S. Dist. LEXIS 127101, at *4 (S.D. Fla. July 20, 2020) (quoting *Hodgson v. Griffin & Brand of McAllen, Inc.*, 471 F.2d 235, 237 (5th Cir. 1973)).

The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages. *Chavarria v. Clements*, 2016 U.S. Dist. LEXIS 204558, at *14 (S.D. Fla. April 13, 2016) (quoting *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986). Nonetheless, such a corporate officer "must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee" in order to qualify as an employer under the FLSA." *Id.* at 638. A supervisor's ownership interests in the corporation and control over the corporation's day-to-day functions are relevant to whether the individual can be deemed an employer because they are indicative of the supervisor's role in causing the violation. *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1313 (11th Cir. 2013).

Defendants correctly note that courts in the Eleventh Circuit employ the economic reality test to determine whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Villarreal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997). [N]o single factor is dispositive. 'Instead, the 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive.'" *Santos v. Cuba Tropical, Inc.*, 829 F. Supp. 2d 1304, 1314-15 (S.D. Fla. 2011) (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)).

In applying this standard, Plaintiffs' allegations against Peebles are more than sufficient to establish their FLSA claims against him at the pleading stage. Defendants' Motion puts forth a pleading standard incongruent with the FLSA. *See, e.g.*, *Chavarria v. Clements*, 2016 U.S. Dist. LEXIS 204558, at *15 (S.D. Fla. April 13, 2016) (finding allegations that a defendant had operational control over the employer and was personally involved in the facts surrounding plaintiff's claims were more than sufficient to state a claim against a managing member defendant); *Ceant v. Aventura Limousine & Transp. Serv., Inc.*, 874 F. Supp. 2d 1373, 1381 (S.D. Fla. 2012) (allegations that defendants were "owners and operators" of a business, that each of them "regularly exercised authority to hire and fire employees, determine work schedules, and control the finances and operations of the company" were sufficient to state a claim).

### B. **Plaintiffs' Wage Theft Allegations Provide Fair Notice of Defendants' FLSA Violations**

The Complaint provides a detailed factual foundation sufficient to state plausible claim for wage theft under the FLSA. Plaintiffs' Complaint alleges that Defendants systematically underpaid servers by paying a flat daily rate while unlawfully withholding and misdirecting tips that the servers rightfully earned. By means of example, the Complaint explains that despite the fact that

Defendants collected a significant amount of gratuities from customers—often amounting to thousands of dollars in tips per week—Defendants chose to pay a flat rate of $240.00 per shift in violation of the FLSA. DE 1, pp. 7–8.

Moreover, the Complaint specifies that managers and supervisors were not only aware of this policy but actively participated in its enforcement. In particular, it is alleged that Jean Thielen Guerrero, an employee designated as "Accountant/IT," frequently manipulated the distribution of tips and even paid himself tips on several occasions. DE 1, pp. 7–8. Plaintiffs' Complaint sets forth that Defendants allowed traditionally non-tipped employees and certain supervisors to participate in the tip pool, which led to the withholding of tips that should have been distributed to the servers. DE 1, pp. 7–8. These factual allegations are more than sufficient to satisfy the pleading standard, whether for an FLSA claim or otherwise.

Even assuming the veracity of Defendants' arguments, in the FLSA context, it is well-recognized that Plaintiffs are often without the necessary information to specifically indentfy financial and time-keeping records because they are in the possession of the Defendants. *See, e.g.*, *Pestana v. Porto Alegre Brazilian Grill & Bar*, 2024 U.S. Dist. LEXIS 172448, at *6 (S.D. Fla. September 12, 2024) (quoting *Gaviria v. Maldonado Bros.*, No. 13-60321-CIV, 2013 U.S. Dist. LEXIS 92712, 2013 WL 3336653, at *3 (S.D. Fla. July 2, 2013)) ("[I]t is the defendants, not the plaintiffs, who generally enjoy pre-suit possession of information concerning the annual revenue of the defendants. Because of this informational imbalance, a plaintiff's bare-bones revenue allegations may be 'sufficient' even without the pleading of more detailed factual allegations.")

Importantly, Plaintiffs' factual allegations are sufficient to meet the standard in the very case cited by Defendants, *Earle v. Miami Dade County*, which describes an FLSA complaint as requiring: "a. an initial estimate of the total amount of alleged unpaid wages; b. a preliminary

calculation of such wages; c. the approximate period during which the alleged violations occurred; and d. the nature of the wages (e.g. overtime or straight time)." No. 24-20270-CIV, 2024 U.S. Dist. LEXIS 91081, at *6 (S.D. Fla. May 21, 2024). Given that Plaintiffs, have indeed, described each of the aforementioned elements, Defendants' argument regarding Plaintiffs Slizskaya and Vega's FLSA claims is meritless. Accordingly, Defendants' Motion must be denied.

