UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:24-CV-24830-KMM

RICCARDO USAI, MASSIMILIANO GIUA,
IRINA SLIZSKAYA, and MEYVIS VEGA,

                              Plaintiffs,

vs.

CLUB MANAGEMENT MIAMI II, LLC, and
R. DONAHUE PEEBLES,

                              Defendants.
_____/

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**

Defendants, CLUB MANAGEMENT MIAMI II, LLC ("Club Management") and R. DONAHUE PEEBLES ("Peebles"), pursuant to S.D. Fla. L.R. 7.1(c)(1), offer the following reply to the response [ECF 28] (the "Response") of Plaintiffs, Riccardo Usai ("Usai"), Massimiliano Giua ("Giua"), Irina Slizskaya ("Slizskaya"), and Meyvis Vega ("Vega"), regarding Defendants' motion to dismiss (the "Motion") [ECF 14]:

**SUMMARY OF REPLY**

In the Response, Plaintiffs deny that their complaint [ECF 1] (the "Complaint") is a shotgun pleading and maintain that their 30-count filing properly alleges Peebles' individual liability for under the Fair Labor Standards Act ("FLSA") and states claims against Club Management for wage theft, discrimination, hostile work environment and retaliation arising under Title VII of the Civil Rights Act ("Title VII") the Florida Civil Rights Act ("FCRA"), and the Miami-Dade Human

Rights Ordinance ("MDHRO")[1]. Contrary to Plaintiffs' assertions, there can be no question that dismissal of the Complaint is proper for all the reasons stated in the Motion and further highlighted in this reply.

I. **ARGUMENT**

    **A. The Complaint Is A Shotgun Pleading.**

The Complaint, which re-adopted all factual allegations into each count even if the factual allegations were not relevant to that count, is precisely like the one dismissed by this Court in *Harris v. Pub. Health Tr. of Miami-Dade Cnty.*, 2020 U.S. Dist. LEXIS 66035, 2020 WL 1933169, at *3 (S.D. Fla. Apr. 14, 2020). *Harris* noted that the shotgun pleading label applied to the complaint even though it did not "precisely fall into the prohibited categories enumerated" in *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1322 (11th Cir. 2015). The same is true here.

The fact that Defendants have the "ability to specific substantive arguments against Plaintiffs' claims – such as challenging Peebles' FLSA [employer] status or seeking arbitration for specific Plaintiffs" [Response at 3] does not negate the shotgun pleading. The fact that Plaintiffs filed a shotgun pleading is just one reason the Complaint should be dismissed.

Finally, and though Plaintiffs claim that the Complaint "painstakingly itemizes each of the claims asserted… specifying the Plaintiff asserting the claim, the Defendant(s) whom the count is against, and the core factual allegations upon which the claim is based" [Response at 5], the facts are clear: Plaintiffs filed a four-party complaint with 30 separate claims that contained both distinct

---

[1] Defendants voluntarily withdraw their argument in the Motion that Plaintiffs failed to exhaust their administrative remedies as to their claims arising under the MDHRO (Motion at 16-18) because Defendants now see Plaintiffs filed claims with this local agency and received right to sue notices, neither of which were ever previously served on Defendants or the undersigned.

*and* overlapping arguments, that arose under federal, state and local laws, and that included 117 introductory allegations (with paragraphs 30 through 117 incorporated into each count even though many of these facts were irrelevant to the claim alleged).

### A. Plaintiffs Have Not Established Peebles' Liability.

Plaintiffs argue that whether Peebles exercised sufficient operational control to impose personal liability cannot be resolved at the pleading stage, which is simply not true when, as here, the allegations as to Peebles are merely conclusory. Indeed, Plaintiffs have literally tracked the definition of "employer" under the FLSA in an effort to attached liability to Peebles.

Plaintiffs ironically claim that Peebles "actively directed employment policies that directly affected employees' wages and working conditions" (Response at 7) when it was Usai and Giua that were hired to oversee "the day-to-day operation" of The Bath Club and "had some direct responsibility for the supervision" of all employees. *Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986).

The economic reality is that Peebles was not the employer of Plaintiffs as defined under the FLSA. "Plaintiffs have not alleged any specific interactions with Peebles plausibly showing that he had direct control over decisions concerning wages, which is at the very heart of Plaintiffs' wage theft claim" (Motion at 7), and Plaintiffs' assertions as to Peebles' role is directly contradicted by other allegations that Jean Thielen Guerrero (an accountant) and "other managers" supervised Slizskaya and Vega (Complaint at ¶¶53-59).

