**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:24-cv-24830-KMM

RICCARDO USAI, *et al.*,

      Plaintiffs,

v.

CLUB MANAGEMENT MIAMI II, LLC,
*et al.*,

      Defendants.

_____/

## <u>ORDER</u>

THIS CAUSE came before the Court upon Defendants Club Management Miami II, LLC ("Club Management") and R. Donahue Peebles's ("Peebles"), (collectively, the "Defendants"), Motion to Compel Arbitration of the Claims of Plaintiffs Riccardo Usai ("Usai") and Massimiliano Giua ("Giua") ("Arbitration Motion" or "Arb. Mot.") (ECF No. 13) and Defendants' Motion to Dismiss ("Motion to Dismiss" or "MTD") (ECF No. 14). Plaintiffs Usai and Giua filed an Amended Response in opposition to the Arbitration Motion ("Arb. Resp.") (ECF No. 27), and Defendants filed a Reply in support of the Arbitration Motion ("Arb. Reply") (ECF No. 31). Plaintiffs Usai, Giua, Irina Slizskaya ("Slizskaya"), and Meyvis Vega ("Vega"), (collectively, the "Plaintiffs"), also filed a Response in opposition to the Motion to Dismiss ("MTD Resp.") (ECF No. 28), and Defendants filed a Reply in support of the Motion to Dismiss ("MTD Reply") (ECF No. 30). The motions are now ripe for review.

## I.    BACKGROUND[1]

Usai, Giua, Slizskaya, and Vega were employees of Club Management, a private membership Bath Club, located at 5937 Collins Avenue, Miami Beach, Florida 33140.  Compl. ¶¶ 1, 7, 30.  Peebles is the managing member and operator of Club Management and was Plaintiffs' employer.  *Id.* ¶ 9.  Slizskaya was hired in or around January 2022 as a Server at Club Management.  *Id.* ¶ 31.  Vega was hired in or around February 2023 as a Captain at Club Management.  *Id.* ¶ 32.  Usai was hired in or around February 2023 as the Director of Operations and Wine Club of Club Management.  *Id.* ¶ 33. Giua was hired in or around February 2023 as the Restaurant & Lounge General Manager of Club Management.  *Id.* ¶ 34.  When Usai and Giua began working for Defendants, they each signed an employment contract which contained an agreement to arbitrate all disputes (the "Arbitration Agreements").  *See* (ECF No. 13-1).

The Complaint alleges that soon after Usai and Giua started their employment at Club Management, they discovered that the "work environment was rife with unlawful employment practices."  *Id.* ¶ 38.  The Complaint alleges that Defendants engaged in conduct, including, but not limited to, "unlawfully retaining and manipulating tipped wages owed to employees, egregious sexual harassment, and pervasive discriminatory conduct targeting employees on the basis of their gender."  *Id.*  Specifically, the Complaint alleges that Jean Thielen Guerrero ("Guerrero"), an individual male employed by Defendants as "Accountant/IT[,]" used his position to manipulate the distribution of tips, often withholding tips from female servers, including Slizskaya and Vega, and also used his authority to sexually harass Slizskaya and Vega.  *Id.* ¶¶ 53, 66. 38.  Additionally,

---

[1] The background facts are taken from the Complaint ("Compl.") (ECF No. 1) and are accepted as true for purposes of ruling on the Motions.  *See MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F.4th 1295, 1302 (11th Cir. 2022). They are construed in a light most favorable to Plaintiffs, the non–moving party.

the Complaint alleges that Slizskaya and Vega were forced to endure this conduct throughout their employment and that they were retaliated against for opposing Defendants' conduct and asserting their rights. *Id.* ¶¶ 39–41.  Usai and Giua allege that Defendants also "subjected them to unlawful retaliation for assisting employees like Slizskaya and Vega in asserting their rights and for opposing Defendants' unlawful employment practices." *Id.* ¶ 42.  The Complaint alleges that Slizskaya was terminated on or around June 29, 2023, Usai and Vega were terminated on or around August 14, 2023, and Vega was terminated on or around August 25, 2023. *Id.* ¶¶ 99, 103, 105–06.

On December 10, 2024, Plaintiffs filed their Complaint, asserting the following thirty claims against Defendants: (1) Fair Labor Standards Act (FLSA) Wage Theft pursuant to 29 U.S.C. § 203(m) by Slizskaya against Defendants (Count I); (2) FLSA Wage Theft pursuant to 29 U.S.C. § 203(m) by Vega against Defendants (Count II); (3) FLSA Retaliation pursuant to 29 U.S.C. § 215(a)(3) by Slizskaya against Defendants (Count III); (4) FLSA Retaliation pursuant to 29 U.S.C. § 215(a)(3) by Vega against Defendants (Count IV); (5) FLSA Retaliation pursuant to 29 U.S.C. § 215(a)(3) by Usai against Defendants (Count V) [2]; (6) FLSA Retaliation pursuant to 29 U.S.C. § 215(a)(3) by Giua against Defendants (Count VI) [3]; (7) Title VII discrimination pursuant to 42 U.S.C. § 2000e-2 by Slizskaya against Club Management (Count VII); (8) Title VII discrimination pursuant to 42 U.S.C. § 2000e-2 by Vega against Club Management (Count VIII); (9) Title VII Hostile Work Environment pursuant to 42 U.S.C. § 2000e-2 by Slizskaya against Club

---

[2] In the Complaint, Count V is incorrectly titled "FLSA Retaliation pursuant to 29 U.S.C. § 203(m)" instead of pursuant to "29 U.S.C. § 215(a)(3)."  For purposes of clarity, the Court corrects it here.

[3] In the Complaint, Count VI is incorrectly titled "FLSA Retaliation pursuant to 29 U.S.C. § 203(m)" instead of pursuant to "29 U.S.C. § 215(a)(3)."  For purposes of clarity, the Court corrects it here.

Management (Count IX); (10) Title VII Hostile Work Environment pursuant to 42 U.S.C. § 2000e-2 by Vega against Club Management (Count X); (11) Title VII Retaliation pursuant to 42 U.S.C. § 2000e-3 by Slizskaya against Club Management (Count XI); (12) Title VII Retaliation pursuant to 42 U.S.C. § 2000e-3 by Vega against Club Management (Count XII); (13) Title VII Retaliation pursuant to 42 U.S.C. § 2000e-3 by Usai against Club Management (Count XIII); (14) Title VII Retaliation pursuant to 42 U.S.C. § 2000e-3 by Giua against Club Management (Count XIV); (15) Florida Civil Rights Act ("FCRA") Discrimination pursuant to § 760.10(1), Fla. Stat. by Slizskaya against Club Management (Count XV); (16) FCRA Discrimination pursuant to § 760.10(1), Fla. Stat. by Vega against Club Management (Count XVI); (17) FCRA Hostile Work Environment pursuant to § 760.10(1), Fla. Stat. by Slizskaya against Club Management (Count XVII); (18) FCRA Hostile Work Environment pursuant to § 760.10(1), Fla. Stat. by Vega against Club Management (Count XVIII); (19) FCRA Retaliation pursuant to § 760.10(7), Fla. Stat. by Slizskaya against Club Management (Count XIX); (20) FCRA Retaliation pursuant to § 760.10(7), Fla. Stat. by Vega against Club Management (Count XX); (21) FCRA Retaliation pursuant to § 760.10(7), Fla. Stat. by Usai against Club Management (Count XXI); (22) FCRA Retaliation pursuant to § 760.10(7), Fla. Stat. by Giua against Club Management (Count XXII); (23) Miami-Dade County Human Rights Ordinance ("MDHRO") Discrimination pursuant to § 11A-26(1) by Slizskaya against Club Management (Count XXIII); (24) MDHRO Discrimination pursuant to § 11A-26(1) by Vega against Club Management (Count XXIV); (25) MDHRO Hostile Work Environment pursuant to § 11A-26(4) by Slizskaya against Club Management (Count XXV); (26) MDHRO Hostile Work Environment pursuant to § 11A-26(4) by Vega against Club Management (Count XXVI); (27) MDHRO Retaliation pursuant to § 11A-26(4) by Slizskaya against Club Management (Count XXVII);  (28) MDHRO Retaliation pursuant to § 11A-26(4) by Vega against

Club Management (Count XXVIII); (29) MDHRO Retaliation pursuant to § 11A-26(4) by Usai against Club Management (Count XXIX); and (30) MDHRO Retaliation pursuant to § 11A-26(4) by Giua against Club Management (Count XXX).  *See generally* Compl.

In response, Defendants filed the Arbitration Motion, moving to compel arbitration of all of Usai and Giua's claims based on the Arbitration Agreements.  *See generally* Arb. Mot. Defendants also filed the Motion to Dismiss, moving to dismiss the Complaint both as a shotgun pleading and for failure to state a claim upon which relief can be granted.  *See generally* MTD.

## II.     LEGAL STANDARD

### A.     Arbitration

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*, provides a federal "policy favoring arbitration."  *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022).  But "[t]he federal policy is about treating arbitration contracts like all others, not about fostering arbitration."  *Id.* (citation omitted).  Under both federal and Florida law, a party has a right to arbitrate where: (1) a valid, written agreement exists between the parties containing an arbitration clause; (2) an arbitrable issue exists; and (3) the right to arbitration has not been waived.  *Sims v. Clarendon Nat. Ins. Co.*, 336 F. Supp. 2d 1311, 1326 (S.D. Fla. 2004); *see also Marine Envtl. Partners, Inc. v. Johnson*, 863 So. 2d 423, 426 (Fla. 4th DCA 2003); *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999).

The FAA provides that pre-dispute agreements to arbitrate "evidencing a transaction involving commerce" are "valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA further states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall

on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

Confronted with a facially valid arbitration agreement, "district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985). Thus, if the aforementioned criteria are met, the Court is required to issue an order compelling arbitration. *See John B. Goodman Ltd. P'ship v. THF Const., Inc.*, 321 F.3d 1094, 1095 (11th Cir. 2003) ("Under the FAA, 9 U.S.C. § 1 et seq., a district court must grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute."); *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1366 (11th Cir. 2008) ("The role of the courts is to rigorously enforce agreements to arbitrate.").

