UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:24-CV-24830-KMM

RICCARDO USAI, MASSIMILIANO GIUA,
IRINA SLIZSKAYA, and MEYVIS VEGA,

                        Plaintiffs,

vs.

CLUB MANAGEMENT MIAMI II, LLC, and
R. DONAHUE PEEBLES,

                        Defendants.
_____/

**DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT
AND INCORPORATED MEMORANDUM OF LAW**

      Defendants, Club Management Miami II, LLC ("Club Management") and R. Donahue Peebles ("Peebles"), pursuant to Fed.R.Civ.P. 12(b)(6), move this Court for entry of an order dismissing the following claims in the amended complaint [ECF 57] (the "Amended Complaint") filed by Plaintiffs, Riccardo Usai ("Usai"), Massimiliano Giua ("Giua"), Irina Slizskaya ("Slizskaya"), and Meyvis Vega ("Vega"): (1) the Fair Labor Standards Act ("FLSA") claims brought against Peebles personally; (2) the FLSA wage theft claims brought by Slizskaya and Vega; and (3) the claims brought by Slizskaya against Club Management for hostile work environment. In support of this motion, Defendants state as follows:

**INTRODUCTION**

      In 2023, Plaintiffs worked at "The Bath Club," a private, members' only club on Miami Beach owned by Club Management. Plaintiffs filed their Amended Complaint after this Court dismissed, in part, their original complaint [ECF 49] (the "Order of Dismissal"). The Order of Dismissal was granted as to all the FLSA claims made against Peebles personally, the FLSA

wage theft claims of Slizskaya and Vega, and the three (3) hostile work environment claims of Slizskaya brought under Title VII of the Civil Rights Act ("Title VII"), Florida Civil Rights Act ("FCRA"), and the Miami-Dade Human Rights Ordinance ("MDHRO"). Despite new allegations in the Amended Complaint, these same claims must again be dismissed for failure to state claims upon which relief can be granted.[1]

## MEMORANDUM OF LAW

When considering a motion to dismiss, a court must accept the allegations in plaintiff's complaint as true. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984). However, the court need not accept legal conclusions, and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" must be disregarded. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). In addition, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

Fed.R.Civ.P. Rule 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* "Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

---

[1] Defendants do not seek to dismiss any claims in the Amended Complaint brought by Usai or Giua (Counts V, VI, XIII, XIV, XXI, XXII, XXIX and XXX) as this action has been stayed as to these two plaintiffs pending appeal of Defendants' motion to compel arbitration [ECF 61].

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face," quoting *Bell Atl. Corp.*, 550 U.S. at 570, 127 S.Ct. 1955. A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

### A. Slizskaya & Vega's FLSA Claims Should Be Dismissed.

Slizskaya and Vega's claims made against Peebles individually and their wage theft claims should be dismissed for the reasons set forth below.

#### i. All FLSA Claims Against Peebles Should be Dismissed.

In the Order of Dismissal, this Court stated, Plaintiffs[2] have failed "to allege any supporting or specific facts describing the nature of Peebles' position, the manner in which he exerted control over the day-to-day-operations of Club Management, or the manner in which he exerted control over the payroll practices and payment of wages" [ECF 49 at 19].

While the Amended Complaint attempts to remedy the deficiencies that led to the dismissal of Peebles as a party defendant, the allegations still fall woefully short. Plaintiffs have merely added words to their prior allegations without changing the overall message that this Court found lacking in specificity as to Peebles' control over the day-to-day operations of The Bath Club. A comparison between the allegations in the complaint [ECF 1] (the "Complaint") with the new allegations in the Amended Complaint at ¶¶10-15 best illustrates this point:

> (Complaint ¶8) Defendant Peebles is an individual male who was the managing member and operator of Defendant Bath Club and was vested with operational control over Defendant Bath Club, including the authority to hire, fire, and discipline employees of Defendant Bath Club, including Plaintiffs.