C. **Plaintiffs' Have Established The Elements of Their FLSA Retaliation Claims**

The Complaint similarly sets forth sufficient factual allegations to support plausible claims for FLSA retaliation under § 215(a)(3) of the FLSA, which protects individuals from retaliation for asserting their rights under the statute. *See Vazquez v. Uooligan Gas Station Convenience Store Inc.*, 2020 U.S. Dist. LEXIS 104634, at *8 (M.D. Fla. 2020); 29 U.S.C. § 215(a)(3). Defendants' falsely claim that Plaintiffs failed to allege "when or how they opposed or complained" or "to whom such opposition or complaints were made." *See* DE 1, p. 9. In reality, Plaintifs Slizskaya and Plaintiff Vega that they not only complained to Guerrero regarding the unlawful retention and misappropriation of tipped wages—complaints that were substantiated through a subsequent investigation conducted by Defendants' third-party HR vendor. DE 1, pp. 11–12. Both the complaints to Guerrero and the complaints during the investigation alleged violations of 29 U.S.C. § 203(m), and as a result, constitute protected activities under the FLSA.

Similarly, Plaintiffs Usai and Giua assert that, during a meeting with Defendant Peebles, they raised concerns about the unlawful tip theft of employees' wages, only to be met with retaliatory actions such as scheduling manipulations, threats of termination, and ultimately, their wrongful terminations. DE 1, p. 14. It further details that soon after these complaints were made, Defendants implemented adverse employment measures, including reducing work hours, issuing threats of termination, and ultimately terminating employment DE 1, p. 10.

Plaintiffs have also established sufficient evidence of causation, both due temporal proximity and the pattern of retaliatory motive alleged by Plaintiffs. The Complaint states that on or around June 23, 2023, a meeting was held between Defendant Peebles, Plaintiff Giua, and Plaintiff Usai, during which Plaintiffs clearly reiterated their concerns regarding the unlawful tip retention practices. DE 1, p. 14. Plaintiff Slizskaya was terminated in an act of retaliation on or around June 29, 2023—less than one week after the aforementioned meeting. DE 1, p. 99. Likewise, the Complaint details that Plaintiff Vega was demoted and subsequently terminated on or around August 25, 2023. DE 1, pp. 101–103. Additionally, both Plaintiff Giua and Plaintiff Usai were terminated on or around August 14, 2023. DE 1, pp. 104–106. The Eleventh Circuit has found this kind of close temporal proximity alone is sufficient to establish causation. *See Raspanti v. Four Amigos Travel, Inc.*, 266 Fed. Appx. 820, 823 (11th Cir. 2008) (temporal proximity of less than three months is sufficient to establish causation).

Defendants' purported view of FLSA retaliation claims runs directly afoul of the Supreme Court's directive that the FLSA is "remedial and humanitarian in purpose," and that it "must not be interpreted ... in a narrow, grudging manner." *Keith v. Univ. of Miami*, 437 F. Supp. 3d 1167, 1172 (S.D. Fla. 2020) (quoting *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944)). "By giving a broad construction to the anti-retaliation provision its purpose will be further promoted." *Id.* (quoting *EEOC v. White & Son Enterprises,* 881 F.2d 1006, 1011 (11th Cir. 1989)). For these reasons, the FLSA retaliation claims are adequately pleaded, and Defendants' Motion to dismiss these counts must be denied.

### III. PLAINTIFFS' HAVE ESTABLISHED THE ELEMENTS OF THEIR TITLE VII, FCRA, AND MDHRO CLAIMS

Plaintiffs' Complaint sufficiently establishes the elements of their respective claims under Title VII, the FCRA, and the MDHRO, including discriminatory treatment, the creation of a hostile

work environment, and retaliatory conduct. Plaintiffs set forth specific factual allegations demonstrating that Defendants systematically withheld tipped wages and subjected female employees to degrading sexual harassment and discriminatory remarks. DE 1, pp. 7–8. Moreover, the Complaint details how these discriminatory practices culminated in an objectively and subjectively hostile work environment, as evidenced by repeated adverse actions such as scheduling manipulations and unjustified terminations. DE 1, p. 10. In addition, Plaintiffs allege that after engaging in protected activity by opposing these unlawful practices and assisting co-workers, they suffered retaliatory measures that are clearly causally connected to their objection. DE 1, p. 10.

With respect to any arguments raised by Defendants regarding the arbitration of Plaintiffs' claims, those are addressed separately in Plaintiffs' Response to Defendants' Motion to Compel being filed simultaneously herewith. As set forth in further detail below, Defendants' Motion should be denied in its entirety.