### B. The Wage Theft Claims Are Legally Insufficient.

Plaintiffs argue that they have alleged "that Defendants systematically underpaid servers by paying a flat daily rate while unlawfully withholding and misdirecting tips that the servers rightfully earned" (Response at 8). Nonetheless, Slizskaya and Vega have still not addressed the

fact that they have not provided an initial estimate of their alleged unpaid wages, a preliminary calculation of such wages, or the period during which the alleged violations occurred. One can only wonder how Slizskaya and Vega can claim wage theft when they do not even know how much was allegedly withheld from them.

These same pleading deficiencies were addressed in the case of *Earle v. Mia. Dade Cty.,* No. 24-20270-CIV, 2024 U.S. Dist. LEXIS 91081 (S.D. Fla. May 21, 2024), but Plaintiffs summarily disregard the *Earle* case and claim that they have alleged the aforementioned elements. Plaintiffs fail to cite to these elements in the Complaint, and Defendants have yet to find them.

### C. Plaintiffs Have Failed To Provide Facts To Support Their Retaliation Claims.

All of Plaintiffs' sixteen (16) retaliation claims[2] are deficient in that they do not sufficiently describe their protected activities and the causal connection between such activities and adverse employment actions suffered.

Slizskaya and Vega alleged that, on May 27, 2023, they made complaints against Guerrero for his unlawful conduct[3] (Complaint at ¶84), but to whom such complaints were made is unclear. Plaintiffs further allege that "Defendants terminated employees who had opposed Defendants' unlawful employment practices or participated in the recent investigation, including the Plaintiffs" (Complaint at ¶98).

Slizskaya alleges that she was terminated on June 29, 2023, which was "less than a month and a half after she participated in the investigation against Guerrero and brought forth her

---

[2] Defendants address this argument to Plaintiffs' retaliation claims brought under the FLSA, Title VII, the FCRA, and the MDHRO.

[3] *See* Complaint at ¶¶66-76.

complaints" (Complaint at ¶¶99-100), but she has failed to provide any facts connecting her alleged protected activity to her termination.[4]

Likewise, Vega has failed to allege any facts supporting the conclusion that her demotion and subsequent termination on August 25, 2023 was causally connected to any protected activity in which she engaged. In fact, Vega alleges that she became ill and took sick leave on or around August 17, 2023 and, upon her return, she was demoted to a server position that she opposed and was unlawfully terminated on August 25, 2023 (Complaint at ¶¶101-103). Opposing a demotion or a termination, neither of which is unlawful, is not a protected activity. *See Small v. City of Hollywood*, 661 F. Supp. 3d 1187, 1202 (S.D. Fla. 2023) ("A complaint about treatment or discipline, unrelated to statutorily-protected matters, does not constitute protected activity, and thus cannot serve as the basis for a retaliation claim"); *Malone v. Mr Glass Doors & Windows Mfg., LLC*, 2022 U.S. Dist. LEXIS 126811, at *17 (S.D. Fla. July 15, 2022) (Title VII's anti-retaliation provision prohibits retaliation when an employee has opposed any practice made an unlawful under Title VII). Indeed, "Where the employee voices a complaint but does not reference discrimination or a protected characteristic, the employee's opposition will not constitute protected activity." *Small*, 661 F. Supp. 3d at 1205.

Furthermore, Usai and Giua, as managers, did not engage in a protected activity when, in the course of their employment, they brought to Peebles' attention "their concerns regarding Guerrero and the unlawful tip retention" (Complaint at ¶96). *Patterson v. Ga. Pac., LLC*, 38 F.4th

---

[4] Similarly, Usai and Giua claim that they met with Peebles on June 23, 2023 and raised concerns about the unlawful theft of employees' tips (Complaint at ¶¶95-96) and that Slizskaya was terminated on June 29, 2023, but Plaintiffs have failed to allege facts supporting the conclusion that Slizskaya's termination was causally connected to the meeting between Usai, Giua, and Peebles.

5

**ASSOULINE & BERLOWE, P.A.**
2385 N.W. Executive Center Drive, Suite 100, Boca Raton, FL 33431 • Telephone: 561-361-6566

1336, 1344 (11th Cir. 2022) (a management employee that, in the course of their normal job performance, disagrees with or opposes the actions of an employer does not engage in protected activity). Even if this Court finds that Usai and Giua's June 23, 2023 meeting with Peebles (Complaint at ¶95) *was* a protected activity, the Complaint nonetheless lacks facts supporting a causal connection between that meeting and their ultimate terminations on August 14, 2023 (Motion at 9-10) even if there is temporal proximity between the two events.