A motion to compel arbitration is treated generally as a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *See, e.g.*, *Shea v. BBVA Compass Bancshares, Inc.*, 2013 WL 869526 at *2 n.3 (S.D. Fla. Mar. 7, 2013). Accordingly, the Court may consider matters outside the four corners of the complaint. *Mamani v. Sanchez Berzain*, 636 F. Supp. 2d 1326, 1329 (S.D. Fla. 2009).

### B.    Shotgun Pleadings

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8(a)(2) "is to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (internal citation and quotation marks omitted).

6

### C.      Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).  This requirement "give[s] the defendant fair notice of what the claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and alterations omitted).  The court takes the plaintiff's factual allegations as true and construes them in the light most favorable to the plaintiff.  *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

A complaint must contain enough facts to plausibly allege the required elements.  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295–96 (11th Cir. 2007).  A pleading that offers "a formulaic recitation of the elements of a cause of action will not do."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

## III.    DISCUSSION

In the Arbitration Motion, Defendants move the Court for an order directing Usai and Giua to arbitrate their claims and staying the Action as to Usai and Giua pending the completion of arbitration.  *See generally* Arb. Mot.  In the Motion to Dismiss, Defendants request the Court dismiss the Complaint as a shotgun pleading or for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  *See generally* MTD.  The Court first addresses the Arbitration Motion and next addresses the Motion to Dismiss.

### A.       Arbitration Motion

Defendants seek to compel arbitration of Usai and Giua's claims based on the Arbitration Agreements they signed.  *See generally* Arb. Mot.  Defendants argue that valid Arbitration Agreements exist that: (1) cover both Club Management and Peebles; (2) are valid under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (the "EFAA"); and (3) cover the claims alleged by Usai and Giua.  *Id.* at 5–12.  Further, Defendants argue that they have not waived their right to arbitrate and that this action should be stayed pending arbitration.  *Id.* at 12–13.  In response, Usai and Giua do not dispute that the Arbitration Agreements themselves are valid, that they cover both Club Management and Peebles, or that their claims do not fall within the scope of the Arbitration Agreements.  *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("'When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned.'" (quoting *Hudson v. Norfolk S. Ry. Co.,* 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001))).  Instead, Usai and Giua argue that the Arbitration Agreements are unenforceable under the EFAA and that Defendants' "procedural gamesmanship reveals a strategic effort to undermine the Court's authority and retaliate against the Plaintiffs."  Arb. Resp. at 2–7.  As such, the Court focuses its analysis on whether Usai and Giua's claims fall under the purview of the EFAA as to invalidate their Arbitration Agreements.  The Court finds that they do.

### i.       *The EFAA Precludes Arbitration of Usai and Giua's Claims*

Usai and Giua bring claims for retaliation pursuant to the FLSA, Title VII, the FCRA, and the MDHRO.  *See generally* Compl.  Defendants argue that the EFAA does not apply to Usai and Giua's claims because they "have not asserted that they were subject to sexual harassment or otherwise asserted [] plausible sexual harassment claims."  Arb. Mot. at 7–10.  Specifically,

Defendants argue that Usai and Giua do not allege that "they were the subject of retaliation for any alleged incidents of rebuffing sexual advances, objecting to sexual touching or crude comments, or complaining to Defendants about anything that could give rise to a sexual harassment claim." *Id.*  In response, Usai and Giua argue that: (1) the EFAA applies to all claims within a case; and (2) they have alleged a plausible sexual harassment dispute, and their claims are related to the sexual harassment dispute.  Arb. Resp. at 2–5.

The EFAA was signed into law on March 3, 2022, and invalidates pre-dispute mandatory arbitration clauses of disputes related to sexual assault or sexual harassment.  9 U.S.C. § 402; *see Mitchell v. Raymond James & Assocs., Inc.*, No. 8:23-CV-2341-VMC-TGW, 2024 WL 4486565, at *1 (M.D. Fla. Aug. 23, 2024), *report and recommendation adopted*, No. 8:23-CV-2341-VMC-TGW, 2024 WL 4263151 (M.D. Fla. Sept. 23, 2024).  Specifically, the EFAA provides:

> [A]t the election of [a] person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a).  The EFAA defines a "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law."  *Id.* § 401(4).  The EFAA further provides that "whether this chapter applies with respect to a dispute shall be determined under Federal law."  *Id.* § 402(b).

Here, the first question is whether Usai and Giua's Title VII, FCRA, and MDHRO retaliation claims "relate[] to conduct that is alleged to constitute sexual harassment[,]" where Usai and Giua have not asserted their own sexual harassment claims or alleged that they were victims of sexual harassment, but instead, have alleged that they were retaliated against for opposing Club

Management's "sexual harassment and gender discrimination of female employees[,]" including their co-Plaintiffs, Slizskaya and Vega.  Compl. ¶¶ 278, 291.

Given the relative recency of the EFAA, few federal courts have considered the issue presented.  *See Williams v. Mastronardi Produce, Ltd.*, No. 23-13302-Civ, 2024 WL 3908718, at *6 (E.D. Mich. Aug. 22, 2024) ("Because the EFAA is so new, there are few decisions interpreting it." (citation omitted)).  Usai and Giua argue that the "EFAA's protections do not require that the plaintiff personally allege sexual harassment[,]" but they provide no case law that directly supports this contention.  Arb. Resp. at 5.  Nor do Defendants cite to any case law that directly refutes Usai and Giua's argument.  *See generally* Arb. Mot.; Arb. Reply.

A review of the caselaw shows that a few other district courts have grappled with a similar question and have reached varying conclusions.  *See Raupp v. Compass Grp. USA, Inc.*, No. 24-10565, 2024 WL 4948838, at *2 (E.D. Mich. Dec. 3, 2024) (holding that plaintiff's retaliation claims did not fall under the EFAA where he did not allege that he was sexually harassed but the sexual harassment accusations were against him); *Ramirez v. Domino's Pizza Supply Chain*, No. 24-CV-01731-SKC-STV, 2024 WL 5452684, at *4 (D. Colo. Nov. 8, 2024), *report and recommendation adopted*, No. 24-CV-01731-SKC-STV, 2025 WL 414381 (D. Colo. Feb. 6, 2025) (finding the plaintiff's Title VII retaliation claim was related to sexual harassment and fell within the EFAA where the plaintiff alleged that the defendants retaliated against him because he reported to them the sexual harassment of his colleagues)[4]; *Newman v. Ambry Genetics Corp.*, No. 2:24-CV-00887-BHH-MGB, 2024 WL 4164738, at *5–6 (D.S.C. Apr. 26, 2024), *report and recommendation adopted in part, rejected in part sub nom. Newman v. Ambry Genetics Corp.*, No.

---

[4] However, the court ultimately found that the plaintiff was compelled to arbitrate the claim because the "[p]laintiff initially pursued his claims in arbitration," and he could not go back and change course.  *Id.* at *6.

2:24-CV-00887-BHH-MGB, 2024 WL 3811606 (D.S.C. Aug. 14, 2024), *reconsideration denied*, No. 2:24-CV-00887-BHH, 2024 WL 4553224 (D.S.C. Oct. 23, 2024) ("Plaintiff has pointed the Court to no authority holding that a retaliation claim falls within the purview of the EFAA where the relation claim related to the sexual harassment of *someone else*. . . . The undersigned's independent review of case law in this area has similarly uncovered no support for Plaintiff's assertion that his claims are sufficiently related to a sexual harassment dispute such that he should be excused from arbitration pursuant to the EFAA." (emphasis in original)).

The Court notes that the facts in all of these cases differ, and the holdings in these cases are not binding on this Court. *See Georgia v. President of the United States*, 46 F.4th 1283, 1304 (11th Cir. 2022) ("[A] district court's decisions do not bind other district courts, other judges on the same court, or even the same judge in another case." (citations omitted)). For example, in *Newman*, unlike here, the plaintiff did not personally report the sexual harassment, nor did the alleged victim assert or allege a sexual harassment claim. 2024 WL 4164738, at *5. However, the Court finds for the reasons discussed above in *Ramirez*, that "[t]he plain language of the EFAA renders it applicable" to a plaintiff's Title VII retaliation claim where the plaintiff alleges he was retaliated against for reporting the sexual harassment of his colleagues to his employer. 2024 WL 5452684, at *4.

Further, the finding that Usai and Giua's Title VII, FCRA, and MDHRO retaliation claims fall under the purview of the EFAA is also consistent with other courts' holdings that the EFAA generally applies to retaliation claims based on reporting sexual harassment. *See  Olivieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 92 (2d Cir. 2024) (finding that retaliation claims under Title VII and the NYSHRL based on sexual harassment fell within the definition of a "sexual harassment dispute" under the EFAA because the retaliation was based on the conduct that is alleged to

constitute sexual harassment); *Molchanoff v. SOLV Energy, LLC*, No. 23CV653-LL-DEB, 2024 WL 899384, at *3 (S.D. Cal. Mar. 1, 2024) (finding that the plaintiff's Title VII retaliation claim was "plainly encompassed by the EFAA's definition of a sexual harassment dispute"); *Hix v. Dave & Buster's Mgmt. Corp., Inc.*, No. 3:23-CV-623-AR, 2023 WL 9425283, at *9 (D. Or. Nov. 14, 2023) *report and recommendation adopted*, 2024 WL 326592 (D. Or. Jan. 29, 2024) ("A retaliation claim is connected to conduct that is alleged to constitute sexual harassment when reporting that conduct is the alleged cause of the retaliation. Because the retaliation dispute is related to the conduct constituting sexual harassment, it is a sexual harassment dispute to which the EFAA applies." (internal quotation marks and citation omitted)). While in these cases the victim of the retaliation was also the victim of the alleged sexual harassment, the Court does not find that this distinction precludes the EFAA's application here. As in these cases, Usai and Giua's retaliation claims are based on reporting the conduct that is alleged to constitute sexual harassment.