---

[2] The term "Plaintiffs" as used in the Order of Dismissal referred to all four (4) Plaintiffs. Though this action has been stayed as to Usai and Giua, the same arguments apply to dismissing Peebles from *all* the FLSA claims brought in this action, *i.e.,* Counts I-VI.

*(Amended Complaint ¶¶10 & 14) Defendant Peebles owns 100% of Defendant Bath Club and acts as its sole managing member… Defendant Peebles directly influenced the mechanics of the Point-of-Sale (POS) system and financial controls, denying requests for subordinate employees to have management access codes for voids or discounts, asserting this authority must remain exclusively with managers. Furthermore, Defendant Peebles directly involved himself in operational price setting, instructing, for example, that no change to valet fees be made without his approval.*

(Complaint ¶9) At all relevant times, Defendant Bath Club and Defendant Peebles were Plaintiffs' sole and/or joint employer within the meaning of 29 U.S.C. § 203(d). Defendant Bath Club and Defendant Peebles acted in the interest of an employer toward the Plaintiffs at all times material herein, including but limited to the hiring and firing of Plaintiffs, controlling Plaintiffs' work schedules and conditions of employment, determining Plaintiffs' rate and method of payment, and maintaining employment records.

*(Amended Complaint ¶¶12-13) Defendant Peebles exerted direct control over staffing decisions, including personally participating in and approving the termination of employees such as Plaintiffs Usai and Giua… Defendant Peebles was personally aware of and involved in monitoring Defendant Bath Club's financial performance, specifically attending monthly financial meeting during the relevant period... Defendant Peebles also intervened directly in operation decisions related to specific employees, such as directing the denial of a request for Plaintiff Vega to have access to void transactions or apply discounts.*

(Complaint ¶10) Defendant Peebles exercised day-to-day control over the operations of Defendant Bath Club, including determining and maintaining company payroll practices, the payment of wages to Plaintiffs and other similarly situated employees, and employees' working conditions, thereby directly affecting Plaintiffs' employment.

*(Amended Complaint ¶¶11 & 13) Defendant Peebles actively directed the Bath Club's financial decisions and management policies including exercising direct budgetary oversight and instructing Plaintiffs Usai and Giua on how the Bath Club's funds were managed on a day-to-day basis… Defendant Peebles was personally aware of and involved in monitoring Defendant Bath Club's financial performance, specifically attending monthly financial meeting during the relevant period.*

(Complaint ¶12) Plaintiffs were dependent upon Defendant Bath Club and Defendant Peebles for their employment as the Defendants collectively supervised, directed, and controlled Plaintiffs' day-to-day responsibilities and used Plaintiffs' work in furtherance of their business objections.

*(Amended Complaint ¶15) Defendant Peebles' authority extended to directly influencing the compensation of individual employees, including personally handling the hiring of Plaintiff Usai and setting his compensation.*

In the Amended Complaint, Plaintiffs have simply pled the same facts with more words. Furthermore, even if Peebles made the isolated decisions alleged, Plaintiffs have not demonstrated Peebles' actual day-to-day involvement in The Bath Club's operations required to hold him personally liable under the FLSA. Indeed, Peebles' attendance at "monthly" meetings actually underscores the fact that he did *not* exercise day-today control over operational matters; budgetary oversight is something an owner would do while managers (Usai and Giua) were responsible for managing the day-to-day budget of The Bath Club. *See Santos v. Cuba Tropical, Inc.*, 829 F. Supp. 2d 1304, 1312 (S.D. Fla. 2011) (50% co-owner of business was not the plaintiffs' employer; he hired managers to run the business' day-to-day operations and, though he was the only signatory on the account, he allowed the managers to rubber stamp his signature on paychecks).

Additionally, hiring Usai as "Director of Operations and Wine Club" and hiring Giua as "Restaurant & Lounge General Manager" (Amended Complaint at ¶¶15, 33-34) is not the same as hiring, for example, a server. Peebles hired Usai and Giua to run, manage, and oversee The Bath Club so that Peebles – the owner – did not have to do so. *Id. See also Lainez Flores v. Wheels Am. Miami, Inc.*, 2014 U.S. Dist. LEXIS 90122, at *11 (S.D. Fla. July 2, 2014) (defendant, who owned 60% of the company, was not the plaintiff's employer where the co-defendant, who admitted he was the plaintiff's employer, "had free reign to manage the business in the manner he saw fit") .