### A. Plaintiffs Have Provided Clear and Specific Evidence of Discrimination

Defendants attack Plaintiffs' claims of discrimination on the basis that Plaintiffs' have failed to identify specific comparators. This argument misses the mark entirely because a plaintiff is not required to plead a prima facie case of discrimination under the *McDonnell-Douglas* framework to survive a motion to dismiss. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) (emphasizing that a prima facie case "is an evidentiary standard, not a pleading requirement"). For example, the *McDonnell-Douglas* framework does not apply, even at the summary judgment stage, when the plaintiff, as they did in this case, alleges a mixed-motive discrimination claim. *See Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1237-38 (11th Cir.

2016). Plaintiffs have plausibly alleged discriminatory animus, which is sufficient to state a claim, especially in the sexual harassment context.

By means of example, the Complaint details how the Defendant Bath Club Plaintiff Slizskaya to discriminatory treatment based on her sex, including withholding and manipulating her tipped wages and imposing adverse employment actions that no similarly situated male employee endured. DE 1, pp. 26–27. Plaintiffs are not required, at this stage, to specify exact comparators or provide detailed evidence regarding the comparative treatment. Rather, the allegations suffice to state a claim for disparate treatment by establishing that the adverse employment practices were motivated, at least in part, by her status as a female employee. DE 1, pp. 26–27. Any legitimate factual disputes about the presence or identity of a comparator, to the extent they exist, should be resolved after discovery. Accordingly, Plaintiffs respectfully submit that the discrimination claims are adequately pleaded and that Defendants' Motion should be denied in its entirety.

### B. **Plaintiffs Slizskaya and Vega Were Subjected to Pervasive Sex-Based Harassment**

Plaintiffs further assert that Defendants created and maintained a hostile work environment that was both pervasive and intolerable, in violation of Title VII, FCRA, and MDHRO. The Complaint alleges that the work environment was characterized by a continuous pattern of degrading, sexually charged conduct that not only undermined the dignity of the female employees but also interfered with their ability to perform their jobs. For instance, the Complaint details repeated instances where Defendant Bath Club's management, particularly through the conduct of supervisors, subjected Plaintiff Vega to vulgar sexual remarks, unwanted physical contact, and demeaning comments. DE 1, p. 10–11. These incidents are not isolated occurrences; rather, they

form a clear pattern of conduct that signals an environment where discriminatory behavior was tolerated and even condoned.

Moreover, the factual allegations show that the hostile work environment extended beyond mere offensive comments. The Complaint describes how employees were systematically denied access to basic workplace accommodations—such as adequate breaks for meals and restroom use—which further exacerbated the abusive conditions. DE 1, p. 10. This deliberate refusal to provide reasonable accommodations, coupled with the use of degrading language, contributed to an atmosphere of intimidation and humiliation that a reasonable person in Plaintiff Vega's or Plaintiff Slizskaya's position would find unbearable.

Defendants argue that the allegations regarding a hostile work environment are conclusory and fail to identify specific incidents that rise to the required level of severity or pervasiveness. However, the Complaint provides concrete examples that directly rebut such contentions. The Supreme Court has emphasized that in evaluating whether a working environment is hostile, it is critical to consider "the social context in which particular behavior occurs and is experienced." *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81. It specifies that the harassment was not a matter of sporadic or isolated remarks but part of a sustained pattern that included explicit sexually derogatory comments, physical intrusions, and retaliatory actions that collectively altered the terms and conditions of employment. DE 1, pp. 10–11. The detailed narrative clearly puts Defendants on notice that their conduct was intended to demean and humiliate female employees on a continuing basis.

In light of these comprehensive factual allegations, the hostile work environment claims satisfy the pleading requirements. The Complaint establishes that Defendant Bath Club's conduct was both objectively severe and subjectively perceived as hostile by the affected employees. Thus,

Plaintiffs have provided a sufficiently detailed and plausible basis for their hostile work environment claims, and Defendants' arguments to dismiss these claims must be rejected.

### C. Plaintiffs Have Established Each Element of Their Retaliation Claims under Title VII, the FCRA, and MDHRO

In conclusory fashion, Defendants further contend Plaintiffs' claims for retaliation under Title VII, the FCRA, and MDHRO must be dismissed for failing to include sufficient factual allegations. Defendants' argument for dismissal of these claims spans just three sentences, yet, Defendants unironically contend Plaintiffs' allegations are insufficient because they do not "do not allege to whom they complained or when, thus precluding any evidence as to temporal proximity between the protected activity and the adverse action." D.E. 16, p. 4. This is simply untrue.