These same legal arguments – no protected activities or facts as to a causal connection to adverse employment actions – pertain to all of Plaintiffs' retaliation claims. *See* note 2, *supra.*

**D.  Slizskaya and Vega Have Failed To Alleged Claims For Discrimination.**

In the Complaint, Plaintiffs allege that Slizskaya and Vega were targeted because of their sex and that no similarly situated male employees endured the discriminatory conduct that they were forced to endure (Complaint at ¶¶202 & 214). Defendants sought dismissal of these claims because Slizskaya and Vega failed to demonstrate that they and their proffered comparators were "similarly situated in all material respects" (Motion at 10-11).

In the Response, Plaintiffs do not dispute their failure to identify specific comparators but claim that such failure will not support a motion to dismiss; Plaintiffs states that they "are not required, at this stage, to specify exact comparators or provide detailed evidence regarding the comparative treatment" (Response at 13). Several decisions from this Court hold to the contrary.

For instance, in *Rorie v. Sch. Bd.*, 2022 U.S. Dist. LEXIS 26010 (S.D. Fla. Feb. 10, 2022), the Court noted that, while the plaintiff alleged that defendant treated him differently than other similarly situated coworkers, the plaintiff did not allege any information whatsoever regarding the comparator's position, including his employment and disciplinary histories, his relevant conduct, or whether he worked under the same supervisors or policies, or anything as to the comparator's

6
**ASSOULINE & BERLOWE, P.A.**
2385 N.W. Executive Center Drive, Suite 100, Boca Raton, FL 33431 • Telephone: 561-361-6566

religion, disability status, or race. *Id.* at 7. Without knowing whether the comparator falls outside of the plaintiff's protected class, dismissal even at the pleading stage was proper. *Id.* at 9. *See also Hernandez v. Careersource Palm Beach Cty., Inc.*, 2023 U.S. Dist. LEXIS 105325, at *7 (S.D. Fla. June 15, 2023) (to prevail on a Title VII claim using circumstantial evidence, the plaintiff must, among other things, identify a comparator similarly situated in all relevant respects to the plaintiff and treated more favorably); *Gonzalez v. Real Hosp'y Grp., LLC*, 2022 U.S. Dist. LEXIS 41001, at *4-5 (S.D. Fla. Mar. 8, 2022) (a similarly situated comparator is one that has engaged in the same conduct as the plaintiff, is subject to the same workplace policies as the plaintiff, has the same supervisors as the plaintiff, and shares the plaintiff's employment and disciplinary history; the plaintiff's complaint is deficient in this regard because the only information he provides about his comparators is that they are female coworkers); *Colas v. Lourdes-Noreen McKeen Residence for Geriatric Care, Inc.*, 2021 U.S. Dist. LEXIS 187498, at *11-12 (S.D. Fla. Sep. 29, 2021) (the plaintiff must show that the comparator is similarly situated in terms of conduct, performance, and qualifications, and that no differentiating or mitigating circumstances distinguish their situation).

As in *Gonzalez v. Real Hosp'y Grp., LLC*, 2022 U.S. Dist. LEXIS 41001, at *4-5 (S.D. Fla. Mar. 8, 2022), Plaintiffs have failed to meaningfully respond to this argument and simply insist that the current complaint without allegations as to comparators is sufficient, which it is not.

### E.  Slizskaya and Vega Have Failed To State Claims For Sex-Based Harassment.

In the Motion, Defendants challenge the Complaint based on the fact that the harassment alleged by Slizskaya and Vega was not based on sex and was not sufficiently severe or pervasive to alter the terms and conditions of their employment (Motion at 13-15). Plaintiffs contend that the Complaint "alleges that the work environment was characterized by a continuous pattern of degrading, sexually charged conduct that not only undermined the dignity of the female employees

but also interfered with their ability to perform their jobs" and that this conduct included repeated instances where management subjected Slizskaya and Vega to vulgar sexual remarks, unwanted physical contact, and demeaning comments (Response at 13).

Recently, in *Harkins v. Hillstone Rest. Grp., Inc.*, 2025 U.S. Dist. LEXIS 28775 (S.D. Fla. Feb. 18, 2025), Judge Moreno carefully examined whether the plaintiff's complaint alleged actionable sexual harassment according to the Eleventh Circuit's standards and found that the defendant's conduct did not rise to an actionable level of severity. *Id.* at 22. In *Harkins*, the sought dismiss of plaintiff's sexual harassment claims because they lacked facts showing the alleged harassment was sufficiently severe or pervasive to alter the terms and conditions of the plaintiff's employment, which is the fourth element of the *prima facie* case. *Id.* at 16; Motion at 13. Thus, the question before Judge Moreno was whether "the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment." *Id.* at 12, citing to *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010).