Further, the finding that the EFAA applies to Usai and Giua's Title VII, FCRA, and MDHRO retaliation claims is consistent with the broadly stated purpose of the EFAA. As identified by the House Judiciary Committee, the EFAA's purpose is "to prohibit 'forced arbitration' in 'cases involving sexual assault or harassment' because 'the arbitration system lacks transparency and precedential guidance of the justice system' and is 'shielded from public scrutiny,' and 'there is no guarantee that the relevant law will be applied to these disputes or that fundamental notions of fairness and equity will be upheld in the process.'" *Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 561 (S.D.N.Y. 2023) (quoting H.R. Rep. No. 117-234, at 3 (2022))).

However, the Court's analysis does not end here. As Defendants note in their Reply, multiple courts have held that the EFAA imposes a plausibility requirement. Arb. Reply at 4–5. As such, Defendants argue that "[e]ven accepting that Usai and Giua could impute Slizskaya's and

Vega's claims for sex-based harassment into their claims, Usai and Giua would still need to demonstrate that they have pled a facially plausible sexual harassment claim." *Id.*

Courts in this district and others have held that the EFAA imposes a plausibility requirement such that to qualify as a "sexual harassment dispute," the sexual harassment claim must be sufficiently pleaded to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Smith v. Boehringer Ingelheim Pharms., LLC*, No. 3:24-CV-01266 (KAD), 2025 WL 2403042, at *6 (D. Conn. Aug. 19, 2025) (holding that a plaintiff must allege facts sufficient to plausibly allege conduct related to a sexual harassment dispute "in order to invoke the EFAA and defeat a motion to compel an otherwise valid arbitration agreement"); *Harkins v. Hillstone Rest. Grp., Inc.*, No. 24-23800-CIV, 2025 WL 522674, at *4 (S.D. Fla. Feb. 18, 2025) (finding that a plausibility requirement is implicit in the EFAA); *Mitchell*, 2024 WL 4486565, at *7 (finding that the EFAA requires the plaintiff to state a plausible claim of sexual harassment, *i.e.*, one that contains "enough facts to state a claim to relief that is plausible on its face"); *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 583 (S.D.N.Y. 2023) ("[T]he EFAA is triggered by a complaint that plausibly pleads a claim of sexual harassment.").

Here, as discussed in greater detail below, *see infra* III.B., the Court finds that Usai and Giua plausibly allege conduct constituting a sexual harassment dispute, as defined as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law[,]" 9 U.S.C. § 401(4), where Slizskaya and Vega's Title VII, FCRA, and MDHRO discrimination claims and Vega's Title VII, FCRA, and MDHRO hostile work environment claims survive the Motion to Dismiss, as do Usai and Giua's Title VII, FCRA, and MDHRO retaliation claims which are premised on reporting the alleged conduct constituting sexual harassment. *See Mitchell*, 2024 WL 4486565, at *7 ("Although Title VII does not mention sexual harassment, the

Supreme Court held that harassment based on gender which changes the terms or conditions of employment constitutes a violation of the Act" (citing *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244–45 (11th Cir. 1999))).  Accordingly, the EFAA is applicable to Usai and Giua's Title VII, FCRA, and MDHRO retaliation claims.

Lastly, because "the text of § 402(a) makes clear that its invalidation of an arbitration agreement extends to the entirety of the case relating to the sexual harassment dispute," the EFAA also invalidates the Arbitration Agreements as to Usai and Giua's FLSA retaliation claims.  *See Johnson*, 657 F. Supp. 3d at 559 ("[T]he text of § 402(a) makes clear that its invalidation of an arbitration agreement extends to the entirety of the case relating to the sexual harassment dispute, not merely the discrete claims in that case that themselves either allege such harassment or relate to a sexual harassment dispute (for example, a claim of unlawful retaliation for a report of sexual harassment)."); *see also Turner v. Tesla, Inc.*, 686 F. Supp. 3d 917, 925 (N.D. Cal. 2023) (finding the EFAA rendered an arbitration agreement unenforceable with respect to the plaintiff's entire case which included labor claims).

Accordingly, Defendants' Arbitration Motion is denied without prejudice, and Plaintiffs' entire Complaint shall proceed in this Court.  However, Defendants may renew the issue of arbitrability of Usai and Giua's claims at summary judgment.  If the evidence ultimately does not support Plaintiffs' claims relating to sexual harassment, and Usai and Giua's only remaining claims are their FLSA claims, then the plain language of the EFAA no longer renders it applicable to Usai and Giua's case.  *See* 9 U.S.C. §§ 401(4), 402(a) ("[N]o predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to . . . the sexual harassment dispute.).  Further, applying the EFAA to invalidate the Arbitration Agreements as to Usai and Giua's FLSA claims would no longer be consistent with

14

the purpose of the EFAA, as discussed above, because Usai and Giua's case would no longer relate to a surviving sexual harassment dispute. *See id.*; *Johnson*, 657 F. Supp. at 561 (quoting H.R. Rep. No. 117-234, at 3 (2022))).

The Court now addresses Defendants' Motion to Dismiss as it relates to all of Plaintiffs' claims.[5]

**B.      Motion to Dismiss**

In the Motion to Dismiss, Defendants argue that: (1) the Complaint should be dismissed as a whole as a shotgun pleading; (2) Plaintiffs' FLSA claims should be dismissed for failure to state a claim; (3) Plaintiffs' Title VII, FCRA & MDHRO claims should be dismissed for failure to state a claim; and (4) Plaintiffs' MDHRO claims should also be dismissed for failure to exhaust administrative remedies.[6]  MTD at 4–18.  In response, Plaintiffs argue that: (1) their Complaint is not an impermissible shotgun pleading and provides Defendants with sufficient notice under Rule 8; (2) all of Plaintiffs' claims are adequately pleaded under Rule 12(b)(6); and (3) Plaintiffs have established the elements of their Title VII, FCRA, and MDHRO claims.  MTD Resp. at 3–17.  The Court addresses each argument in turn.

*i.      The Complaint Is Not a Shotgun Pleading*

Defendants first argue that the Complaint is a shotgun pleading.  *See* MTD at 4–5. Complaints that violate Rule 8(a)(2) or Rule 10(b) of the Federal Rules of Civil Procedure are often and widely referred to as shotgun pleadings. *See Weiland v. Palm Beach Cty. Sheriff's Office*,

---

[5]  The Court declines to address Usai and Giua's gamesmanship arguments as they do not impact the aforementioned findings.  *See* Arb. Resp. at 5–7.

[6]  In the Reply, Defendants voluntarily withdraw their last argument that "Plaintiffs failed to exhaust their administrative remedies as to their claims arising under the MDHRO . . . because Defendants now see Plaintiffs filed claims with this local agency and received right to sue notices, neither of which were ever previously served on Defendants or the undersigned."  MTD Reply at 2 n.1 (citing MTD at 16–18).  As such, the Court does not address this argument in the Order.

792 F.3d 1313, 1320 (11th Cir. 2015); *Lampkin-Asam v. Volusia Cty. Sch. Bd.*, 261 Fed. Appx. 274, 277 (11th Cir. 2008); *Weinstein v. City of N. Bay Vill.*, 977 F. Supp. 2d 1271, 1285 (S.D. Fla. 2013). Courts in this Circuit have consistently found the use of such pleadings an impediment to the efficient administration of the judicial system. *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1125–28 (11th Cir. 2014) (discussing "the persistence of the shotgun pleading problem"); *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) ("Such pleadings divert already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently.").

In *Weiland*, the Eleventh Circuit sought to provide clarity and consistency to the issue of shotgun pleadings by outlining the four categories these pleadings often fall within:

> Though the groupings cannot be too finely drawn, we have identified four rough types or categories of shotgun pleadings. The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

792 F.3d at 1321–23. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

Defendants argue that the Complaint is the first type of shotgun pleading because "in each of the 30 counts, the named plaintiff 'reincorporates the factual allegations in Paragraphs 30

16

through 117.'"  MTD at 4 (quoting Compl. ¶¶ 118, 131, 144, 157, 170, 183, 196, 209, 222, 235, 248, 262, 276, 289, 302, 314, 326, 338, 350, 364, 378, 391, 404, 416, 428, 440, 452, 466, and 480). However, the Court is not convinced.

The Complaint does not roll the allegations of each count into every successive count down the line.  *See Weiland*, 792 F.3d at 1324.  While each count incorporates by reference the factual allegations in Paragraphs 30 through 117, the factual allegations section is divided into five labeled subsections, simplifying Defendants' task of figuring out which paragraphs are relevant to each claim.  *See generally* Compl.  The Court is not concerned that Defendants are unable to ascertain "the grounds upon which each claim rests[,]" and as such, declines to dismiss the Complaint based on the grounds that it is a shotgun pleading.  *See Weiland,* 792 F.3d at 1323; *see also Hernandez v. CareerSource Palm Beach Cnty., Inc.*, No. 23-12285, 2025 WL 1541367, at *3–4 (11th Cir. May 30, 2025) ("This is not the case of 'a rambling, dizzying array of nearly incomprehensible pleading which still fail[ed] to provide a short and plain statement justifying relief.'" (quoting *Barmapov v. Amuial*, 986 F.3d 1321, 1326 (11th Cir. 2021) (emphasis removed))).

Nevertheless, Defendants are correct that the Complaint, by reincorporating Paragraphs 30 through 117 in each count, refers to factual allegations in each count that have little to do with that specific count.  *See* MTD at 5 ("Consequently, facts as to wage theft and FLSA retaliation are incorporated into discrimination and sexual harassment claims[.]").  Since the Court finds below that dismissal of certain counts is required based on failure to state a claim, if Plaintiffs decide to amend their Complaint, they should rectify this issue on repleading.