Despite Plaintiffs' efforts to allege new facts, Peebles was simply not Plaintiffs' employer for purposes of the FLSA. In order to be deemed an "employer" under the FLSA, a corporate officer "must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Patel v. Wargo,* 803 F.2d 632, 638 (11th Cir.

1986). Moreover, a person's status as a corporate officer alone is insufficient to render an individual an "employer" under the FLSA. *Id.* Put another way, an individual is not subject to personal liability as an FLSA employer simply by virtue of his position as a corporate officer or owner. *Id.*

The Supreme Court has held that courts should apply the terms "employer" and "employee" in light of the "economic reality" of the relationship between the parties. *Goldberg v. Whitaker House Co-op., Inc.,* 366 U.S. 28, 33, 81 S. Ct. 933, 936-37, 6 L. Ed. 2d 100 (1961). Under the economic reality test, courts ask whether the alleged employer: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Villarreal v. Woodham,* 113 F.3d 202, 205 (11th Cir. 1997). Though *Villarreal* held that the court should only dismiss an FLSA claim on the basis of employment status where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *id.* at 204, such is the case here.

Plaintiffs have alleged in a conclusory fashion and without any specific facts that Peebles had "operational control" over The Bath Club, had the authority to hire, fire and discipline employees, including Plaintiffs, controlled work schedules and conditions of employment, and exercised "day-to-day control" and active control over Club Management's operations, payroll practices, payment of wages (including Plaintiffs' rate and methods of pay), and working conditions (Amended Complaint at ¶¶8-17).

What Plaintiffs have failed to allege are any specific facts to support their conclusory allegations that Peebles acted jointly with Club Management as their employer. Plaintiffs have not alleged any specific interactions with Peebles plausibly showing that he had direct control over

decisions concerning Slizskaya's and Vega's wages, which is at the very heart of their wage theft claim. Indeed, Plaintiffs have failed to even minimally define the control that Peebles exercised over either or both of them.

In fact, proof that Peebles *lacked* "operational control" over The Bath Club is actually supported by Plaintiffs' allegations that Peebles hired Usai and Giua as Director of Operations and Wine Club and Restaurant & Lounge General Manager, respectively (Amended Complaint at ¶¶39-40). Though Plaintiffs attempt to diminish Usai and Giua's authority – claiming that Jean Thielen Guerrero (an accountant) and "other managers" supervised Slizskaya and Vega (Amended Complaint at ¶¶66-67) – Usai and Giua were the ones responsible for managing The Bath Club and its employees. Plaintiffs expect this Court to believe that the hiring of Usai and Giua as director and manager of The Bath Club, respectively, was superfluous and unnecessary and that Peebles – simply due to his status as "managing member" of Club Management (Amended Complaint at ¶¶8, 10) – was Plaintiffs' employer. The economic reality of the matter is that Usai and Giua, *not* Peebles, were the employers.

In *Diaz v. U.S. Century Bank, Int'l Risk Response, Inc.,* No. 12-21224-CIV, 2012 U.S. Dist. LEXIS 89618, 2012 WL 2514906 (S.D. Fla. June 28, 2012), dismissal was proper where plaintiffs made vague assertions concerning their employment relationship in "general, unsubstantiated" terms and failed to "even attempt to minimally define the division of control" that existed between each defendant over the plaintiffs, leaving the extent of the defendants' actual control over plaintiffs to mere speculation. *Id.* at 5. Similarly, in *Chavarria v. Clements*, 2016 U.S. Dist. LEXIS 204558, at *14 (S.D. Fla. Apr. 13, 2016), the plaintiff alleged that she provided cleaning services for the property that was "owned, controlled and operated by" the individual defendant and that the individual defendant participated in the delegation of operations

and management duties and coordinated hiring and firing of employees. *Id.* at 9. The Court held that these "general, unsubstantiated" allegations, like in *Diaz*, were insufficient to state a claim against the individual defendant. *Id.* at 11.