In their Complaint, Plaintiffs assert that Defendants retaliated against them in direct response to their protected activities. The Complaint alleges that Plaintiffs opposed Defendants' unlawful tip-withholding practices and actively assisted co-workers in asserting their FLSA rights. Shortly thereafter, Plaintiffs experienced a series of adverse employment actions—including scheduling manipulations, threats of termination, lockouts, and, ultimately, outright terminations. DE 1, p. 10. This sequence of events establishes a clear and direct causal connection between Plaintiffs' protected activities and the punitive measures imposed by Defendants.

The Complaint provides specific factual details that rebut Defendants' contention that the retaliation allegations are mere conclusory statements. It explicitly states that the adverse actions occurred in close temporal proximity to the complaints, indicating that the retaliation was not coincidental but rather a deliberate response to the Plaintiffs' objections. DE 1, p. 10. Defendants' argument that additional dates or more granular details are required is misplaced at the pleading

stage; the Complaint sufficiently sets forth the necessary elements by outlining both the protected conduct and the subsequent harmful actions.

Furthermore, the narrative detailed in the Complaint demonstrates that the retaliatory measures were part of a broader pattern of conduct intended to deter and punish employees for exercising their statutory rights. The immediate and severe response—such as reducing work hours, imposing hostile scheduling changes, and ultimately terminating employment—provides a strong basis for inferring that the adverse employment actions were directly caused by, and in retaliation for, Plaintiffs' protected activities. These detailed allegations place Defendants on notice that their retaliatory conduct is central to the Plaintiffs' claims.

Accordingly, Plaintiffs have met their pleading burden by providing a sufficiently detailed and plausible account of retaliation that is causally linked to their protected activities. Any determination regarding the adequacy of these allegations should be deferred to the evidentiary phase. For these reasons, the retaliation claims under Title VII and the FCRA are adequately pleaded, and Defendants' Motion to dismiss these counts must be denied.

### D. **Plaintiffs Have Established Each Element of Their Retaliation Claims under Title VII, the FCRA, and MDHRO**

Plaintiffs have fully satisfied all applicable administrative prerequisites for their claims, including the dual-filing requirement with the EEOC and the MDCHR. Defendants argue that Plaintiffs failed to properly exhaust the MDCHR filing requirement; however, this contention is without merit. The Complaint properly alleges that Plaintiffs dual-filed discrimination charges with the EEOC, the Florida Commission on Human Relations, and the MDCHR. DE 1, pp. 20–21. This dual-filing is not only proper but is also a well-established practice in this jurisdiction.

Defendants fail to recognize that the MDCHR is a Fair Employment Practices Agency (FEPA), which has a work-sharing agreement in place with the EEOC. *See* Exhibit 1. Pursuant to

that agreement, Plaintiffs were under no obligation to initiate a separate and distinct filing with the MDCHR, as evidenced by the fact that Plaintiffs did indeed receive Notices of Right to Sue from the MDCHR Director. *See* Exhibits 1, 2.. Although Plaintiffs' allegations were more than sufficient to establish satisfaction of the administrative pre-requisites, they have nonetheless attached the Notices of Right to Sue to dispel Defendants' misguided arguments. *See, e.g.*, *Howard v. Sect. of the Army*, No. 3:14-cv-605-J-34JBT, 2015 U.S. Dist. LEXIS 96195, 2015 WL 4496129, at *4 (M.D. Fla. July 23, 2015) ("this Court may take judicial notice of the EEOC decision letter without transforming the motion to dismiss into a motion for summary judgment"). Accordingly, Defendants' Motion must be denied.

## CONCLUSION

**WHEREFORE**, the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss in its entirety.

Respectfully submitted,

*/s/ Kyle T. MacDonald*
Kyle T. MacDonald, Esq.
Florida Bar No. 1038749
MacDonald Law, PLLC
420 SW 7th St, Suite 1118
Miami, FL 33130
Office: (786) 500-9675
Direct: (786) 500-9995
kyle@macdonaldemploymentlaw.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document is being served on April 2, 2025, on all counsel of record on the service list below via transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Kyle T. MacDonald*
Kyle T. MacDonald, Esq.

**SERVICE LIST**

**ASSOULINE & BERLOWE, P.A.**

DANIEL E. VIELLEVILLE
Florida Bar No. 940496
dev@assoulineberlowe.com
ELLEN M. LEIBOVITCH
Florida Bar No. 656933
eml@assoulineberlowe.com
2385 N.W. Executive Center Dr., Suite 100
Boca Raton, FL 33431
Tel: (561) 361-6566

*Counsel for Defendants Club Management Miami II, LLC and R. Donahue Peebles*