"To qualify as severe or pervasive, the work environment 'must be both objectively and subjectively offensive.'" *Harkins,* 2025 U.S. Dist. LEXIS 28775 at *13. Objectively, courts should consider "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999). The Court in *Harkins* carefully analyzed each of the four factors

based on controlling precedent[5] and determined that the alleged harassment was not severe or pervasive; Judge Moreno granted defendant's motion to dismiss.

Here, Slizskaya alleged that Guerrero berated, screamed at and denigrated her and other female employees (including Vega) and called her "ass face" (Complaint at ¶¶74-75). None of these acts satisfy the frequency and severity factors under the Eleventh Circuit's standards.[6] Furthermore, Slizskaya does not claim that any of the alleged acts were physically threatening or that they interfered with her job performance.

Vega, on the other hand, alleged that Guerrero grabbed her groin, told her "you look so sexy" and "those pants look so good on you" and said he would "get excited" if she got close to him (Complaint at ¶¶70-73). Again, none of these acts satisfy the frequency and severity factors under applicable precedent[7], and interference with job performance is not claimed.[8] While the

---

[5] Slizskaya and Vega alleged that, "At all relevant times, Plaintiffs had a history of positive job performance" (Complaint at ¶34), which demonstrates that the alleged harassment did not interfere with their job performance.

[6] In *Harkins*, the Court analyzed the facts and compared them to in the following Eleventh Circuit decisions: *Allen v. Ambu-Stat, LLC*, 799 Fed.Appx. 703, 708-09 (11th Cir. 2020) (five isolated comments over a period of four months failed to meet the frequency element); *Mitchell v. Pope*, 189 F. App'x 911, 913-14 (11th Cir. 2006) (defendant telling plaintiff she could just walk into the room and he would get an erection, showing up on numerous occasions in plaintiff's driveway, rubbing up against her, etc., failed to meet the severity element); *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 579, 585-86 (11th Cir. 2000) (defendant putting his hand on plaintiff's thigh, lifting the hem of her dress, unbuckling his pants and pulling down his shirt on separate occasions was not objectively severe); *Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1238, 1252-53 (11th Cir. 1999) (defendant following plaintiff, making sniffing noises, and rubbing his right hip against hers while touching her shoulder was not objectively severe conduct); *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1366 (11th Cir. 1997) (five sexually-oriented incidents over sixteen months were sporadic and did not meet the frequency element).

[7] *See* note 6.

[8] *See* note 5 *supra*.

9

**ASSOULINE & BERLOWE, P.A.**
2385 N.W. Executive Center Drive, Suite 100, Boca Raton, FL 33431 • Telephone: 561-361-6566

"physically threatening" element is certainly alleged by Vega, this Court must look to the "totality of the circumstances" as in *Harkins*, where the Court stated:

> The Eleventh Circuit in *Johnson [v. Booker T. Washington Broadcasting Serv., Inc.*, 234 F.3d 501, 509 (11th Cir. 2000)] found a defendant's conduct to be objectively both physically threatening and humiliating when he gave the plaintiff unwanted massages, stood so close to her that his body parts touched her from behind, and pulled his pants tightly to reveal the imprint of his genitalia. 234 F.3d at 509. In *Hulsey [v. Pride Restaurants, LLC*, 367 F.3d 1238, 1248 (11th Cir. 2004)], the Eleventh Circuit found that following plaintiff into the restroom, repeatedly attempting to touch her breasts, placing his hands down her pants, and pulling off her pants was objectively humiliating and threatening. 367 F.3d at 1248. The alleged conduct in this case falls far too short in comparison to the decisions described above. 'In a sexual harassment case the totality of the circumstances must be considered, because context is important.' *Id.*

Here, when this Court looks at the totality of circumstances, despite the fact that Slizskaya and Vega may have subjectively felt harassed, the facts fail to objectively state claims for sexual harassment under controlling precedent. Accordingly, these claims should be dismissed.

II.    **CONCLUSION**

**WHEREFORE**, Defendant respectfully requests this Court to dismiss the Complaint[9] and grant such other relief as is fair just and equitable under the circumstances.

**ASSOULINE & BERLOWE, P.A.**

*/s/ Ellen M. Leibovitch*
ELLEN M. LEIBOVITCH
Florida Bar No. 656933
eml@assoulineberlowe.com
2385 N.W. Executive Center Dr., Suite 100
Boca Raton, FL 33431
Tel: (561) 361-6566

Attorneys for Defendants,
Club Management Miami II, LLC,
and R. Donahue Peebles

---

[9] Given the pending motion to compel arbitration and the reply filed simultaneously herewith [ECF 31], Defendants will not address the arbitrability of the claims of Usai and Giua in this Response.