Next, the Court addresses Defendants' second argument that Plaintiffs' FLSA claims should be dismissed for failure to state a claim.

ii.    *Plaintiffs' FLSA Claims*

Defendants argue that Plaintiffs' FLSA wage theft and retaliation claims, Counts I-VI, should be dismissed.  MTD at 5–10.  First, Defendants argue that the claims against Peebles should be dismissed because Plaintiffs have not sufficiently alleged that Peebles was Plaintiffs' employer under the FLSA.  *Id.* at 6–7.  Second, Defendants argue that Slizskaya and Vega's FLSA wage theft claims should be dismissed because they fail to allege how much they are allegedly owed, how such amounts were calculated, or the period during which the alleged violations occurred.  *Id.* at 8–9.  Third, Defendants argue that Plaintiffs' FLSA retaliation claims should be dismissed because Plaintiffs fail to allege all three elements of a FLSA retaliation claim.  *Id.* at 9–10.  In response, Plaintiffs argue that: (1) their claims establish Peebles' individual liability; (2) their wage theft allegations provide fair notice of Defendants' FLSA violations; and (3) they have established the elements of their FLSA retaliation claims.  MTD Resp. at 6–11.

### a.  *Claims for Individual Liability against Peebles*

Plaintiffs assert their FLSA claims against Peebles and Club Management.  *See* Compl. at 17–26.  Under the FLSA, an employer includes "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  "[A] corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable . . . for unpaid wages."  *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986).  To establish a claim for individual liability, a plaintiff must show that the individual defendant is "involved in the day-to-day operation or ha[s] some direct responsibility for the supervision of the employee."  *Id.*

Plaintiffs allege that Peebles was "the managing member and operator of Defendant [Club Management][,]" "was vested with operational control over Defendant [Club Management], including the authority to hire, fire, and discipline employees of Defendant [Club Management],

including Plaintiffs[,]" and that Peebles "exercised day-to-day control over the operations of Defendant [Club Management], including determining and maintaining company payroll practices, the payment of wages to Plaintiffs and other similarly situated employees, and employees' working conditions, thereby directly affecting Plaintiffs' employment." Compl. ¶¶ 8–10. Plaintiffs further allege that "Peebles' involvement in the employment practices for Defendant [Club Management]'s employees was not merely passive or titular, as he actively directed and managed the business affairs of Defendant [Club Management], including decisions that led to the FLSA violations, and was responsible for Defendant [Club Management's] non-compliance with the FLSA." *Id.* ¶ 11.

Plaintiffs' allegations are insufficient to support their FLSA claims against Peebles. A mere "formulaic recitation of elements of a cause of action," as Plaintiffs have provided here, is insufficient to prevent dismissal. *See Iqbal*, 129 S. Ct. at 1949 (citation omitted). In *Chavez v. Am. Coach Lines of Miami, Inc.*, this Court dismissed the plaintiffs' FLSA claim for individual liability against their employer where their only allegations as to the employer were that he was "a corporate officer(s) or owner(s) or manager(s) of the Defendant Corporation who r[a]n the day to-day operations of the Corporate Defendant(s) for the relevant time period and was/were responsible for paying Plaintiffs' wages for the relevant time period.'" No. 10-21687-CIV, 2010 WL 11596739, at *2 (S.D. Fla. Aug. 19, 2010) (finding that the plaintiffs otherwise "fail[ed] to allege any supporting facts describing the nature of [the employer's] position or the manner in which he exerted control over the day-to-day operations"). Similarly, here, Plaintiffs fail to allege any supporting or specific facts describing the nature of Peebles' position, the manner in which he exerted control over the day-to-day-operations of Club Management, or the manner in which he exerted control over the payroll practices and payment of wages. *See id.*; *see generally* Compl.

Accordingly, Plaintiffs' FLSA claims against Peebles are dismissed without prejudice.

### b. *Slizskaya and Vega's Wage Theft Claims*

In Counts I and II, Slizskaya and Vega assert claims against Defendants for FLSA wage theft pursuant to 29 U.S.C. § 203(m).[7]  Compl. ¶¶ 118–43.  Defendants argue, based on a court in this district's holding in *Earle v. Miami Dade Cnty.*, No. 24-20270-CIV, 2024 WL 5058210 (S.D. Fla. May 21, 2024), that Slizskaya and Vega fail to state their wage theft claims because they "fail to allege how much they claim to be owed, how such amounts were calculated, or the period during which the alleged violations occurred."  MTD at 8–9.  In response, Plaintiffs first argue that "in the FLSA context, it is well recognized that Plaintiffs are often without the necessary information to specifically indentfy [sic] financial and time-keeping records because they are in the possession of the Defendants."  MTD Resp. at 9 (citing *Pestana v. Porto Alegre Brazilian Grill & Bar*, 2024 U.S. Dist. LEXIS 172448, at *6 (S.D. Fla. September 12, 2024)).  Second, Plaintiffs argue that their factual allegations are sufficient to meet the standard in *Earle*.  *Id.* at 9–10.

In *Earle*, the court held that a plaintiff in a FLSA case must satisfy the heightened pleading standards established by the Supreme Court in *Iqbal* and *Twombly*, and as such, a complaint filed under the FLSA must include, at a minimum, a statement setting forth the following with respect to the plaintiff: "a. an initial estimate of the total amount of alleged unpaid wages; b. a preliminary calculation of such wages; c. the approximate period during which the alleged violations occurred; and d. the nature of the wages (e.g. overtime or straight time)."  2024 WL 5058210, at *3.

Here, the Complaint alleges that: "Defendants' management did not distribute the additional gratuities paid by patrons and instead, unlawfully retained the tips owed to the

---

[7] Since the Court has dismissed Slizskaya and Vega's FLSA claims as to Peebles, the Court only addresses their FLSA claims as to Club Management.

servers[]"; "During most shifts, Defendants paid the servers, including Plaintiff Slizskaya and Plaintiff Vega, a flat amount of $240.00, even when the employees had received tips well in excess of that amount[]"; Guerrero "used his position to manipulate the distribution of tips, often withholding tips from female servers, including Plaintiff Slizskaya and Plaintiff Vega[]"; "As a result of the tip theft, Plaintiff Slizskaya and Plaintiff Vega were deprived of a significant amount of tipped wages[]"; and "At all times material, Defendants allowed Guerrero and traditionally non-tipped employees to improperly participate in the tip pool and/or keep a portion of the tips earned by servers, including Plaintiff Slizskaya and Plaintiff Vega, in violation of the FLSA."  Compl. ¶¶ 52–53, 57, 62.

Based on these allegations, the Court agrees with Defendants that Slizskaya and Vega fail to state a claim for FLSA wage theft.  The Complaint does not include an estimate of the total amount of unpaid wages or a preliminary calculation of such wages.  *See Earle*, 2024 WL 5058210, at *3 (S.D. Fla. May 21, 2024); *see also Sanchez v. Piripi VMP, LLC*, No. 15-24166-CIV, 2016 WL 950954, at *2 (S.D. Fla. Mar. 7, 2016) ("This Court agrees with the Defendants that this complaint merely contains a formulaic recitation of the elements of a FLSA cause of action. Unlike in *Baide*, where the plaintiffs provided dates and the amount of hours worked for which they were not paid, this Plaintiff merely states that she worked overtime and was not paid."); *Cf. Baide v. Sunsof, Inc.*, No. 14-22255-C1V, 2014 WL 5055124, at *2 (S.D. Fla. Oct. 8, 2014) (finding the plaintiffs' allegations regarding overtime satisfied the requirements of FLSA and *Twombly* where the plaintiffs provided dates and the amount of hours worked for which they were not paid).

Further, the cases Plaintiffs point to in support of their argument that "in the FLSA context, it is well recognized that Plaintiffs are often without the necessary information to specifically indentfy [sic] financial and time-keeping records because they are in the possession of the

Defendants[,]" largely focus on whether plaintiffs have sufficiently alleged that the defendants were an enterprise that grossed over $500,000 annually, as required by the FLSA, which is not at issue here.  *See Pestana v. Porto Alegre Brazilian Grill & Bar, Corp.*, No. 22-22405-CIV, 2024 WL 4314770, at *2 (S.D. Fla. Sept. 23, 2024), *report and recommendation adopted*, No. 22-22405-CIV, 2024 WL 4333726 (S.D. Fla. Sept. 27, 2024)[8]; *Gaviria v. Maldonado Bros.*, No. 13-60321-CIV, 2013 WL 3336653, at *3 (S.D. Fla. July 2, 2013).  Defendants do not dispute whether Plaintiffs have sufficiently alleged that Club Management was an enterprise within the meaning of the FLSA.  *See* MTD at 8–9.  As such, Plaintiffs' reliance on these cases for support is misplaced and unavailing.  Consequently, the Court finds that Slizskaya and Vega's wage theft claims fail and dismisses Counts I-II without prejudice.

### c.  *Plaintiffs' FLSA Retaliation Claims*

Plaintiffs also bring FLSA retaliation claims, Counts III-VI, against Defendants. Defendants argue that Plaintiffs have failed to state a *prima facie* case for retaliation under the FLSA because "none of the Plaintiffs have alleged when or how they opposed or complained or to whom such opposition or complaints were made[,]" and that Plaintiffs assert in a conclusory fashion that a causal connection existed between their protected activities and the adverse actions. MTD at 9–10.  In response, Plaintiffs first argue that Slizskaya and Vega allege that they complained to Guerrero and a third-party human resources vendor, HR Management Compliance Solutions ("HRMCS"), which constitutes protected activity under the FLSA, and that Usai and Giua complained to Peebles.  MTD Resp. at 10–11.  Second, Plaintiffs argue that they have

---

[8] The Court notes that Plaintiffs cite to "*Pestana v. Porto Alegre Brazilian Grill & Bar*, 2024 U.S. Dist. LEXIS 172448, at *6 (S.D. Fla. September 12, 2024)[,]" MTD Resp. at 9, but the Court does not see a decision in this case from that date.

"established sufficient evidence of causation, both due to temporal proximity and the pattern of retaliatory motive alleged by Plaintiffs." *Id.*

The FLSA makes it "unlawful for any person . . . to discharge . . . [an] employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3). "To prove retaliation under the FLSA, a plaintiff must show that: (1) she engaged in activity protected under the act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's protected activity and the adverse employment action." *Freeman v. Key Largo Volunteer Fire & Rescue Dep't, Inc.*, 841 F. Supp. 2d 1274, 1279 (S.D. Fla. 2012) (citing *Wolf v. Coca–Cola Co.,* 200 F.3d 1337, 1342–43 (11th Cir. 2000)).