Because Plaintiffs' allegations in the Amended Complaint as to Peebles are equally as general and unsubstantiated as in *Diaz* and *Chavarria*, the FLSA claims against Peebles individually should be dismissed.

### ii. Slizskaya & Vega's FLSA Wage Theft Claims Should Be Dismissed.

In the Order of Dismissal, this Court stated, "Slizskaya and Vega fail to state a claim for FLSA wage theft… The Complaint does not include an estimate of the total amount of unpaid wages or a preliminary calculation of such wages" [ECF 49 at 20]. While the Amended Complaint attempts to remedy the deficiencies that led to the dismissal of these claims, the new allegations fall woefully short because Slizskaya and Vega have still failed to allege how much they are owed or how such amounts were calculated.

In the Amended Complaint at ¶¶135-136, Slizskaya included the following new allegations:

> Plaintiff Slizskaya was employed from approximately January 2022 until her unlawful termination on or around June 29, 2023. During this period, she regularly worked shifts subject to the flat daily rate system of compensation, typically receiving $240.00 per shift. Based on the Defendant's policy of retaining tips exceeding the flat rate guaranteed minimum, and based on the standard volume of business resulting in tips "well in excess" of $240 per shift, Plaintiff Slizskaya suffered significant loss of tipped wages during her 18 months of employment… Based on preliminary estimate, derived from the established duration of the unlawful pay scheme, the known minimum guaranteed pay ($240/shift), and the typical volume of mandatory service charges, the total amount of tips and wages unlawfully retained by Defendants from Plaintiff Slizskaya could easily exceed $10,000. This estimate reflects the consistent suppression of her earned tips below the level they would have reached had the tips not been unlawfully retained by managers/supervisors like Guerrero.

Similarly, Vega included the following new allegations in the Amended Complaint at ¶¶155-156:

> Plaintiff Vega was employed as a Server from February 2023 until her unlawful termination on or around August 25, 2023. During this approximately six-month period, Defendants paid her a flat daily rate of approximately $240.00, systematically failing to distribute the full amount of tips she earned and received…Based on a preliminary estimate, derived from the established duration of the unlawful pay scheme, the known minimum guaranteed pay ($240/shift), and the typical volume of mandatory service charges, the total amount of tips and wages unlawfully retained by Defendants from Plaintiff Vega could easily exceed $10,000. This estimate reflects the consistent suppression of her earned tips below the level they would have reached had the tips not been unlawfully retained by managers/supervisors like Guerrero.

Slizskaya fails to allege *when* "she *regularly* worked shifts." Also, both Slizskaya and Vega fail to allege (i) how many shifts they worked during their respective dates of employment and (ii) the difference between what they were was actually paid and what they claim they should have been paid. There are simply no "preliminary calculations" as the Order of Dismissal previously recognized. Moreover, conclusory statements that the amounts owed "could easily exceed $10,000" is hardly the specificity required to make serious claims of wage theft against Defendants.

Faced with a similar pleading in the case of *Earle v. Mia. Dade Cty.,* No. 24-20270-CIV, 2024 U.S. Dist. LEXIS 91081 (S.D. Fla. May 21, 2024), the Court held that plaintiff's complaint failed to satisfy the heightened pleading standard for civil actions set forth by the Supreme Court in *Ashcroft v. Iqbal,* 556 U.S. 662, 662, 129 S. Ct. 1937, 1939 (2009) and *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 595, 127 S. Ct. 1955, 1988 (2007) (threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to state a claim). This standard applies to FLSA cases as well. *See Baide v. Sunsof, Inc*., No. 14-22255-CIV-MOORE, 2014 U.S. Dist. LEXIS 143274, at *4 (S.D. Fla. Oct. 7, 2014).