As to the first element, Slizskaya and Vega allege that they complained about, opposed, and participated in an investigation into Defendants' unlawful wage theft, and Usai and Giua allege that they "opposed Defendants' unlawful pay practices and assisted employees in exercising their protected rights under the FLSA." Compl.  ¶¶ 147, 160, 173, 186.  Specifically, Slizskaya and Vega point to their complaints on or around May 27, 2023, to HRMCS, and their participation in the subsequent investigation by HRMCS, which included giving "interviews reporting the discriminatory conduct that they and numerous other female employees had endured."[9] *Id.* ¶¶ 81, 84, 88.  Usai and Giua allege that on or around June 23, 2023, they had a meeting with Peebles where they "reiterated their concerns regarding Guerrero and the unlawful tip retention[,]" and that "[i]n response, Peebles blamed Plaintiff Giua and Plaintiff Usai for the complaints against

---

[9] The Court notes that ¶ 77 of the Complaint cuts off in the middle of the sentence.  It alleges that: "When female employees, such as Plaintiff Vega and Plaintiff Slizskaya, opposed Guerrero's discriminatory conduct and unlawful tip theft, he would . . . ."  Without more, the Court cannot discern when, if ever, Vega and Slizskaya complained to Guerrero.

Guerrero and insinuated that they orchestrated the complaints." *Id.* ¶¶ 95–96. Based on these allegations, the Court finds that Plaintiffs have sufficiently pleaded the first element of their FLSA retaliation claims, engaging in a protected activity under the act. *See Earle*, 2024 WL 5058210, at *3 ("'An oral complaint is protected conduct under the FLSA's anti-retaliation provision.'" (quoting *Bryant v. Johnny Kynard Logging, Inc.*, 930 F. Supp. 2d 1272, 1291 (N.D. Ala. 2013))); *see also E.E.O.C. v. White & Son Enterprises*, 881 F.2d 1006, 1011 (11th Cir. 1989) (concluding that unofficial complaints expressed by women to their employer about unequal pay constituted an assertion of rights protected under the FLSA); *Davidson v. Patel*, No. 1:22-CV-3934-SEG, 2023 WL 10406725, at *5 (N.D. Ga. Sept. 30, 2023) ("Informal, oral complaints about compensation constitute protected activity under the FLSA.").

As to the second element, suffering subsequent adverse actions by the employer, Defendants do not argue that Plaintiffs failed to allege that they suffered adverse actions, nor could they successfully. Slizskaya alleges that Defendants cut her scheduled work hours which negatively impacted her pay before they unlawfully terminated her, and Vega, Usai, and Giua also allege that they were unlawfully terminated, Compl. ¶¶ 90, 99, 103, 105–06. *See Davis v. Legal Servs. Alabama, Inc.*, 19 F.4th 1261, 1266 (11th Cir. 2021) (holding that "adverse employment actions include 'tangible employment actions,' which are those actions 'that affect continued employment or pay—things like terminations, demotions, suspensions without pay, and pay raises or cuts[.]" (quoting *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 860 (11th Cir. 2020))). However, Defendants argue that Plaintiffs fail to allege the third element, that a causal connection existed between the employee's protected activity and the adverse employment action.

At the motion-to-dismiss stage, a plaintiff need not prove causation but must plead sufficient facts to make it plausible. *See, e.g.*, *Vega v. City of Sweetwater*, No. 25-22535-CIV,

2025 WL 2306197, at *4 (S.D. Fla. Aug. 11, 2025).  To establish a causal relation, "'a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated.'"  *Bowers v. Bd. of Regents of Univ. Sys. of Georgia*, 509 F. App'x 906, 911 (11th Cir. 2013) (quoting *Shannon v. BellSouth Telecomm., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002).  The Court construes this requirement broadly.  *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (citation omitted); *Vega*, 2025 WL 2306197, at *4.

A plaintiff can satisfy this burden if she can prove a "close temporal proximity" between the time her employer learned about her protected activity and her discharge.  *Thomas,* 506 F.3d at 1364.  "This standard requires that the actions be 'very close.'"  *Raspanti v. Four Amigos Travel, Inc.*, 266 F. App'x 820, 823 (11th Cir. 2008) (quoting *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001).  "A delay of 'three to four month[s]' does not suffice."  *Id.* (quoting *Thomas,* 506 F.3d at 1364).

Here, Plaintiffs allege that on or around May 27, 2023, Slizskaya and Vega made complaints against Guerrero to HRMCS and that on June 23, 2023, Giua and Usai held a meeting with Peebles where they "reiterated their concerns regarding Guerrero," the unlawful tip retention, and the complaints.  Compl. ¶¶ 84, 96.  As noted, Slizskaya alleges that in or around May 2023, Defendants began cutting her hours and that she was terminated on or around June 29, 2023.  *Id.* ¶¶ 90, 99.  Usai and Giua allege they were terminated on or around August 14, 2025, and Vega alleges she was terminated on or around August 25, 2023.  *Id.* ¶¶ 103, 105–06.  The Complaint does not allege the exact date Defendants learned about the complaints—whether it was on May 27, 2023, on June 23, 2023, or sometime in between.  *See generally id.*  However, Plaintiffs do allege that "Slizskaya was terminated under the guise of a layoff, less than a month and a half after

she participated in the investigation against Guerrero and brought forth her complaints, *id.* ¶ 100, and that in the June 23, 2023, conversation, Giua and Usai were "reiterat[ing] their concerns.[.]" *Id.* ¶ 96.

To determine whether there was "close temporal proximity" between the time Defendants learned about the protected activity and Plaintiffs' discharges, the Court must begin the "calculation on the date the employer gains 'knowledge of the protected expression[.]'" *Raspanti*, 266 F. App'x at 823 (quoting *Higdon v. Jackson,* 393 F.3d 1211, 1220 (11th Cir. 2004)). In the Response, Plaintiffs argue that the Court should consider the relevant date as June 23, 2023, but Plaintiffs simultaneously acknowledge that was when Usai and Giua "reiterated" their concerns to Peebles and argue that Defendants retaliatory conduct began in or around May 2023 when Defendants began cutting Slizskaya's scheduled work hours. MTD Resp. at 11; Compl. ¶¶ 90, 96. As such, Plaintiffs allegations as to when Defendants learned about the protected activity are contradictory. However, it does not doom their retaliation claims.

Regarding Slizskaya, if Defendants learned of the protected activity on May 27, 2023, or sometime shortly thereafter, Slizskaya alleges that Defendants began cutting her work hours only days after, which by itself, is enough to establish causation. *See Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 926 (11th Cir. 2018) ("[W]e have explained that an employee's termination within days—or at the most within two weeks—of his protected activity can be circumstantial evidence of a causal connection between the two[,]" when discussing a motion for summary judgment.); *Williams v. Vapor Rising, Inc.*, No. 8:20-CV-1215-TPB-TGW, 2022 WL 939911, at *6 (M.D. Fla. Feb. 24, 2022), *report and recommendation adopted*, No. 8:20-CV-1215-TPB-TGW, 2022 WL 911735 (M.D. Fla. Mar. 29, 2022) (holding that one day of temporal proximity established causal connection). If June 23, 2023, is the relevant date then Slizskaya was fired one week after that,

and Vega, Usai, and Giua were fired around two months after that, which, at the motion to dismiss stage, may be sufficient to infer causation alone. *See Vega*, No. 2025 WL 2306197, at *4 ("Plaintiff's allegations that Herrada directed her termination only two months after she raised renewed concerns to City officials provide ample grounds to infer causation.").

However, even if there is a lack of temporal proximity here, it would be "premature for the Court to dismiss Plaintiff[s'] retaliation claim[s] on this ground without the Parties having the benefit of discovery, as lack of temporal proximity only defeats a retaliation claim 'in the absence of other evidence tending to show causation.'" *Matamoros v. Broward Sheriff's Off.*, No. 0:18-CV-62813-KMM, 2019 WL 4731931, at *4 (S.D. Fla. June 8, 2019) (quoting *Higdon*, 393 F.3d at 1220), *aff'd*, 2 F.4th 1329 (11th Cir. 2021); *see also El-Saba v. Univ. of S. Ala.*, No. 15-00087-KD-N, 2015 WL 5849747, at *15 (S.D. Ala. Sept. 22, 2015) (recommending denial of a motion to dismiss where there was a two-year gap between the protected activity and the adverse employment action, recognizing that discovery may "unearth evidence of retaliation such that at summary judgment or trial, the plaintiff will not have to rely heavily on the temporal proximity between protected conduct and adverse actions to prove her case"), *report and recommendation adopted as modified*, No. 15-00087-KD-N, 2015 WL 5882977 (S.D. Ala. Oct. 7, 2015). Here, Plaintiffs have alleged a general pattern of retaliatory conduct, starting with Defendants cutting Slizskaya's hours, followed by Slizskaya's termination and ending with Vega's termination. *See* Compl. ¶¶ 90, 99, 103, 105–06. Therefore, the Court finds that it would be premature to dismiss Plaintiffs' retaliation claims on this ground. *See Matamoros*, 2019 WL 4731931, at *4. Accordingly, the Court finds that Plaintiffs have pleaded enough facts to state their FLSA retaliation claims.

   *iii.*  *Plaintiffs' Title VII, FCRA & MDHRO Claims*

Next, Defendants argue that Plaintiffs' discrimination claims, hostile work environment claims, and retaliation claims pursuant to Title VII, the FCRA, and the MDHRO should be dismissed for failure to state a claim.[10]   The Court first addresses all of Plaintiffs' discrimination claims, then addresses Plaintiffs' hostile work environment claims, and lastly addresses Plaintiffs' retaliation claims, mirroring the format of the Motion to Dismiss.[11]

>    a.   *Slizskaya and Vega's Title VII, FCRA, and MDHRO Discrimination*
>         *Claims*

In Counts VII, VIII, XV, XVII, XXIII, and XXIV, Slizskaya and Vega bring discrimination claims under Title VII, the FCRA, and the MDHRO against Club Management.   *See generally* Compl.   They allege that they were subject to disparate treatment on the basis of their sex.   *See id.* ¶¶ 196–221, 302–25, 404–27.   Defendants argue that Slizskaya and Vega's discrimination claims should be dismissed because Slizskaya and Vega fail to allege that they were treated less favorably than similarly situated male employees and have failed to allege sufficient facts "to support that sex played any role in the alleged disparate treatment they suffered."   MTD at 10–12.   In response, Plaintiffs acknowledge that they have not identified specific comparators but argue that they "are

---

[10] As noted, Defendants voluntarily withdrew their initial argument that "Plaintiffs failed to exhaust their administrative remedies as to their claims arising under the MDHRO."   *See* MTD Reply at 2 n.1 (citing MTD at 16–18).