Facts as to the wages owed, including the amount, calculations as to same and the period over which such wages accrued – are *required* to be alleged in a "pleading" alleging wage theft, and Slizskaya and Vega's failure to do so in the Amended Complaint again renders dismissal proper. *Earle*, 2024 U.S. Dist. LEXIS 91081 at *6.

**B.  Slizskaya's Title VII, FCRA & MDHRO Discrimination And Hostile Work Environment Claims Should Dismissed For Failure To State Claims.**

In Counts IX, XVII, and XXV of the Amended Complaint, Slizskaya attempts to allege claims for hostile work environment under Title VII, the FCRA, and the MDHRO.[3] This Court previously dismissed these claims upon finding "the Court does not find that Slizskaya has sufficiently alleged objectively severe or pervasive conduct to move forward with her hostile work environment claims" [ECF 49 at 39]. Accordingly, Defendants' argument for dismissal will focus solely on the objective severity element of Slizskaya's the hostile work environment claims.

    **i.  Requirements for pleading "objective severity".**

The Supreme Court and the Eleventh Circuit have stated that following factors should be considered in determining whether conduct is objectively severe or pervasive to alter the terms and conditions of employment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.

---

[3] Because the FCRA was patterned after Title VII, "Florida courts have held that decisions construing Title VII are applicable when considering claims under the [FCRA]." *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998). Title VII prohibits employment discrimination based on race, color, religion, sex and national origin, just as the MDHRO does. Logic dictates that courts should look to Title VII for guidance when considering claims arising under the MDHRO.

*Thompson v. City of Miami Beach,* 990 F. Supp. 2d 1335, 1339 (S.D. Fla. 2014), citing *Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1275 (11th Cir. 2002).

In reviewing these factors, this Court previously found in the Order of Dismissal:

As to the first factor (frequency): "Slizskaya does not allege how "often" or "regularly" these comments were made… Guerrero calling Slizskaya an "'ass face' … As such, the alleged frequency of the conduct, one comment directed at Slizskaya over a year and a half period… weighs in favor of Defendants."

As to the second factor (severity): "Here, the conduct Slizskaya alleges, including that Guerrero called her "ass face[,]" Compl. ¶ 74, does not rise to the aforementioned level of severity as to find that this factor weighs in Slizskaya's favor."

As to the third factor (physically threatening or humiliating): "…Slizskaya does not allege that she was physically threatened."

As to the fourth factor (unreasonable interference with the employee's job performance: "Slizskaya… [does] not allege that the conduct unreasonably interfered with [her] job performance or allege how it negatively impacted [her] professional li[fe]."

[ECF 49 at 34-39].

### ii. Sliskaya's new allegations

In an effort to rectify these deficiencies and plead the "objectively severe" factor for sufficiently stating claims for hostile work environment, Slizskaya made the following new allegations in the Amended Complaint:

#### 1. Frequency

Slizskaya has alleged that "Guerrero regularly berated and made discriminatory remarks to female employees, including calling Plaintiff Slizskaya an "ass face"… [and that] *Guerrero repeatedly told her she was 'stupid and dumb' and that he 'invested too much time in training' to fire her, subjecting her to humiliation in front of colleagues"* (Amended Complaint ¶83, emphasis on new allegations).

#### 2. Severity

Slizskaya has not alleged anything new in the Amended Complaint as to the severity of the alleged conduct.

### 3. Physically threatening or humiliating

Slizskaya has alleged that *"Guerrero's abuse was physically threatening"* and he was *known to use his position ... to threaten employees' schedules and employment, such as Plaintiff Slizskaya"* (Amended Complaint ¶86, emphasis on new allegations).

### 4. Conduct unreasonably interfered with the employee's job performance

Slizskaya has alleged that *"Guerrero's abuse ... intended to interfere with job performance and stability"* (Amended Complaint ¶86).

Slizskaya has failed to allege facts sufficient for this Court to find that the conduct at issue was objectively severe or pervasive as to alter the terms and conditions of her employment.