[11] Because the FCRA is modeled after Title VII, claims brought under the FCRA are analyzed by federal courts using the same framework.   *See, e.g.*, *Alvarez v. Royal Atl. Devs.*, 610 F.3d 1253, 1271 (11th Cir. 2010) (citing *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998)); *Peragine v. Fla. Dep't of Transportation*, No. 25-80460-CIV, 2025 WL 2249982, at *3 (S.D. Fla. Aug. 7, 2025) (citing *Dandridge v. Wal-Mart Stores, Inc.*, 844 F. App'x. 214, 215 (11th Cir. 2021)).   As the MDHRO also prohibits employment discrimination, hostile work environment, and retaliation on the same bases as Title VII and the FCRA, the Court analyzes Plaintiffs' MDHRO claims under the same framework as their Title VII and FCRA claims.   *See* 42 U.S.C. § 2000e-2(a)(1); Fla. Stat. § 760.10(1)(a); Mia.-Dade, Fla. County Code § 11A-26(1). Accordingly, if the Court finds that a Plaintiff did or did not state a claim under Title VII for either discrimination, hostile work environment, or retaliation, that same finding applies to Plaintiff's FCRA and MDHRO claims in the same category.

not required, at this stage, to specify exact comparators or provide detailed evidence regarding the comparative treatment." MTD Resp. at 12–13.

Title VII of the Civil Rights Act, the FCRA, and the MDHRO make it unlawful for an employer to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of his or her sex. 42 U.S.C. § 2000e-2(a)(1); Fla. Stat. § 760.10(1)(a); Mia.-Dade, Fla. County Code § 11A-26(1). Under the *McDonnell Douglas* framework, "[t]o state a claim for disparate treatment under Title VII a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was treated less favorably than a similarly-situated individual outside her protected class." *Arafat v. Sch. Bd. of Broward Cnty.*, 549 F. App'x 872, 874 (11th Cir. 2013) (citing *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003)); *Troupe v. DeJoy*, No. 20-12019, 2021 WL 2530188, at *3 (11th Cir. June 21, 2021) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973)).

Here, Defendants dispute the fourth prong of the disparate treatment analysis—whether Slizskaya and Vega were treated less favorably than similarly-situated individuals outside of their protected class. *See* MTD at 10–12. In terms of assessing whether a plaintiff was treated less favorably than a similarly-situated individual outside her protected class, a plaintiff "must demonstrate that she and her proffered comparators were similarly situated in all material respects." *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1218 (11th Cir. 2019). "Ordinarily, . . . a similarly situated comparator": (1) "will have engaged in the same basic conduct (or misconduct) as the plaintiff"; (2) "will have been subject to the same employment policy, guideline, or rule as the plaintiff"; (3) "will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff"; and (4) "will share plaintiff's employment

or disciplinary history." *Id.* at 1227–28. "In short, as its label indicates—all material respects—a valid comparison will not turn on formal labels, but rather on substantive likenesses." *Id.* at 1228 (internal quotations omitted).

The Court finds, and Slizskaya and Vega do not dispute, that the Complaint is lacking in terms of identifying comparators. *See generally* Compl.; *see* MTD Resp. at 12–13. However, Slizskaya and Vega are correct that failure to identify specific comparators is not fatal to their discrimination claims at this stage. *See Bardelas v. City of Doral*, No. 1:20-CV-24894-KMM, 2021 WL 12313738, at *7 (S.D. Fla. Aug. 23, 2021) (explaining that "courts have found insufficient comparators are not fatal even at the motion for summary judgment stage" (citing *Troupe*, 2021 WL 2530188, at *2)). The Eleventh Circuit recently emphasized that "it is error for a district court to apply the *McDonnell Douglas* standard at the motion to dismiss stage." *Hernandez v. CareerSource Palm Beach Cnty., Inc.*, No. 23-12285, 2025 WL 1541367, at *4 (11th Cir. May 30, 2025)). Instead, "[a]t the pleading stage in the Title VII context, . . . a plaintiff must provide enough factual matter, taken as true, to plausibly suggest intentional discrimination." *Id.* at *3.

Here, Slizskaya alleges that Club Management "subjected" her to "discriminatory treatment on the basis of her sex," by "withholding and manipulating Plaintiff Slizskaya's tipped wages; forcing Plaintiff Slizskaya to appease her male supervisor in order to be paid her lawful wages; reducing Plaintiff Slizskaya's scheduled hours and pay; denying Plaintiff Slizskaya pay raises; subjecting Plaintiff Slizskaya to severe discriminatory remarks like being called an 'ass face'; and unlawfully terminating Plaintiff Slizskaya's employment." Compl. ¶ 201. Vega alleges that Club Management "subjected" her to "discriminatory treatment on the basis of her sex," by "withholding and manipulating Plaintiff Vega's tipped wages; forcing Plaintiff Vega to appease

her male supervisor in order to be paid her lawful wages; making inappropriate sexual advances towards Plaintiff Vega; subjecting Plaintiff Vega to vulgar sexual remarks; touching Plaintiff Vega's body without her consent; and unlawfully terminating Plaintiff Vega's employment." *Id.* ¶ 214.  Slizskaya and Vega further allege that "[n]o similarly situated male employees endured the discriminatory conduct" that they were forced to endure, and they were discriminated against "because of their sex." *Id.* ¶¶ 108, 202, 215.

Based on these allegations, Slizskaya and Vega have provided "enough factual matter, taken as true, to plausibly suggest intentional discrimination[,]" and as such, Defendant's arguments premised upon the lack of an alleged comparator are not outcome determinative in this case.  *See Hernandez*, 2025 WL 1541367, at *3–4 (holding that the district court erred in dismissing plaintiff's Title VII claim based on a summary judgment standard comparator analysis); *Peragine*, 2025 WL 2249982, at *4 (finding that the plaintiff's complaint sufficiently alleged Title VII and FCRA gender discrimination claims where the plaintiff alleged that she was "held to a different standard because of her gender, received unwanted and unprofessional phone calls and text messages from a co-worker, was asked out repeatedly by a co-worker, was asked for her address by a co-worker and was shouted at when she would not provide her address, was asked by a co-worker to sit on [his] lap, was pushed in her chair and injured by a co-worker, was retaliated against after she made a report to HR, and was ultimately terminated without any explanation." (internal quotations omitted)); *Latimore v. The City of North Miami Beach*, No. 1:21-cv-20519-KMM, (ECF No. 52) at 9, (Oct. 8, 2021) (finding that the defendant's arguments premised upon the lack of an alleged comparator were not outcome determinative for plaintiff's Title VII discrimination claim because "the Amended Complaint contained a number of allegations that, if true, would amount to 'enough circumstantial evidence to raise a reasonable inference of

intentional discrimination.'" (citing *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1320 (11th Cir. 2012))).

As such, despite the lack of identifiable comparators, the Court finds that at the motion to dismiss stage, Slizskaya and Vega have sufficiently pleaded their discrimination claims. Accordingly, the Motion to Dismiss is denied as to Counts VII-VIII, XV-XVI, and XXIII-XXIV.

> b. *Slizskaya and Vega's Title VII, FCRA, and MDHRO Hostile Work*
> *Environment Claims*

In Counts IX-X, XVII-XVIII, and XXV-XXVI, Slizskaya and Vega also bring hostile work environment claims under Title VII, the FCRA, and the MDHRO against Club Management. *See generally* Compl. Defendants argue that Slizskaya and Vega's hostile work environment claims should be dismissed because: (1) the harassment alleged was not based on sex; and (2) the harassment alleged was not sufficiently severe or pervasive to alter the terms and conditions of their employment. MTD at 12–16. In response, Slizskaya and Vega argue that these claims should not be dismissed because the "Complaint alleges that the work environment was characterized by a continuous pattern of degrading, sexually charged conduct that not only undermined the dignity of the female employees but also interfered with their ability to perform their jobs." MTD Resp. at 13–15.

As mentioned, Title VII of the Civil Rights Act, the FCRA, and the MDHRO make it unlawful for an employer to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of his or her sex. 42 U.S.C. § 2000e-2(a)(1); Fla. Stat. § 760.10(1)(a); Mia.-Dade, Fla. County Code § 11A-26(1). To state a claim for hostile work environment, a plaintiff must allege that: (1) she belongs to a protected group; (2) she has been subject to unwelcome harassment; (3) the harassment must have been based on a

protected characteristic of the employee; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for such environment under either a theory of vicarious or direct liability. *See Thompson v. City of Miami Beach*, 990 F. Supp. 2d 1335, 1339 (S.D. Fla. 2014) (citing *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002)).

In the Complaint, Slizskaya and Vega allege that Club Management's severe and pervasive conduct included "fostering a humiliating and demeaning work environment for female employees[,]" "forcing female employees to endure comments about their bodies, including about their breasts and buttocks[,]" and forcing Slizskaya and Vega to "appease [their] male supervisor in order to be paid [their] wages[.]" Compl. ¶¶ 227, 240. Specifically, Slizskaya and Vega allege that Guerrero "regularly made comments" to female servers "implying that they would receive more favorable tip distributions if they engaged in *quid pro quo* sexual harassment, making comments such as 'You know how to earn your tips' and 'I'll fix it if you do this' while making a sexual gesture." *Id.* ¶ 67. Further, Slizskaya and Vega allege that Guerrero often told "the female employees they had 'big boobs' or a 'big ass[,]'" and Vega alleges that Guerrero also said made "inappropriate sexual advances" towards her and said to her: "not to get close to him because she had nice legs and he would 'get excited[,]' referring to his sexual arousal[]"; and "'que rica estás' ('you look so sexy') and 'que bien se te ven esos pantalones' ('those pants look so good on you')." *Id.* ¶¶ 69, 70–71. Additionally, Vega alleges that "[o]n one occasion, Guerrero approached Plaintiff Vega and in a blatant disregard for her personal dignity and bodily autonomy, forcibly grabbed her groin without her consent while she was working." *Id.* ¶ 72. Slizskaya alleges that Guerrero called her "'ass face.'" *Id.* ¶ 74. Slizskaya and Vega also allege that Guerrero "often

screamed" at them and other female employees, "becoming extremely irate and denigrating female employees over even the most minor of work incidents."  *Id.* ¶ 75.