### iii. What Sliskaya fails to allege

As to frequency, even if Guerrero "repeatedly told her she was stupid and dumb" (Amended Complaint at ¶83), Slizskaya has not alleged any facts that this comment was sexual in nature, as opposed to merely rude. *Oncale v. Sundower Offshore Serv.*, 523 U.S. 75, 81, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998) (Title VII does not promulgate a 'general civility code' for workplace interactions).

While Slizskaya does allege that "Guerrero's abuse was physically threatening and intended to interfere with job performance and stability," Slizskaya does not allege *how* Guererro physically threatened her – unlike Vega who claimed that Guerrero "forcibly grabbed her groin without her consent while she was working" (Amended Complaint at ¶81) – nor does she allege *how* the alleged abuse unreasonably interfered with her job performance.

The objectively severe analysis is somewhat fact intensive and will not be met unless the alleged conduct is extreme. *Amaya v. Vilsack*, 2024 U.S. Dist. LEXIS 129567, at *20 (S.D. Fla. July 22, 2024). In *Amaya,* the plaintiff complained about "an escalating, pervasive, and ongoing patten of known unwelcome and unlawful conduct, discrimination, and retaliation" after Louis Volpe became her direct supervisor: among other things, Volpe demanded multiple and ongoing meetings alone with the plaintiff in his office and aggressively yelled at her in a manner that provoked reasonable fear and discomfort. *Amaya,* 2024 U.S. Dist. LEXIS 129567, at 2. The plaintiff complained for over a year, subsequently filed an administrative charge of discrimination, and eventually filed a lawsuit that included a claim for hostile work environment. *Id* at 5.

The defendant filed a motion to dismiss this claim based on the plaintiff's failure to allege that the harassment she faced was *objectively* hostile from the perspective of a reasonable person in the plaintiff's position. *Id* at 18. Going through the foregoing four-factor test, Judge Altman found that the plaintiff's allegations were "insufficiently severe as a matter of law to create a hostile work environment." *Id* at 19. Noting that "the 'bar for a hostile work environment claim is especially high, and will not be met unless the alleged conduct is extreme,'" *Booth v. Pasco County*, 829 F. Supp. 2d 1180, 1189 n.5 (M.D. Fla. 2011), Judge Altman found that the alleged conduct, including threats and yelling, was not the type of extreme behavior Title VII prohibits and added that "courts in our Circuit routinely dismiss cases involving *far more* egregious employer misconduct for failure to meet this prong of the hostile-work-environment test." *Amaya,* 2024 U.S. Dist. LEXIS 129567, at 22 (citing collected cases).

Just as the plaintiff in *Amaya*, Slizskaya does nothing more than "a formulaic recitation of the elements of a cause of action… that will not do." *Id* citing to *Twombly*, 550 U.S. at 555.

Here, the underlying conduct that Slizskaya has alleged – name calling, threats, and abuse – is not the type of extreme behavior that Title VII prohibits. *Id* at 21. Accordingly, Slizskaya's claims for hostile work environment found at Counts IX, XVII, and XXV of the Amended Complaint should be dismissed.

## CONCLUSION

Defendants respectfully request this Court enter an order dismissing with prejudice (1) all FLSA claims against Peebles individually (Counts I-VI), (2) Slizskaya and Vega's claims for wage theft against Club Management (Counts I & II), and (3) Slizskaya's claims for hostile work environment (**Counts IX, XVII, and XXV**), along with such other and further relief as this Court deems just and proper.

**ASSOULINE & BERLOWE, P.A.**

/s/ *Ellen M. Leibovitch*
ELLEN M. LEIBOVITCH
Florida Bar No. 656933
eml@assoulineberlowe.com
DANIEL E. VIELLEVILLE
Florida Bar No. 940496
dev@assoulineberlowe.com
2385 N.W. Executive Center Dr., Suite 100
Boca Raton, FL 33431
Tel: (561) 361-6566

Attorneys for Defendants, Club Management Miami II, LLC, and R. Donahue Peebles