Here, Defendants argue that Slizskaya and Vega have not sufficiently alleged the third and fourth elements of their hostile work environment claims.  The third element requires that the harassment be based on a protected characteristic of the employee.  Slizskaya and Vega allege that Guerrero only targeted female employees and no "similarly situated male employees endured the [same] discriminatory conduct[.]"  Compl. ¶¶ 202, 215.  Based on their allegations, the Court can plausibly infer that the harassment was based on Slizskaya and Vega being women.  *See Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982) ("[T]he plaintiff must show that but for the fact of her sex, she would not have been the object of harassment."); *Amaya v. Vilsack*, No. 23-CV-22838, 2024 WL 3509583, at *6 (S.D. Fla. July 23, 2024) (finding that the plaintiff properly pleaded that her sex was the cause of her harassment where she alleged that male employees were not treated the same way and that her employer was not disciplined when women made complaints).

The Court next discusses the fourth element, that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment, which "requires a plaintiff to prove that the work environment is both subjectively and objectively hostile." *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248 (11th Cir. 2014) (citing *Mendoza*, 195 F.3d at 1246).  To satisfy this element, "[t]he employee must 'subjectively perceive' the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable." *Mendoza*, 195 F.3d at 1246 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)).

Here, the Court is satisfied that Slizskaya and Vega plausibly subjectively perceived Guerrero's conduct as sufficiently severe and pervasive.  However, the Court finds that only Vega has pleaded sufficient facts as to establish objective severity.

In determining whether the harassment was objectively severe, the Supreme Court and the Eleventh Circuit have identified the following factors for consideration: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance."  *Id.* at 1246 (citations omitted).  "The objective component of this analysis is somewhat fact intensive[,]" *id.*, and "'[n]o single factor is controlling, and a court must consider the totality of the circumstances.'"  *Amaya*, 2024 WL 3509583, at *7 (quoting *United States v. Bartow County*, 2023 WL 2344209, at *6 (N.D. Ga. Mar. 3, 2023)).

Regarding the first factor, frequency of the conduct, the Court notes that many of Slizskaya and Vega's allegations involve comments that Guerrero made to female employees generally, including that "Guerrero regularly made comments to female servers implying that they would receive more favorable tip distributions if they engaged in *quid pro quo* sexual harassment[,]" "Guerrero often made disparaging discriminatory, misogynistic remarks and berated female employees on a frequent basis[,]" and "Guerrero regularly made discriminatory and sexually harassing comments towards female employees."  Compl. ¶¶ 67–69, 227, 240.  The Complaint also alleges that HRMCS's investigation revealed that "numerous female employees had been subjected to discriminatory and sexually harassing conduct, including, but not limited to, Guerrero propositioning female employees for sex, grabbing female employees' buttocks and waists without their consent, and making extremely inappropriate remarks, such as telling a female employee he wanted to 'bite her ass.'"  *Id.* ¶ 87.  However, Slizskaya and Vega do not specifically allege that

Guerrero directed these comments towards them, nor do Slizskaya and Vega allege how "often" or "regularly" these comments were made. *See id.* Based on the Complaint, it is also unclear whether Slizskaya and Vega were aware of these comments while they were employed, and if so, when exactly they became aware of them. *See Adams*, 754 F.3d at 1250 ("A reasonable person in the plaintiff's position is not one who knows what the plaintiff learned only after her employment ended or what discovery later revealed.").

On the other hand, the Complaint species what conduct was directed at Slizskaya and Vega: (1) Guerrero saying to Vega "not to get close to him because she had nice legs and he would 'get excited[,]' referring to his sexual arousal[]"; (2) Guerrero saying to Vega "'que rica estás' ('you look so sexy') and 'que bien se te ven esos pantalones' ('those pants look so good on you')"; (3) Guerrero "forcibly grabb[ing] [Vega's] groin without her consent while she was working[]"; and (4) Guerrero calling Slizskaya an "'ass face.'" Compl. ¶¶ 70–72, 74.

"[A]s the Eleventh Circuit has noted, '[a]ll of the sexual hostile environment cases decided by the Supreme Court have involved patterns or allegations of extensive, long lasting, unredressed, and uninhibited sexual threats or conduct that permeated the plaintiffs' work environment.'" *Harkins*, 2025 WL 522674, at *6 (quoting *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 586 (11th Cir. 2000), *overruled on other grounds*, *Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008)). Here, Slizskaya and Vega allege that the harassment was throughout their employment. Compl. ¶¶ 40–41. Slizskaya was hired in January 2022 and terminated on or around June 29, 2023, and Vega was hired in February 2023 and terminated on or around August 25, 2023. *Id.* ¶¶ 31, 32, 99, 103. As such, the alleged frequency of the conduct, one comment directed at Slizskaya over a year and a half period, and three comments, and one contact, directed at Vega over a five-to-six-month period, weighs in favor of Defendants. *See Allen v. Ambu-Stat, LLC*, 799 Fed. App'x. 703, 708–

36

09 (11th Cir. 2020) (holding that five isolated comments "spread over four months, can hardly be described as frequent"); *Mendoza*, 195 F.3d at 1249 (finding that five instances over an eleventh month period was "far too infrequent to alter the conditions under which [the plaintiff] was required to perform her job"); *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1366 (11th Cir. 1997) (finding that five sexually-oriented incidents over sixteen months were "sporadic[]"); *Cf. Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 509 (11th Cir. 2000) (holding that "roughly fifteen separate instances of harassment over the course of four months" was pervasive). While the Complaint also alleges that Guerrero "often screamed" at Slizskaya and Vega, without more details about what was said, the Court cannot determine whether this was sexual conduct as to consider it in this analysis. Compl. ¶ 75.

Regarding the second factor, severity of the conduct, "the Eleventh Circuit [has] found that conduct rose to the level of actionable sexual harassment when a defendant 'grabbed or slapped [plaintiff's] buttocks, groped her leg, ground his groin into [her] pants after stating 'look at that sexy mama, I could just eat you in that skirt,' and 'picked her up and squeezed her so hard that she urinated in her pants.'" *Harkins*, 2025 WL 522674, at *6 (quoting *Dees v. Johnson Controls World Serv., Inc.*, 168 F.3d 417, 418-19 n. 12 (11th Cir. 1999)). Further, this Court in *Bardelas*, held that plaintiff's allegations that she was called a "coward[,]" "that piece of shit," was "regularly subjected to ridicule by male command staff for her appearance," was "told that she was persecuted and harassed because she was an 'easy target'" and was viewed as an "airhead[,]" did not "rise to the level of humiliating such that it can be qualified as objectively severe and pervasive harassment that alter the terms and conditions of employment." 2021 WL 12313738, at *9 (internal quotations omitted).

Here, the conduct Slizskaya alleges, including that Guerrero called her "ass face[,]" Compl. ¶ 74, does not rise to the aforementioned level of severity as to find that this factor weighs in Slizskaya's favor. *See Mendoza*, 195 F.3d at 1245 ("Title VII is not a federal 'civility code.'" (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 118 (1998))); *Thomaston ex rel. M.T. v. Baldwin Cnty. Bd. of Educ.*, 2019 WL 3069863, at *6 (S.D. Ala. June 25, 2019) (finding no objective severity where there were no "allegations of threats, suggestive gestures, offensive touching, sexual propositions, physical assault, or sexually-charged contact"), *report and recommendation adopted*, 2019 WL 3069399 (S.D. Ala. July 12, 2019). Slizskaya and Vega's allegations that Guerrero made inappropriate comments to female employees generally also does not support a finding that the conduct was severe. *See Latimore*, No. 1:21-cv-20519-KMM, (ECF No. 52) at 12 ("The general comments by the [defendants] regarding their desire to hire Haitian Americans were not directed at [the p]laintiff and therefore could not be considered threatening or severe."). On the other hand, based on the same case law outlined above, the Court finds that the severity factor weighs in favor of Vega. Vega alleges that Guerrero offensively touched her and made sexually-charged comments, including Guerrero telling her that she should not "get close to him because she had nice legs and he would 'get excited[,]'" saying in Spanish that she looked "so sexy" and that her pants "look so good" on her, and "forcibly grabb[ing] [her] groin without her consent[.]" Compl. ¶¶ 70–72.

Regarding the third factor, whether the conduct is physically threatening or humiliating, Slizskaya does not allege that she was physically threatened. *See generally id.* Vega, however, does allege that she was physically threatened when Guerrero "forcibly grabbed her groin without her consent while she was working." *Id.* ¶ 72. In *Johnson*, the Eleventh Circuit found that the defendant's conduct was objectively physically threatening and humiliating when he gave the

plaintiff unwanted massages, stood close to her so that his body parts touched her from behind, and pulled his pants tight to reveal the imprint of his private parts.  234 F.3d at 509.  Based on the conduct alleged in this Action, the Court finds that this factor weighs against Slizskaya, but in favor of Vega.  *See id.*

The fourth factor is whether the conduct unreasonably interferes with the employee's job performance.  Slizskaya and Vega allege that Club Management's "discriminatory conduct" "negatively impacted both [their] professional li[ves] and personal li[ves,]" and made Slizskaya and Vega "feel isolated, humiliated, embarrassed, and ashamed."  Compl. ¶¶ 229, 242.  However, Slizskaya and Vega do not allege that the conduct unreasonably interfered with their job performance or allege how it negatively impacted their professional lives.  *See generally id.*  Instead, Slizskaya and Vega allege that "[a]t all relevant times[,] they "had a history of positive job performance."  *Id.* ¶ 35.  As such, the Court finds that the fourth factor weighs in favor of Defendants.

In sum, based on a totality of the circumstances and the Eleventh Circuit standards outlined above, the Court does not find that Slizskaya has sufficiently alleged objectively severe or pervasive conduct to move forward with her hostile work environment claims.  However, although the Court acknowledges that it is a close call, the Court finds that Vega has sufficiently alleged objectively severe or pervasive conduct to move forward with her hostile work environment claims.  Accordingly, Counts IX, XVII, and XXIV are dismissed without prejudice.

### c.  *Plaintiffs' Title VII, FCRA, and MDHRO Retaliation Claims*

In Counts XI-XIV, XIX-XXII, XXVII-XXX, Plaintiffs bring retaliation claims under Title VII, the FCRA, and the MDHRO.  Defendants argue that these retaliation claims should be dismissed because "[t]he same flaws with Plaintiffs' FLSA retaliation claims are present with

Plaintiffs' retaliation claims under Title VII, the FCRA, and the MDHRO." MTD at 16. Specifically, Defendants argue that Plaintiffs "have failed to sufficiently allege facts from which this Court could infer a causal connection between their protected activities and the adverse employment actions against them." *Id.* In response, Plaintiffs argue that they have established each element of their retaliation claims under Title VII, the FCRA, and the MDHRO. MTD Resp. at 15–16. In reply, Defendants argue that "[a]ll of Plaintiffs' sixteen (16) retaliation claims are deficient in that they do not sufficiently describe their protected activities and the causal connection between such activities and adverse employment actions suffered." MTD Reply at 4–6.

The Court already discussed at length Plaintiffs' FLSA retaliation claims and found that they survive the Motion to Dismiss. *See supra* III.B.ii.c. Courts in this Circuit often analyze FLSA retaliation claims under the same framework as Title VII and FCRA retaliation claims because the elements necessary to establish Title VII, FCRA, and FLSA retaliation claims are essentially the same. *See, e.g.*, *Sanchez v. ABC Pro. Tree Servs. Inc.*, No. 21-14223-CIV, 2022 WL 3577087, at *4 (S.D. Fla. Aug. 19, 2022) ("FCRA and FLSA retaliation claims are governed by the same legal analysis."); *Davidson v. Patel*, No. 1:22-CV-3934-SEG, 2023 WL 10406725, at *5 (N.D. Ga. Sept. 30, 2023) (analyzing FLSA retaliation claims using the same framework applied to retaliation claims brought under Title VII); *see also Entrekin v. City of Panama City*, 376 F. App'x 987, 994 (11th Cir. 2010) (laying out the elements necessary to make out a *prima facie* case of retaliation under Title VII); *Wolf,* 200 F.3d at 1342 (laying out the same elements necessary to make out a *prima facie* case of retaliation under FLSA with slight language changes, including the omission of the reference to Title VII, and the substitution of the words "employee's activity" instead of the words "protected activity"). As such, based on similar reasoning applied to Plaintiffs' FLSA retaliation claims, the Court finds that Plaintiffs also assert viable claims for unlawful retaliation

under Title VII, the FCRA, and the MDHRO.  Nevertheless, the Court discusses Plaintiffs' Title VII, FCRA, and MDHRO retaliation claims in more detail below.

"A *prima facie* case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford*, 529 F.3d at 970 (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)).

As to the first element, Slizskaya and Vega allege that they engaged in a protected activity when they opposed Club Management's "sexual harassment and gender discrimination, complained about [Club Management's] sexual harassment and gender discrimination, and when [they] participated in the investigation into [Club Management's] sexual harassment and gender discrimination."  Compl. ¶¶ 251, 265.  Usai and Giua allege that they engaged in a protected activity when they opposed Club Management's "sexual harassment and gender discrimination of female employees and assisted female employees in exercising their protected rights to be free from harassment and discrimination[.]"  *Id.* ¶¶ 278, 291.  Specifically, Slizskaya and Vega allege that on or around May 27, 2023, they "made complaints against Guerrero for his unlawful conduct" to HRMCS and "gave interviews reporting the discriminatory conduct[.]"  *Id.* ¶¶ 84, 88.  Usai and Giua allege that on June 23, 2023, they had a meeting with Peebles and "reiterated their concerns regarding Guerrero[.]"  *Id.* ¶¶ 95–96.

These reports constitute protected activities under Title VII.  *See Amaya*, 2024 WL 3509583, at *4 ("An employee's decision to report sex discrimination is protected activity under Title VII."); *McArthur v. Northstar Funeral Servs. of Fla., LLC*, 2011 WL 1549007, at *3 (S.D.

Fla. Apr. 22, 2011) ("[I]t is well-settled that reporting discriminatory conduct to one's employer constitutes a protected activity under Title VII[.]").

As to the second element, Defendants do not argue that Plaintiffs did not suffer an adverse employment action, nor could they, as all Plaintiffs were terminated, and additionally, prior to her termination, Slizskaya's work hours were cut, Compl. ¶¶ 90, 99, 103, 105, 106. *See Davis*, 19 F.4th at 1266.

As to the third element, Plaintiffs plausibly allege that there was a causal connection between the adverse action and the protected activity. As discussed above, Plaintiffs allege that they reported the protected activity in May or June 2023 and that "[s]oon thereafter, Defendants escalated their campaign of retaliation[,] and between June 2023 and August 2023, Defendants terminated employees who had opposed Defendants' unlawful employment practices or participated in the recent investigation, including the Plaintiffs." Compl. ¶¶ 97–98. Slizskaya's work hours were cut in May 2023, and she was terminated on or around June 29, 2023. *Id.* ¶¶ 90, 99. Vega was terminated on or around August 25, 2023, and Usai and Giua were terminated on or around August 14, 2025. *Id.* ¶¶ 103, 105–06. Defendants' contention in their Reply that "even if there is temporal proximity between the two events[,]" Usai and Giua's meeting with Peebles and Plaintiffs' layoffs, Plaintiffs' claims still fail because "the Complaint nonetheless lacks facts supporting a causal connection[,]" is incorrect. MTD Reply at 6. "For purposes of a *prima facie* case, close temporal proximity may be sufficient to show that the protected activity and the adverse action were not wholly unrelated." *Lombard v. TZ Ins. Sols., LLC*, No. 2:13-CV-667-FtM-29DNF, 2014 WL 2600091, at *4 (M.D. Fla. June 10, 2014) (finding plaintiff's allegations that she was terminated less than a month after requesting a reasonable accommodation "sufficient to establish the temporal proximity necessary to satisfy the third prong" at the motion to dismiss stage) (citing

*Freytes–Torres v. City of Sanford*, 270 F. App'x 885, 893 (11th Cir. 2008))); *see also Vega*, 2025 WL 2306197, at *4 ("Plaintiff's allegations that [the defendant] directed her termination only two months after she raised renewed concerns to City officials provide ample grounds to infer causation.").

However, even if the alleged temporal proximity is not close enough on its own to infer a causal connection, *see Raspanti*, 266 F. App'x at 823 (11th Cir. 2008) ("This standard requires that the actions be 'very close.'" (quoting *Clark County Sch. Dist.,* 532 U.S. at 273)), "close temporal proximity is not the only means by which a plaintiff can establish a causal connection." *Jiles v. United Parcel Serv., Inc.*, 360 F. App'x 61, 66 (11th Cir. 2010). "A plaintiff may establish a causal relation element under a *prima facie* case of retaliation based on evidence that an employer knew of a protected activity, and a series of adverse employment actions commenced almost immediately thereafter." *Id.* Here, as discussed, Plaintiffs have alleged a general pattern of retaliatory conduct, starting with cutting Slizskaya's hours, followed by her, Usai, and Giua's terminations, and ending with Vega's termination, Compl. ¶¶ 90, 99, 103, 105–06. *See Matamoros*, 2019 WL 4731931, at *4 (reasoning that "it would be premature for the Court to dismiss Plaintiff's retaliation claim on [temporal proximity] ground[s] without the Parties having the benefit of discovery, as lack of temporal proximity only defeats a retaliation claim 'in the absence of other evidence tending to show causation.'" (quoting *Higdon*, 393 F.3d at 1220)); *Richie v. Mitchell*, No. 5:14-CV-2329-CLS, 2015 WL 3616076, at *6 (N.D. Ala. June 9, 2015) (denying motion to dismiss and finding that although the temporal proximity may be too tenuous to state a retaliation claim, "some other facts alleged by plaintiff . . . could also be considered as *other* evidence of retaliation" (emphasis in original)).

Accordingly, the Motion to Dismiss is denied as to Counts XI-XIV, XIX-XXII, XXVII-XXX.

In sum, the Court finds that Plaintiffs have failed to state all of their FLSA claims as to Peebles, and Vega and Slizskaya have also failed to state their FLSA wage theft claims as to Club Management.  Further, the Court finds that Slizskaya's Title VII, FCRA, and MDHRO hostile work environment claims also fail.  However, the Court finds that Plaintiffs' remaining claims survive the Motion to Dismiss.

## IV. CONCLUSION

Accordingly, UPON CONSIDERATION of the Arbitration Motion and the Motion to Dismiss, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Defendants' Motion to Compel Arbitration and Stay (ECF No. 13) is DENIED and Defendants' Motion to Dismiss (ECF No. 14) is GRANTED IN PART AND DENIED IN PART.  Counts I-VI are dismissed without prejudice as to Defendant Peebles, and Counts I-II are also dismissed without prejudice as to Defendant Club Management.  Additionally Counts VII, XVII, and XXV are dismissed without prejudice.  Plaintiffs are granted leave to file an amended complaint within twenty-one (21) days of the date of this Order.

Further, the Parties' Joint Motion to Amend Scheduling Order and Continue Trial (ECF No. 46) is DENIED WITHOUT PREJUDICE.  The Parties may tailor and reraise any relevant arguments now that they have the benefit of the Court's decision on the Arbitration Motion and the Motion to Dismiss.

DONE AND ORDERED in Chambers at Miami, Florida, this  23rd   day of September, 2025.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record